UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

JUDGE CONNER

**DAVID COHAIN D.D.S**
363 Jones Rd.
Englewood, New Jersey 07631

And

**CYNTHIA COHAIN**
363 Jones Rd.
Englewood, New Jersey 07631

And

**YOSAIF COHAIN**
363 Jones Road
Englewood, New Jersey 07631

And

**ARIELLA COHAIN**
363 Jones Road
Englewood, New Jersey 07631

And

**LAURA HERZ**
30 Greenridge Ave. Apt. 4M
White Plains, New York 10607

**JAMIE CLARK**
52 South Road
Holmes, New York 12531

And

**PATRICK CLARK**
52 South Road
Holmes, New York 12531

And

CASE NO. _____

JUDGE: _____

'08 CIV 5047

**BARBARA DEMUTH**
**90 Union St. Apt 5H**
**New Rochelle, New York 10805**

And

**JOHN HAYES**
**900 Palmer Rd.**
**Bronxville, New York 10708**

And

**KATHERINE HAYES**
**900 Palmer Rd.**
**Bronxville, New York 10708**

And

**JULIA C. HERTLEIN TRUST**
**C/O William Hertlein, Trustee**
**1 Aredell Road**
**Bronxville, New York 10708**

And

**FRANK MADONNA**
**10 Kent Road**
**Bronxville, New York 10708**

And

**FRED RONIS**
**26 Georgia Road**
**Syosset, New York 11791**

And

**HELEN SINGER**
**19 Westfield Road**
**White Plains, New York 10605**

And

**ANDREW WALD**
**7548 Chester Terrace**
**Boca Raton, FL 33433**

And

**ESTELLE WALD**
7548 Chester Terrace
Boca Raton, FL 33433

And

**JOANNA WALD**
7548 Chester Terrace
Boca Raton, FL 33433

And

**NORMAN WALD**
7548 Chester Terrace
Boca Raton, FL 33433

And

**SAMUEL WALD**
7548 Chester Terrace
Boca Raton, FL 33433

And

**CARMELINA PAGANO**
175 West 12th St., Apt. 10D
New York, New York 10011

And

**ROSAMARIA PAGANO**
143-15 22nd Road
Whitestone, New York 11357

And

**MARIA PAGANO**
96 Fifth Avenue, Apt. 8D
New York, New York 10011

And

**ALLEGRA PAGANO**
A Minor, by her father and
Natural guardian, Alessandro Pagano
220 Central Parkway
Mount Vernon, New York 10552

And

**NICCOLO PAGANO**
**A Minor, by his father and**
**Natural guardian, Alessandro Pagano**
**220 Central Parkway**
**Mount Vernon, New York 10552**

      **Plaintiffs**

v.

**LAURA KLIMLEY**
**5 Oakledge Road**
**Bronxville, New York 10708**

And

**MAXINE EIMICKE**
**20 Hereford Road**
**Bronxville, New York 10708**

And

**JOHN PALMERO**
**20 Saymor Drive**
**Bardonia, New York 10954**

And

**HEREFORD CREDIT AND**
**COLLECTION AGENCY, INC.**
**35 East Grassy Sprain Road**
**Yonkers, New York 10710**

And

**THE VICTOR W. and**
**MAXINE EIMICKE FOUNDATION**
**35 East Grassy Sprain Road**
**Yonkers, New York 10710**

      **Defendants**

**COMPLAINT**
**(Jury Demand Endorsed Hereon)**

Now come Plaintiffs, DAVID COHAIN D.D.S., CYNTHIA COHAIN, YOSAIF

COHAIN, ARIELLA COHAIN, LAURA HERZ, JAMIE CLARK, PATRICK CLARK,

BARBARA DEMUTH, JOHN HAYES, KATHERINE HAYES, JULIA C. HERTLEIN

TRUST, FRANK MADONNA, FRED RONIS, HELEN SINGER, ANDREW WALD,

ESTELLE WALD, JOANNA WALD, NORMAN WALD, SAMUEL WALD, CARMELINA

PAGANO, ROSAMARIA PAGANO, MARIA PAGANO, ALLEGRA PAGANO and

NICCOLO PAGANO by and through the undersigned counsel, and for their complaint against

Defendants LAURA KLIMLEY, JOHN PALMERO, MAXINE EIMICKE, HEREFORD

CREDIT AND COLLECTION AGENCY, INC. and THE VICTOR W. AND MAXINE

EIMICKE FOUNDATION respectfully set forth and allege as follows:

## INTRODUCTION

1.      This action seeks compensatory and punitive damages for Plaintiffs, David Cohain,

Cynthia Cohain, Yosaif Cohain, Ariella Cohain, Laura Herz, Jamie Clark, Patrick Clark,

Barbara Demuth, John Hayes, Katherine Hayes, Julia C. Hertlein Trust, Frank Madonna, Fred

Ronis, Helen Singer, Andrew Wald, Estelle Wald, Joanna Wald, Norman Wald, Samuel Wald,

Carmelina Pagano, Rosamaria Pagano, Maria Pagano, Allegra Pagano and Niccolo Pagano for

unlawful activities against Defendants pursuant to the Securities Act of 1933; the Securities

Exchange Act of 1934; pursuant to 18 U.S.C. § 1964(c), as the suit concerns violations of the

Racketeering Influenced and Corrupt Organizations Act; common law fraud; fraudulent

transfers, corporate waste, self-dealing and breach of fiduciary duty under the laws of the State

of New York. Specifically, each Plaintiff purchased securities from the VWE Group, Inc. dba V.W. Eimicke Associates, Inc. (hereinafter the "Company") as part of the Company's "Note Program". These notes were offered for sale in this judicial district by way of mail and telephone solicitations. Plaintiffs claim that said Defendants engaged in a pattern of corrupt activities including aiding and abetting theft, money laundering and maliciously making false and misleading statements in connection with the performance and assets of the Company; knowingly and maliciously failing to disclose material facts in connection with the performance of the Company, the number of other investors and size of the Company's securities offerings; knowingly and maliciously failing to register the subject securities and provide the required disclosures in accordance with Federal law; engaging in a ponzi scheme; paying themselves and Eimicke family members and associates excessive salaries, dividends and other compensation, and otherwise seeking to unlawfully enrich themselves and the Eimicke family at the expense of Plaintiffs and the other note holders.

## JURISDICTION AND VENUE

2.      This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337; Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v (hereinafter "Securities Act"); Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 77aa; and pursuant to 28 U.S.C. § 1367 in regards to Plaintiffs' claims brought in accordance with the laws of the State of New York. The claims asserted herein arise under Section 5, 12 and 15 of the Securities Act, (15 U.S.C. § 77e, 15 U.S.C. § 77l, 15 U.S.C. § 77o); Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 77j, 15 U.S.C. § 78t(a)) and Rule 10b-5 promulgated thereunder; 18 U.S.C. § 1964(c), as the suit concerns violations of the Racketeering Influenced and Corrupt Organizations Act and pursuant to 28 U.S.C. § 1367 as Plaintiffs' state and common law claims are so related to the federal claims that they form part of the same case or controversy.

3.      Venue is proper in this District pursuant to Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a); Section 27 of the Securities Exchange Act of 1934; 15 U.S.C. § 78aa; 28 U.S.C. § 1391; 18 U.S.C. § 1965(b) and the principles of supplemental jurisdiction under 28 U.S.C. § 1367.  Assignment of this action to the Southern District of New York, Division of White Plains is appropriate as a substantial portion of acts and omissions set forth herein occurred in Bronxville, New York and Yonkers, New York and Defendants all reside within the Southern District of New York.

4.      In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, utilized the means and instrumentalities of interstate commerce, including but not limited to the United States mails and interstate telephone communications.

## THE PLAINTIFFS

5.      Plaintiffs are residents, and were at all times relevant to the subject matter of this Complaint, the States of New York and New Jersey.  At all relevant times Plaintiffs were and are bonafide creditors of the Company and investors in the Company's illegal Note Program.

## THE DEFENDANTS

6.      Defendant Laura Klimley (hereinafter "Klimley") was at all times relevant to the subject matter of this Complaint the Vice-President and director of the Company and the holder of 375 of the total of 750 of the Common A voting shares of the Company. Further, Laura Klimley held at all times relevant to the subject matter of this Complaint 1046.5 of a total of 2093 of Common B non-voting shares of the Company; 111 of 189 Preferred A , non-voting shares of the Company; and 814 of 1597 Preferred B non-voting shares of the Company. Laura Klimley had the power to direct or cause the direction of all aspects of the Company, including but not limited to its management, policies, securities offerings and

7

communications and disclosures with and to the creditors of the Company at all relevant times and was a "control person" of the Company as defined by § 15 of the Securities Act and § 20(a) of the Exchange Act and exercised said control to cause the Company to engage in the conduct complained of herein.

7.     Defendant Maxine Eimicke (hereinafter "Maxine Eimicke") was at all times relevant to the subject matter of this Complaint a vice-president, secretary and a director of the Company and the wife of the founder of the Company, Victor Eimicke. Maxine Eimicke had the power to direct or cause the direction of all aspects of the Company, including but not limited to its management, policies, securities offerings and communications and disclosures with and to the creditors of the Company at all relevant times and was a "control person" of the Company as defined by § 15 of the Securities Act and § 20(a) of the Exchange Act and exercised said control to cause the Company to engage in the conduct complained of herein.

8.     Defendant John Palmero (hereinafter "Palmero") was at all times relevant to the subject matter of this Complaint an officer and director of the Company and served as its controller. In his role as controller, Mr. Palmero prepared and kept the financial records of the Company and the Note Program, all of which indicate that from at least 1990 to until and including June, 2004 that the Company was illegally selling unregistered debentures and other securities at a time when the Company was hopelessly insolvent. Defendant had the power to direct or cause the direction of all aspects of the Company, including but not limited to its management, policies, securities offerings and communications and disclosures with and to the creditors of the Company at all relevant times and was a "control person" of the Company as defined by § 15 of the Securities Act and § 20(a) of the Exchange Act and exercised said control to cause the Company to engage in the conduct complained of herein.

9.      Defendant Hereford Credit and Collection Agency, Inc. (hereinafter "Hereford") was at all times relevant to the subject matter of this Complaint a for-profit corporation formed and existing under the laws of the State of New York. Hereford was at all relevant times owned by Klimley and her sister, Alicia Eimicke, and utilized to launder monies generated by the Company's illegal Note Program for the benefit of Klimley and Alicia Eimicke. At all relevant times Klimley and her sister Alicia Eimicke were officers, directors and the sole shareholders of Hereford and were "control persons" of Hereford as defined by § 15 of the Securities Act and § 20(a) of the Exchange Act and exercised said control to cause the Company to engage in the conduct complained of herein.

10.      Defendant The Victor W. and Maxine Eimicke Foundation, Inc. (hereinafter the "Foundation") was at all times relevant to the subject matter of this Complaint an allegedly non-profit corporation formed and existing under the laws of the State of New York. The Foundation was established by Victor and Maxine Eimicke to aid in their joint scheme to avoid the payment of federal and state income tax and utilized to launder monies generated by the Company's illegal Note Program.

## OPERATIVE FACTS

11.      In or about late 1958, Victor Eimicke formed the Company, a New York Corporation, for the purposes of engaging in the business of producing and selling forms and other materials utilized by companies in the hiring, firing and motivation of employees and commonly referred to as the "HR business". Several years ago, the Company began producing and selling holiday greeting cards in addition to its "HR business". By 2003 the holiday card business surpassed the HR business and accounted for 75% of the company's revenues. In December 2003, the Company sold its holiday card business to an entity known as the Taylor Group.

12.     Following the sale of the holiday card business, the Company filed for relief pursuant to Chapter 11 of the United States Bankruptcy Code on June 1, 2004. Said petition is currently pending in the United States Bankruptcy Court for the Southern District of New York being case number 04-20308.

13.     From the Company's inception the Company offered debt instruments (the "Notes") with terms from 90 days to 5 years, interim maturity periods of between 1 and 3 years, and interest rates from 10 to 23% (the "Note Program"). These Notes were at all relevant times offered for sale in New York, New Jersey and other States by the Company and its officers and directors, including Defendants, Klimley, Palmero and Maxine Eimicke through personal, mail and telephone solicitations. At the time of the filing of the aforesaid bankruptcy, the aggregate outstanding principal amount of the Notes was more than $26 million dollars; nearly eight times the amount of money owed trade creditors.

14.     By the late 1980's Victor Eimicke began actively training his daughters Alicia Eimicke and Klimley to take over the Company. By 1994, Victor Eimicke and Maxine Eimicke had transferred their stock to Alicia Eimicke and Klimley and had provided Alicia Eimicke and Klimley with detailed information in connection with the size and purpose of the Note Program and the operation and budgetary concerns of the Company.

15.     From 1993 up until the time of the aforesaid bankruptcy filing, an evaluation of the earnings before interest and taxes (hereinafter "EBIT") shows that the Company was in terms of operational income profitable in some years, nearly break even in others and lost money in a number of years. The pattern was, however, wildly erratic. Specifically, for each year the EBIT was as follows:

| YEAR | GAIN OR LOSS | AMOUNT |
|------|--------------|--------|
| 1993 | Gain | $476,000.00 |

| 1994 | Loss | $212,000.00 |
|------|------|-------------|
| 1995 | Loss | $182,000.00 |
| 1996 | Gain | $98,000.00 |
| 1997 | Gain | $6,000.00 |
| 1998 | Gain | $802,000.00 |
| 1999 | Gain | $18,000.00 |
| 2000 | Loss | $143,000.00 |
| 2001 | Gain | $233,000.00 |
| 2002 | Loss | $37,000.00 |
| 2003 | Gain | $203,000.00 |

16.    In every year from 1993 until and including 2003, the Company posted a large annual net loss. This loss grew from $286,000.00 in 1993 to $3,247,000.00 in 2003. Indeed the Company posted a net loss of at least a million dollars in each year from 1995 to 2003. Specifically, the Company posted net losses as follows:

| YEAR | NET LOSS |
|------|----------|
| 1995 | $1,428,000.00 |
| 1996 | $1,434,000.00 |
| 1997 | $1,745,000.00 |
| 1998 | $1,284,000.00 |
| 1999 | $2,280,000.00 |
| 2000 | $2,932,000.00 |
| 2001 | $3,011,000.00 |

| 2002 | $3,702,000.00 | |
|------|---------------|---|
| 2003 | $3,247,000.00 | |

17.    The aforesaid net loss is explained by the consistent and continuous issuance of new Notes. From 1993 to 2003 the Notes payable increased from $5,950,000.00 in 1993 to $25,268,000.00 in 2003. In fact even as of 1993 the Note Program was so large that in no year from 1993 up to and including 2003 did the EBIT provide sufficient money to pay the interest expense and amortization. The following chart illustrates this point by comparing the EBIT, the interest expense, the amount of debt raised in a certain year and the total amount of the debt at the end of such year:

| YEAR | EBIT | INTEREST | AMOUNT RAISED | TOTAL DEBT |
|------|------|----------|---------------|------------|
| 1993 | $476,000.00 | $762,000.00 | (presently unknown) | $5,950,000.00 |
| 1994 | ($212,000.00) | $981,000.00 | $1,292,000.00 | $7,242,000.00 |
| 1995 | ($182,000.00) | $1,245,000.00 | $1,742,000.00 | $8,984,000.00 |
| 1996 | $98,000.00 | $1,531,000.00 | $2,096,000.00 | $11,080,000.00 |
| 1997 | $6,000.00 | $1,751,000.00 | $1,843,000.00 | $12,923,000.00 |
| 1998 | $802,000.00 | $2,086,000.00 | $1,892,000.00 | $14,815,000.00 |
| 1999 | $17,000.00 | $2,297,000.00 | $2,507,000.00 | $17,322,000.00 |
| 2000 | ($143,000.00) | $2,788,000.00 | $1,466,000.00 | $18,788,000.00 |
| 2001 | $233,000.00 | $3,243,000.00 | $2,104,000.00 | $20,892,000.00 |
| 2002 | ($36,000.00) | $3,702,000.00 | $4,376,000.00 | $25,268,000.00 |
| 2003 | $203,000.00 | $3,450,000.00 | $3,803,000.00 | $29,071,000.00 |

18.     Despite actual knowledge, the aforesaid losses the Company, at the direction of officers and directors of the Company, including Defendants, Klimley, Palmero and Maxine Eimicke paid cash dividends to the Eimicke family and Klimley.  Specifically the Company, at the direction of officers and directors of the Company, including said Defendants, paid the shareholders (Klimley and Alicia Eimicke) a dividend of $19,850.00 each in 1993 and $17,860.00 each in year thereafter until and including 2003.  These payments were made despite the fact that neither shareholder paid anything for their stock.

19.     Despite the poor financial condition of the Company, the Company, at the direction of officers and directors of the Company, including Defendants Klimley, Palmero and Maxine Eimicke, paid to the Eimicke family and the Company's officers, clearly excessive salaries starting as early as 1991.  Indeed a substantial salary was paid to Maxine Eimicke, the wife of Victor Eimicke, although she claims to have had little or no involvement with the operation of the Company.  The excessive nature of the salaries paid to the officers is illustrated as follows: in 1995 officer salaries were $950,000.00, as compared to a negative EBIT of $183,000.00 and a net loss of $1,428,000.00; in 1996 officers salaries were $957,000.00, as compared to a EBIT of $98,000.00 and a net loss of $1,434,000.00; in 1997 officer salaries were $857,000.00 as compared to a EBIT of $6,000.00 and a net loss of $1,745,000.00; in 1998 officer salaries were $816,000.00 as compared to a EBIT of $802,000.00 and a net loss of $1,284,000.00; in 1999 officer salaries were $852,000.00, as compared to an EBIT of $18,0000.00 and a net loss of $2,280,000.00; in 2000 officer salaries were $849,000.00 as compared to a negative EBIT of $143,000.00 and a net loss of $2,932,000.00; in 2001 officer salaries were $756,000.00, as compared to an EBIT of $233,000.00 and a net loss of $3,011,000.00; in 2002 officer salaries were $545,000.00 as compared to a negative EBIT of $37,000.00 and a net loss of

13

$3,702,000.00; and in 2003 officer salaries were $588,000.00 as opposed to a net loss of

$3,247,000.00.  A summary of the officer salaries paid is attached herewith as Exhibit "A".

20.    In addition to the aforesaid illegal dividends and excessive salaries, the Company, at

the direction of officers and directors of the Company including Defendants Klimley, Palmero

and Maxine Eimicke, made substantial advances to Company officers and directors. Plaintiffs

state that said advances exceeded 1.5 million dollars.  Specifically the Company made the

following advances to Klimley, many from the general operating account of the Company:

| Date | COMPANY ACCOUNT | CHECK # | AMOUNT | PAYEE |
|---|---|---|---|---|
| 12/29/1993 | Fleet General | 59102 | $600.00 | Laura Klimley |
| 7/1/1994 | National Westminister Special | 201 | $18.75 | Laura Klimley |
| 7/1/1994 | National Westminister Special | 195 | $337.50 | Laura Klimley |
| 7/5/1994 | National Westminister Special | 4475 | $2,242.50 | Laura Klimley |
| 7/5/1994 | National Westminister Special | 4476 | $70.00 | Laura Klimley |
| 7/14/1994 | National Westminister General | 32763 | $400.00 | Laura Klimley |
| 7/19/1994 | National Westminister General | 32794 | $2,200.00 | Laura Klimley |
| 7/21/1994 | National Westminister General | 32813 | $400.00 | Laura Klimley |
| 7/21/1994 | National Westminister Special | 2268 | $3,700.00 | Laura Klimley |
| 7/27/1994 | National Westminister General | 32848 | $400.00 | Laura Klimley |
| 8/4/1994 | National Westminister General | 32916 | $1,200.00 | Laura Klimley |
| 8/11/1994 | National Westminister General | 32985 | $300.00 | Laura Klimley |
| 8/17/1994 | National Westminister General | 33025 | $450.00 | Laura Klimley |
| 8/25/1994 | National Westminister General | 33105 | $400.00 | Laura Klimley |
| 9/1/1994 | National Westminister General | 33185 | $400.00 | Laura Klimley |
| 9/6/1994 | National Westminister General | 33206 | $2,300.00 | Laura Klimley |
| 9/7/1994 | National Westminister General | 33220 | $400.00 | Laura Klimley |
| 9/14/1994 | National Westminister General | 33265 | $400.00 | Laura Klimley |
| 9/22/1994 | National Westminister General | 33341 | $200.00 | Laura Klimley |
| 9/28/1994 | National Westminister General | 33380 | $450.00 | Laura Klimley |
| 10/1/1994 | National Westminister Special | 230 | $18.75 | Laura Klimley |
| 10/1/1994 | National Westminister Special | 224 | $337.50 | Laura Klimley |
| 10/4/1994 | National Westminister Special | 4798 | $2,242.50 | Laura Klimley |
| 10/5/1994 | National Westminister General | 33427 | $70.00 | Laura Klimley |
| 11/10/1994 | National Westminister General | 33717 | $70.00 | Laura Klimley |
| 11/21/1994 | National Westminister General | 33793 | $150.00 | Laura Klimley |
| 11/29/1994 | Medical bills paid 165.00 | | $0.00 | Laura Klimley |
| 12/5/1994 | National Westminister General | 33921 | $150.00 | Laura Klimley |
| 12/7/1994 | National Westminister General | 33943 | $65.00 | Laura Klimley |
| 12/8/1994 | National Westminister General | 33954 | $500.00 | Laura Klimley |
| 12/15/1994 | National Westminister General | 34010 | $600.00 | Laura Klimley |
| 12/22/1994 | National Westminister General | 34067 | $3,100.00 | Laura Klimley |
| 12/29/1994 | National Westminister General | 34120 | $400.00 | Laura Klimley |
| 1/3/1995 | National Westminister Special | 313 | $337.50 | Laura Klimley |
| 1/3/1995 | National Westminister Special | 319 | $18.75 | Laura Klimley |

| | | | | |
|---|---|---|---|---|
| 1/4/1995 | National Westminister Special | 4821 | $2,242.50 | Laura Klimley |
| 1/5/1995 | National Westminister General | 34171 | $250.00 | Laura Klimley |
| 1/5/1995 | National Westminister General | 34173 | $450.00 | Laura Klimley |
| 1/5/1995 | National Westminister General | 34177 | $70.00 | Laura Klimley |
| 1/12/1995 | National Westminister General | 34213 | $650.00 | Laura Klimley |
| 1/19/1995 | National Westminister General | 34261 | $700.00 | Laura Klimley |
| 1/26/1995 | National Westminister General | 34324 | $700.00 | Laura Klimley |
| 2/9/1995 | National Westminister General | 34464 | $700.00 | Laura Klimley |
| 2/16/1995 | National Westminister General | 34464 | $700.00 | Laura Klimley |
| 2/22/1995 | National Westminister General | 34484 | $250.00 | Laura Klimley |
| 2/22/1995 | National Westminister General | 34486 | $750.00 | Laura Klimley |
| 3/1/1995 | National Westminister General | 34532 | $750.00 | Laura Klimley |
| 3/9/1995 | National Westminister General | 34597 | $700.00 | Laura Klimley |
| 3/16/1995 | National Westminister General | 34639 | $150.00 | Laura Klimley |
| 3/16/1995 | National Westminister General | 34645 | $700.00 | Laura Klimley |
| 3/22/1995 | National Westminister General | 34694 | $700.00 | Laura Klimley |
| 3/22/1995 | National Westminister Special | 1385 | $2,500.00 | Laura Klimley |
| 3/30/1995 | National Westminister General | 34729 | $700.00 | Laura Klimley |
| 4/3/1995 | National Westminister General | 34752 | $70.00 | Laura Klimley |
| 4/3/1995 | National Westminister Special | 378 | $337.50 | Laura Klimley |
| 4/3/1995 | National Westminister Special | 384 | $18.75 | Laura Klimley |
| 4/6/1995 | National Westminister General | 34789 | $200.00 | Laura Klimley |
| 4/6/1995 | HVGA | 4843 | $2,000.00 | Laura Klimley |
| 4/13/1995 | National Westminister General | 34843 | $700.00 | Laura Klimley |
| 4/20/1995 | National Westminister General | 34879 | $700.00 | Laura Klimley |
| 4/21/1995 | HVGA | 4848 | $3,850.00 | Laura Klimley |
| 4/27/1995 | National Westminister General | 34933 | $750.00 | Laura Klimley |
| 5/4/1995 | National Westminister General | 34977 | $700.00 | Laura Klimley |
| 5/11/1995 | National Westminister General | 35012 | $700.00 | Laura Klimley |
| 5/18/1995 | National Westminister General | 35058 | $700.00 | Laura Klimley |
| 5/24/1995 | National Westminister General | 35094 | $700.00 | Laura Klimley |
| 5/24/1995 | National Westminister General | 1467 | $1,120.00 | Laura Klimley |
| 6/1/1995 | National Westminister General | 1472 | $1,200.00 | Laura Klimley |
| 6/8/1995 | National Westminister General | 35176 | $700.00 | Laura Klimley |
| 6/15/1995 | National Westminister General | 35223 | $700.00 | Laura Klimley |
| 6/22/1995 | National Westminister General | 35278 | $700.00 | Laura Klimley |
| 6/28/1995 | National Westminister General | 35319 | $2,500.00 | Laura Klimley |
| 6/29/1995 | National Westminister General | 35328 | $700.00 | Laura Klimley |
| 7/1/1996 | National Westminster Special | 00563 | $337.50 | Laura Klimley |
| 7/1/1996 | National Westminster Special | 00572 | $18.75 | Laura Klimley |
| 7/3/1996 | National Westminster General | 38059 | $450.00 | Laura Klimley |
| 7/10/1996 | National Westminster General | 38080 | $750.00 | Laura Klimley |
| 7/18/1996 | National Westminster General | 38134 | $1,000.00 | Laura Klimley |
| 7/18/1996 | National Wesminster General | 04908 | $2,242.50 | Laura Klimley |
| 7/22/1996 | National Westminster General | 38158 | $70.00 | Laura Klimley |
| 7/25/1996 | National Westminster General | 38195 | $900.00 | Laura Klimley |
| 8/1/1996 | National Wesminster General | 38238 | $750.00 | Laura Klimley |
| 8/8/1996 | National Wesminster General | 38294 | $750.00 | Laura Klimley |
| 8/15/1996 | National Westminster General | 38335 | $700.00 | Laura Klimley |
| 8/22/1996 | National Westminster General | 38380 | $750.00 | Laura Klimley |
| 8/29/1996 | National Wesminster General | 38416 | $600.00 | Laura Klimley |
| 8/29/1996 | National Wesminster General | 38418 | $900.00 | Laura Klimley |

| | | | | |
|---|---|---|---|---|
| 9/5/1996 | National Westminster General | 38480 | $900.00 | Laura Klimley |
| 9/5/1996 | National Westminster General | 38484 | $600.00 | Laura Klimley |
| 9/12/1996 | National Westminster General | 38537 | $900.00 | Laura Klimley |
| 9/12/1996 | National Westminster General | 38539 | $600.00 | Laura Klimley |
| 9/19/1996 | National Westminster General | 38594 | $600.00 | Laura Klimley |
| 9/19/1996 | National Westminster General | 38597 | $900.00 | Laura Klimley |
| 9/26/1996 | National Westminster General | 38646 | $900.00 | Laura Klimley |
| 9/26/1996 | National Westminster General | 38648 | $600.00 | Laura Klimley |
| 10/1/1996 | National Westminster Special | 00641 | $337.50 | Laura Klimley |
| 10/1/1996 | National Westminster Special | 00650 | $18.75 | Laura Klimley |
| 10/3/1996 | National Westminster General | 38689 | $600.00 | Laura Klimley |
| 10/9/1996 | National Westminster General | 38717 | $1,700.00 | Laura Klimley |
| 10/10/1996 | National Westminster General | 38722 | $600.00 | Laura Klimley |
| 10/10/1996 | National Westminster General | 38724 | $900.00 | Laura Klimley |
| 10/17/1996 | National Westminster General | 38762 | $900.00 | Laura Klimley |
| 10/17/1996 | National Westminster General | 38763 | $300.00 | Laura Klimley |
| 10/18/1996 | National Westminster General | 38790 | $70.00 | Laura Klimley |
| 10/22/1996 | National Westminster General | 04914 | $2,242.50 | Laura Klimley |
| 10/24/1996 | National Westminster General | 38813 | $900.00 | Laura Klimley |
| 10/31/1996 | National Westminster General | 38877 | $900.00 | Laura Klimley |
| 10/31/1996 | National Westminster General | 38879 | $700.00 | Laura Klimley |
| 11/7/1996 | National Westminster General | 38935 | $600.00 | Laura Klimley |
| 11/14/1996 | National Westminster General | 38974 | $600.00 | Laura Klimley |
| 11/14/1996 | National Westminster General | 38976 | $900.00 | Laura Klimley |
| 11/21/1996 | National Westminster General | 39033 | $900.00 | Laura Klimley |
| 11/26/1996 | National Westminster General | 39063 | $900.00 | Laura Klimley |
| 12/3/1996 | National Westminster General | 39103 | $500.00 | Laura Klimley |
| 12/5/1996 | National Westminster General | 39132 | $900.00 | Laura Klimley |
| 12/12/1996 | National Westminster General | 39193 | $900.00 | Laura Klimley |
| 12/19/1996 | National Westminster General | 39240 | $600.00 | Laura Klimley |
| 12/19/1996 | National Westminster General | 39242 | $900.00 | Laura Klimley |
| 12/27/1996 | National Westminster General | 39282 | $900.00 | Laura Klimley |
| 1/2/1997 | National Westminster General | 39315 | $600.00 | Laura Klimley |
| 1/2/1997 | National Wesminster Special | 00712 | $337.50 | Laura Klimley |
| 1/2/1997 | National Wesminster Special | 00721 | $18.75 | Laura Klimley |
| 1/9/1997 | National Westminster General | 39363 | $600.00 | Laura Klimley |
| 1/16/1997 | National Westminster General | 39398 | $700.00 | Laura Klimley |
| 1/21/1997 | National Westminster General | 39418 | $2,242.50 | Laura Klimley |
| 1/23/1997 | National Westminster General | 39450 | $350.00 | Laura Klimley |
| 1/30/1997 | National Westminster General | 39511 | $800.00 | Laura Klimley |
| 1/30/1997 | National Westminster General | 39516 | $70.00 | Laura Klimley |
| 2/6/1997 | National Westminster General | 39550 | $700.00 | Laura Klimley |
| 2/13/1997 | National Westminster General | 39588 | $700.00 | Laura Klimley |
| 2/20/1997 | National Westminster General | 39627 | $700.00 | Laura Klimley |
| 3/6/1997 | National Westminster General | 39727 | $700.00 | Laura Klimley |
| 3/20/1997 | National Westminster General | 39798 | $650.00 | Laura Klimley |
| 3/27/1997 | National Westminster General | 39851 | $650.00 | Laura Klimley |
| 4/1/1997 | National Westminster Special | 00806 | $337.50 | Laura Klimley |
| 4/1/1997 | National Westminster Special | 00815 | $18.75 | Laura Klimley |
| 4/3/1997 | National Westminster General | 39870 | $650.00 | Laura Klimley |
| 4/10/1997 | National Westminster General | 39911 | $539.32 | Laura Klimley |
| 4/17/1997 | National Westminster General | 39972 | $500.00 | Laura Klimley |

| Date | Description | Number | Amount | Name |
|---|---|---|---|---|
| 4/24/1997 | National Westminster General | 40024 | $650.00 | Laura Klimley |
| 4/28/1997 | National Westminster General | 40049 | $2,242.50 | Laura Klimley |
| 4/30/1997 | National Westminster General | 40082 | $70.00 | Laura Klimley |
| 5/1/1997 | National Westminster General | 40092 | $850.00 | Laura Klimley |
| 5/8/1997 | National Westminster General | 40136 | $650.00 | Laura Klimley |
| 5/15/1997 | National Westminster General | 40177 | $700.00 | Laura Klimley |
| 5/22/1997 | National Westminster General | 40213 | $650.00 | Laura Klimley |
| 5/27/1997 | National Westminster General | 40246 | $366.45 | Laura Klimley |
| 5/29/1997 | National Westminster General | 40269 | $700.00 | Laura Klimley |
| 5/30/1997 | National Westminster General | 40290 | $450.00 | Laura Klimley |
| 6/5/1997 | National Westminster General | 40344 | $650.00 | Laura Klimley |
| 6/12/1997 | National Westminster General | 40420 | $700.00 | Laura Klimley |
| 6/26/1997 | National Westminster General | 40529 | $3,600.00 | Laura Klimley |
| 7/1/1997 | National Westminster General | 40592 | $337.50 | Laura Klimley |
| 7/1/1997 | National Westminster General | 40595 | $18.75 | Laura Klimley |
| 7/3/1997 | National Westminster General | 40667 | $600.00 | Laura Klimley |
| 7/10/1997 | National Westminster General | 40698 | $650.00 | Laura Klimley |
| 7/17/1997 | National Westminster General | 40741 | $2,242.50 | Laura Klimley |
| 7/17/1997 | National Westminster General | 40745 | $70.00 | Laura Klimley |
| 7/23/1997 | National Westminster General | 40805 | $900.00 | Laura Klimley |
| 7/23/1997 | National Westminster General | 40806 | $700.00 | Laura Klimley |
| 7/31/1997 | National Westminster General | 40850 | $650.00 | Laura Klimley |
| 8/7/1997 | National Westminster General | 40895 | $800.00 | Laura Klimley |
| 8/11/1997 | National Westminster General | 40924 | $100.00 | Laura Klimley |
| 8/14/1997 | National Westminster General | 40943 | $600.00 | Laura Klimley |
| 8/21/1997 | National Westminster General | 40988 | $700.00 | Laura Klimley |
| 8/22/1997 | National Westminster General | 40999 | $206.81 | Laura Klimley |
| 8/28/1997 | National Westminster General | 41037 | $650.00 | Laura Klimley |
| 9/4/1997 | National Westminster General | 41083 | $650.00 | Laura Klimley |
| 9/11/1997 | National Westminster General | 41127 | $650.00 | Laura Klimley |
| 9/18/1997 | National Westminster General | 41177 | $700.00 | Laura Klimley |
| 9/24/1997 | National Westminster General | 41217 | $600.00 | Laura Klimley |
| 10/1/1997 | National Westminster General | 41318 | $937.50 | Laura Klimley |
| 10/1/1997 | National Westminster General | 01754 | $300.00 | Laura Klimley |
| 10/1/1997 | National Westminster General | 01754 | $337.50 | Laura Klimley |
| 10/1/1997 | National Westminster General | 41318 | $600.00 | Laura Klimley |
| 10/1/1997 | National Westminster General | 41318 | $337.50 | Laura Klimley |
| 10/7/1997 | National Westminster General | 41422 | $600.00 | Laura Klimley |
| 10/16/1997 | National Westminster General | 41471 | $600.00 | Laura Klimley |
| 10/22/1997 | National Westminster General | 41510 | $821.25 | Laura Klimley |
| 10/29/1997 | National Westminster General | 41503 | $821.25 | Laura Klimley |
| 10/30/1997 | National Westminster General | 41581 | $70.00 | Laura Klimley |
| 11/5/1997 | National Westminster General | 41622 | $600.00 | Laura Klimley |
| 11/12/1997 | National Westminster General | 41667 | $3,100.00 | Laura Klimley |
| 11/19/1997 | National Westminster General | 41728 | $600.00 | Laura Klimley |
| 11/24/1997 | National Westminster General | 41764 | $500.00 | Laura Klimley |
| 12/3/1997 | National Westminster General | 41837 | $500.00 | Laura Klimley |
| 12/3/1997 | National Westminster General | 41840 | $600.00 | Laura Klimley |
| 12/9/1997 | National Westminster General | 41887 | $2,000.00 | Laura Klimley |
| 12/10/1997 | National Westminster General | 41899 | $600.00 | Laura Klimley |
| 12/16/1997 | National Westminster General | 41961 | $600.00 | Laura Klimley |
| 12/19/1997 | National Westminster General | 41991 | $600.00 | Laura Klimley |

| 12/30/1997 | National Westminster General | 42062 | $600.00 | Laura Klimley |
| 1/2/1998 | National Westminster General | 42105 | $337.50 | Laura Klimley |
| 1/2/1998 | National Westminster General | 42108 | $18.75 | Laura Klimley |
| 1/7/1998 | National Westminster General | 42179 | $600.00 | Laura Klimley |
| 1/14/1998 | National Westminster General | 42223 | $300.00 | Laura Klimley |
| 1/21/1998 | National Westminster General | 42279 | $700.00 | Laura Klimley |
| 1/23/1998 | National Westminster General | 42300 | $70.00 | Laura Klimley |
| 2/4/1998 | National Westminster General | 42382 | $700.00 | Laura Klimley |
| 2/11/1998 | National Westminster General | 42436 | $700.00 | Laura Klimley |
| 2/25/1998 | National Westminster General | 42528 | $300.00 | Laura Klimley |
| 3/4/1998 | National Westminster General | 42560 | $600.00 | Laura Klimley |
| 3/11/1998 | National Westminster General | 42604 | $600.00 | Laura Klimley |
| 3/16/1998 | National Westminster General | 42625 | $2,400.00 | Laura Klimley |
| 3/18/1998 | National Westminster General | 42650 | $600.00 | Laura Klimley |
| 3/24/1998 | National Westminster General | 42680 | $2,800.00 | Laura Klimley |
| 3/25/1998 | National Westminster General | 42687 | $600.00 | Laura Klimley |
| 4/1/1998 | National Westminster General | 42756 | $337.50 | Laura Klimley |
| 4/1/1998 | National Westminster General | 42761 | $18.75 | Laura Klimley |
| 4/8/1998 | National Westminster General | 42869 | $3,431.82 | Laura Klimley |
| 4/9/1998 | National Westminster General | 42884 | $70.00 | Laura Klimley |
| 4/15/1998 | National Westminster General | 42925 | $600.00 | Laura Klimley |
| 4/22/1998 | National Westminster General | 43011 | $600.00 | Laura Klimley |
| 4/29/1998 | National Westminster General | 43079 | $800.00 | Laura Klimley |
| 5/6/1998 | National Westminster General | 43154 | $600.00 | Laura Klimley |
| 5/13/1998 | National Westminster General | 43214 | $1,100.00 | Laura Klimley |
| 5/19/1998 | National Westminster General | 43266 | $3,100.00 | Laura Klimley |
| 5/27/1998 | National Westminster General | 43310 | $700.00 | Laura Klimley |
| 6/3/1998 | National Westminster General | 43372 | $700.00 | Laura Klimley |
| 6/10/1998 | National Westminster General | 43436 | $600.00 | Laura Klimley |
| 6/17/1998 | National Westminster General | 43494 | $600.00 | Laura Klimley |
| 6/22/1998 | National Westminster General | 43533 | $1,200.00 | Laura Klimley |
| 6/24/1998 | National Westminster General | 43550 | $600.00 | Laura Klimley |
| 6/30/1998 | National Westminster General | 43589 | $600.00 | Laura Klimley |
| 7/1/1999 | National Westminster General | 46660 | $337.50 | Laura Klimley |
| 7/1/1999 | National Westminster General | 46662 | $18.75 | Laura Klimley |
| 7/7/1999 | National Westminster General | 46758 | $300.00 | Laura Klimley |
| 7/8/1999 | National Westminster General | 04958 | $2,242.50 | Laura Klimley |
| 7/12/1999 | National Westminster General | 46791 | $70.00 | Laura Klimley |
| 7/14/1999 | National Westminster General | 46808 | $600.00 | Laura Klimley |
| 7/15/1999 | National Westminster General | 01883 | $297.00 | Laura Klimley |
| 7/22/1999 | National Westminster General | 46857 | $600.00 | Laura Klimley |
| 7/28/1999 | National Westminster General | 46896 | $700.00 | Laura Klimley |
| 8/4/1999 | National Westminster General | 46948 | $600.00 | Laura Klimley |
| 8/11/1999 | National Westminster General | 46985 | $600.00 | Laura Klimley |
| 8/17/1999 | National Westminster General | 47037 | $600.00 | Laura Klimley |
| 8/23/1999 | National Westminster General | 47066 | $600.00 | Laura Klimley |
| 9/1/1999 | National Westminster General | 47119 | $600.00 | Laura Klimley |
| 9/8/1999 | National Westminster General | 47173 | $600.00 | Laura Klimley |
| 9/15/1999 | National Westminster General | 47224 | $600.00 | Laura Klimley |
| 9/22/1999 | National Westminster General | 47279 | $700.00 | Laura Klimley |
| 9/29/1999 | National Westminster General | 47337 | $600.00 | Laura Klimley |
| 10/1/1999 | National Westminster General | 47387 | $337.50 | Laura Klimley |

| | | | | |
|---|---|---|---|---|
| 10/1/1999 | National Westminster General | 47389 | $18.75 | Laura Klimley |
| 10/6/1999 | National Westminster General | 47496 | $260.00 | Laura Klimley |
| 10/12/1999 | National Westminster General | 47534 | $1,600.00 | Laura Klimley |
| 10/13/1999 | National Westminster General | 47541 | $600.00 | Laura Klimley |
| 10/20/1999 | National Westminster General | 47604 | $600.00 | Laura Klimley |
| 10/20/1999 | National Westminster General | 47607 | $50,000.00 | Laura Klimley |
| 10/27/1999 | National Westminster General | 47655 | $600.00 | Laura Klimley |
| 10/28/1999 | National Westminster General | 47667 | $70.00 | Laura Klimley |
| 10/28/1999 | National Westminster General | 04959 | $2,242.50 | Laura Klimley |
| 10/28/1999 | National Westminster General | 47667 | -$70.00 | Laura Klimley |
| 11/2/1999 | National Westminster General | 47717 | $600.00 | Laura Klimley |
| 11/9/1999 | National Westminster General | 47772 | $80.00 | Laura Klimley |
| 11/10/1999 | National Westminster General | 47778 | $600.00 | Laura Klimley |
| 11/17/1999 | National Westminster General | 47830 | $600.00 | Laura Klimley |
| 11/22/1999 | National Westminster General | 47875 | $600.00 | Laura Klimley |
| 12/1/1999 | National Westminster General | 47948 | $600.00 | Laura Klimley |
| 12/8/1999 | National Westminster General | 48004 | $600.00 | Laura Klimley |
| 12/15/1999 | National Westminster General | 48062 | $600.00 | Laura Klimley |
| 12/20/1999 | National Westminster General | 48102 | $700.00 | Laura Klimley |
| 12/28/1999 | National Westminster General | 48168 | $700.00 | Laura Klimley |
| 1/3/2000 | National Westminster Special | 00860 | $337.50 | Laura Klimley |
| 1/3/2000 | National Westminster Special | 00868 | $18.75 | Laura Klimley |
| 1/5/2000 | National Westminster General | 48229 | $250.00 | Laura Klimley |
| 1/12/2000 | National Westminster General | 48277 | $600.00 | Laura Klimley |
| 1/12/2000 | National Westminster General | 04960 | $2,242.50 | Laura Klimley |
| 1/13/2000 | National Westminster General | 48284 | $70.00 | Laura Klimley |
| 1/26/2000 | National Westminster General | 48356 | $600.00 | Laura Klimley |
| 1/28/2000 | National Westminster General | 48382 | $300.00 | Laura Klimley |
| 2/2/2000 | National Westminster General | 48439 | $600.00 | Laura Klimley |
| 2/9/2000 | National Westminster General | 48490 | $600.00 | Laura Klimley |
| 2/16/2000 | National Westminster General | 48526 | $600.00 | Laura Klimley |
| 2/23/2000 | National Westminster General | 48577 | $600.00 | Laura Klimley |
| 3/1/2000 | National Westminster General | 48622 | $700.00 | Laura Klimley |
| 3/8/2000 | National Westminster General | 48681 | $700.00 | Laura Klimley |
| 3/15/2000 | National Westminster General | 48727 | $600.00 | Laura Klimley |
| 3/21/2000 | National Westminster General | 48781 | $600.00 | Laura Klimley |
| 3/24/2000 | National Westminster General | 48813 | $2,900.00 | Laura Klimley |
| 4/3/2000 | National Westminster Special | 01024 | $337.50 | Laura Klimley |
| 4/3/2000 | National Westminster Special | 01032 | $18.75 | Laura Klimley |
| 4/5/2000 | National Westminster General | 48890 | $700.00 | Laura Klimley |
| 4/12/2000 | National Westminster General | 48938 | $600.00 | Laura Klimley |
| 4/12/2000 | National Westminster General | 04965 | $2,242.50 | Laura Klimley |
| 4/13/2000 | National Westminster General | 48947 | $70.00 | Laura Klimley |
| 4/18/2000 | National Westminster General | 48979 | $300.00 | Laura Klimley |
| 4/26/2000 | National Westminster General | 49031 | $600.00 | Laura Klimley |
| 5/1/2000 | National Westminster General | 49084 | $800.00 | Laura Klimley |
| 5/10/2000 | National Westminster General | 49144 | $250.00 | Laura Klimley |
| 5/10/2000 | National Westminster General | 49147 | $389.32 | Laura Klimley |
| 5/17/2000 | National Westminster General | 49191 | $600.00 | Laura Klimley |
| 5/24/2000 | National Westminster General | 49237 | $1,000.00 | Laura Klimley |
| 6/1/2000 | National Westminster General | 49316 | $600.00 | Laura Klimley |
| 6/7/2000 | National Westminster General | 49362 | $600.00 | Laura Klimley |

| | | | | |
|---|---|---|---|---|
| 6/14/2000 | National Westminster General | 49422 | $600.00 | Laura Klimley |
| 6/21/2000 | National Westminster General | 49463 | $600.00 | Laura Klimley |
| 6/28/2000 | National Westminster General | 49516 | $600.00 | Laura Klimley |
| 7/5/2000 | National Westminster General | 49533 | $600.00 | Laura Klimley |
| 7/5/2000 | National Westminster Special | 01118 | $337.50 | Laura Klimley |
| 7/5/2000 | National Westminster Special | 01126 | $18.75 | Laura Klimley |
| 7/5/2000 | National Westminster Special | 1118 | $337.50 | Laura Klimley |
| 7/5/2000 | National Westminster Special | 1126 | $18.75 | Laura Klimley |
| 7/12/2000 | National Westminster General | 49593 | $600.00 | Laura Klimley |
| 7/12/2000 | National Westminster General | 49600 | $70.00 | Laura Klimley |
| 7/13/2000 | Hudson Valley National | 04967 | $2,242.50 | Laura Klimley |
| 7/20/2000 | National Westminster General | 49640 | $600.00 | Laura Klimley |
| 7/26/2000 | National Westminster General | 49681 | $600.00 | Laura Klimley |
| 8/2/2000 | National Westminster General | 49741 | $600.00 | Laura Klimley |
| 8/9/2000 | National Westminster General | 49780 | $600.00 | Laura Klimley |
| 8/16/2000 | National Westminster General | 49843 | $600.00 | Laura Klimley |
| 8/23/2000 | National Westminster General | 49888 | $600.00 | Laura Klimley |
| 8/30/2000 | National Westminster General | 49938 | $600.00 | Laura Klimley |
| 9/6/2000 | National Westminster General | 49985 | $600.00 | Laura Klimley |
| 9/13/2000 | National Westminster General | 50030 | $600.00 | Laura Klimley |
| 9/20/2000 | National Westminster General | 50080 | $600.00 | Laura Klimley |
| 9/27/2000 | National Westminster General | 50137 | $600.00 | Laura Klimley |
| 10/2/2000 | National Westminster Special | 01241 | $337.50 | Laura Klimley |
| 10/2/2000 | National Westminster Special | 01249 | $18.75 | Laura Klimley |
| 10/4/2000 | National Westminster General | 50200 | $2,242.50 | Laura Klimley |
| 10/5/2000 | National Westminster General | 50215 | $70.00 | Laura Klimley |
| 10/11/2000 | National Westminster General | 50254 | $300.00 | Laura Klimley |
| 10/19/2000 | National Westminster General | 50328 | $600.00 | Laura Klimley |
| 10/25/2000 | National Westminster General | 50380 | $600.00 | Laura Klimley |
| 11/1/2000 | National Westminster General | 50446 | $800.00 | Laura Klimley |
| 11/8/2000 | National Westminster General | 50514 | $600.00 | Laura Klimley |
| 11/15/2000 | National Westminster General | 50565 | $600.00 | Laura Klimley |
| 11/21/2000 | National Westminster General | 50622 | $700.00 | Laura Klimley |
| 12/1/2000 | National Westminster General | 50708 | $3,152.01 | Laura Klimley |
| 12/6/2000 | National Westminster General | 50768 | $600.00 | Laura Klimley |
| 12/13/2000 | National Westminster General | 50834 | $600.00 | Laura Klimley |
| 12/20/2000 | National Westminster General | 50908 | $600.00 | Laura Klimley |
| 12/27/2000 | National Westminster General | 50940 | $600.00 | Laura Klimley |
| 1/2/2001 | National Westminster Special | 01367 | $337.50 | Laura Klimley |
| 1/2/2001 | National Westminster Special | 01375 | $18.75 | Laura Klimley |
| 1/3/2001 | National Westminster General | 50995 | $300.00 | Laura Klimley |
| 1/4/2001 | Hudson Valley National | 04968 | $2,242.50 | Laura Klimley |
| 1/5/2001 | National Westminster General | 51025 | $70.00 | Laura Klimley |
| 1/9/2001 | National Westminster General | 51058 | $600.00 | Laura Klimley |
| 1/17/2001 | National Westminster General | 51114 | $600.00 | Laura Klimley |
| 1/24/2001 | National Westminster General | 51178 | $600.00 | Laura Klimley |
| 1/31/2001 | National Westminster General | 51238 | $1,000.00 | Laura Klimley |
| 2/7/2001 | National Westminster General | 51295 | $600.00 | Laura Klimley |
| 2/14/2001 | National Westminster General | 51346 | $600.00 | Laura Klimley |
| 2/21/2001 | National Westminster General | 51396 | $600.00 | Laura Klimley |
| 2/27/2001 | National Westminster General | 51417 | $600.00 | Laura Klimley |
| 3/7/2001 | National Westminster General | 51455 | $600.00 | Laura Klimley |

| Date | Account | Number | Amount | Name |
|---|---|---|---|---|
| 3/14/2001 | National Westminster General | 51530 | $600.00 | Laura Klimley |
| 3/21/2001 | National Westminster General | 51582 | $2,800.00 | Laura Klimley |
| 3/21/2001 | National Westminster General | 51583 | $600.00 | Laura Klimley |
| 3/28/2001 | National Westminster General | 51625 | $600.00 | Laura Klimley |
| 4/2/2001 | National Westminster Special | 01509 | $337.50 | Laura Klimley |
| 4/2/2001 | National Westminster Special | 01517 | $18.75 | Laura Klimley |
| 4/4/2001 | National Westminster General | 51681 | $600.00 | Laura Klimley |
| 4/10/2001 | National Westminster General | 51736 | $300.00 | Laura Klimley |
| 4/18/2001 | National Westminster General | 51779 | $1,342.50 | Laura Klimley |
| 4/18/2001 | National Westminster General | 51784 | $70.00 | Laura Klimley |
| 5/2/2001 | National Westminster General | 51880 | $600.00 | Laura Klimley |
| 5/2/2001 | National Westminster General | 51880 | $600.00 | Laura Klimley |
| 5/9/2001 | National Westminster General | 51941 | $600.00 | Laura Klimley |
| 5/16/2001 | National Westminster General | 51998 | $600.00 | Laura Klimley |
| 5/23/2001 | National Westminster General | 52048 | $1,189.32 | Laura Klimley |
| 5/30/2001 | National Westminster General | 52107 | $300.00 | Laura Klimley |
| 6/6/2001 | National Westminster General | 52172 | $600.00 | Laura Klimley |
| 6/13/2001 | National Westminster General | 52222 | $600.00 | Laura Klimley |
| 6/20/2001 | National Westminster General | 52281 | $600.00 | Laura Klimley |
| 6/27/2001 | National Westminster General | 52349 | $600.00 | Laura Klimley |
| 7/2/2001 | National Westminster Special | 1658 | $337.50 | Laura Klimley |
| 7/2/2001 | National Westminster Special | 01666 | $18.75 | Laura Klimley |
| 7/3/2001 | National Westminster General | 52378 | $600.00 | Laura Klimley |
| 7/11/2001 | National Westminster General | 52449 | $70.00 | Laura Klimley |
| 7/24/2001 | National Westminster General | 52545 | $600.00 | Laura Klimley |
| 8/7/2001 | National Westminster General | 52678 | $600.00 | Laura Klimley |
| 8/14/2001 | National Westminster General | 52722 | $600.00 | Laura Klimley |
| 8/22/2001 | National Westminster General | 52775 | $1,200.00 | Laura Klimley |
| 9/5/2001 | National Westminster General | 52868 | $600.00 | Laura Klimley |
| 9/12/2001 | National Westminster General | 52904 | $600.00 | Laura Klimley |
| 9/19/2001 | National Westminster General | 52931 | $600.00 | Laura Klimley |
| 9/26/2001 | National Westminster General | 52986 | $600.00 | Laura Klimley |
| 10/1/2001 | National Westminster Special | 01796 | $337.50 | Laura Klimley |
| 10/1/2001 | National Westminster Special | 01804 | $18.75 | Laura Klimley |
| 10/3/2001 | National Westminster General | 53024 | $2,242.50 | Laura Klimley |
| 10/10/2001 | National Westminster General | 53063 | $600.00 | Laura Klimley |
| 10/17/2001 | National Westminster General | 53136 | $400.00 | Laura Klimley |
| 10/23/2001 | National Westminster General | 53184 | $600.00 | Laura Klimley |
| 10/30/2001 | National Westminster General | 53222 | $600.00 | Laura Klimley |
| 10/30/2001 | National Westminster General | 53225 | $70.00 | Laura Klimley |
| 11/6/2001 | National Westminster General | 53274 | $600.00 | Laura Klimley |
| 11/6/2001 | National Westminster General | 53277 | $10,000.00 | Laura Klimley |
| 11/14/2001 | National Westminster General | 53330 | $600.00 | Laura Klimley |
| 11/19/2001 | National Westminster General | 53371 | $600.00 | Laura Klimley |
| 11/28/2001 | National Westminster General | 53466 | $800.00 | Laura Klimley |
| 12/5/2001 | Fleet General | 53516 | $600.00 | Laura Klimley |
| 12/12/2001 | Fleet General | 53580 | $600.00 | Laura Klimley |
| 12/18/2001 | Fleet General | 53626 | $1,200.00 | Laura Klimley |
| 12/18/2001 | Fleet General | 53629 | $100.00 | Laura Klimley |
| 1/2/2002 | Fleet General | 53667 | $600.00 | Laura Klimley |
| 1/2/2002 | National Westminster Special | 01989 | $337.50 | Laura Klimley |
| 1/2/2002 | National Westminster Special | 01997 | $18.75 | Laura Klimley |

| 1/9/2002 | Fleet General | 53718 | $200.00 | Laura Klimley |
|---|---|---|---|---|
| 1/10/2002 | National Westminster General | 4972 | $2,242.50 | Laura Klimley |
| 1/14/2002 | Fleet General | 53740 | $70.00 | Laura Klimley |
| 1/16/2002 | Fleet General | 53766 | $600.00 | Laura Klimley |
| 1/22/2002 | Fleet General | 53792 | $600.00 | Laura Klimley |
| 2/6/2002 | Fleet General | 53885 | $600.00 | Laura Klimley |
| 2/12/2002 | Fleet General | 53933 | $1,200.00 | Laura Klimley |
| 2/27/2002 | Fleet General | 53991 | $600.00 | Laura Klimley |
| 3/6/2002 | Fleet General | 54040 | $600.00 | Laura Klimley |
| 3/13/2002 | Fleet General | 54087 | $600.00 | Laura Klimley |
| 3/18/2002 | Fleet General | 54109 | $2,900.00 | Laura Klimley |
| 3/19/2002 | Fleet General | 54131 | $600.00 | Laura Klimley |
| 3/27/2002 | Fleet General | 54182 | $600.00 | Laura Klimley |
| 4/1/2002 | Fleet General | 54246 | $337.50 | Laura Klimley |
| 4/1/2002 | Fleet General | 54248 | $18.75 | Laura Klimley |
| 4/3/2002 | Fleet General | 54356 | $300.00 | Laura Klimley |
| 4/10/2002 | Fleet General | 54410 | $600.00 | Laura Klimley |
| 4/17/2002 | Fleet General | 54453 | $600.00 | Laura Klimley |
| 4/18/2002 | Fleet General | 54463 | $70.00 | Laura Klimley |
| 4/18/2002 | National Westminster General | 04975 | $2,242.50 | Laura Klimley |
| 4/29/2002 | Fleet General | 54523 | $300.00 | Laura Klimley |
| 5/1/2002 | Fleet General | 54553 | $600.00 | Laura Klimley |
| 5/8/2002 | Fleet General | 54596 | $600.00 | Laura Klimley |
| 5/15/2002 | Fleet General | 54642 | $600.00 | Laura Klimley |
| 5/22/2002 | Fleet General | 54684 | $600.00 | Laura Klimley |
| 5/24/2002 | Fleet General | 54499 | $600.00 | Laura Klimley |
| 5/28/2002 | Fleet General | 54714 | $600.00 | Laura Klimley |
| 6/4/2002 | Fleet General | 54770 | $600.00 | Laura Klimley |
| 6/11/2002 | Fleet General | 54837 | $600.00 | Laura Klimley |
| 6/19/2002 | Fleet General | 54873 | $1,189.32 | Laura Klimley |
| 7/1/2002 | Fleet General | 54990 | $400.00 | Laura Klimley |
| 7/1/2002 | Fleet General | 54991 | $337.50 | Laura Klimley |
| 7/1/2002 | Fleet General | 54993 | $18.75 | Laura Klimley |
| 7/1/2002 | Hudson Valley National | 4977 | $200.00 | Laura Klimley |
| 7/10/2002 | Fleet General | 55142 | $600.00 | Laura Klimley |
| 7/11/2002 | Hudson Valley National | 4978 | $2,242.50 | Laura Klimley |
| 7/15/2002 | Fleet General | 55161 | $70.00 | Laura Klimley |
| 7/16/2002 | Fleet General | 55179 | $1,200.00 | Laura Klimley |
| 7/30/2002 | Fleet General | 55239 | $1,000.00 | Laura Klimley |
| 8/7/2002 | Fleet General | 55307 | $600.00 | Laura Klimley |
| 8/12/2002 | Fleet General | 55328 | $600.00 | Laura Klimley |
| 8/14/2002 | Hudson Valley National | 4980 | $600.00 | Laura Klimley |
| 8/28/2002 | Fleet General | 55421 | $700.00 | Laura Klimley |
| 9/4/2002 | Fleet General | 55451 | $1,000.00 | Laura Klimley |
| 9/10/2002 | Fleet General | 55502 | $1,700.00 | Laura Klimley |
| 9/18/2002 | Fleet General | 55561 | $600.00 | Laura Klimley |
| 9/25/2002 | Fleet General | 55598 | $600.00 | Laura Klimley |
| 10/1/2002 | Fleet General | 55655 | $337.50 | Laura Klimley |
| 10/1/2002 | Fleet General | 55657 | $18.75 | Laura Klimley |
| 10/1/2002 | Hudson Valley National | 04981 | $2,242.50 | Laura Klimley |
| 10/2/2002 | Fleet General | 55771 | $300.00 | Laura Klimley |
| 10/11/2002 | Fleet General | 55823 | $70.00 | Laura Klimley |

| | | | | |
|---|---|---|---|---|
| 10/16/2002 | Fleet General | 55856 | $600.00 | Laura Klimley |
| 10/22/2002 | Fleet General | 55894 | $600.00 | Laura Klimley |
| 10/28/2002 | Fleet General | 55913 | $800.00 | Laura Klimley |
| 11/6/2002 | Fleet General | 55997 | $600.00 | Laura Klimley |
| 11/13/2002 | Fleet General | 56033 | $600.00 | Laura Klimley |
| 11/20/2002 | Fleet General | 2597 | $700.00 | Laura Klimley |
| 11/25/2002 | Fleet General | 56109 | $600.00 | Laura Klimley |
| 12/4/2002 | Fleet General | 56160 | $600.00 | Laura Klimley |
| 12/9/2002 | Fleet General | 56182 | $553.25 | Laura Klimley |
| 12/11/2002 | Fleet General | 56203 | $600.00 | Laura Klimley |
| 12/18/2002 | Fleet General | 56260 | $1,800.00 | Laura Klimley |
| 1/2/2003 | Fleet General | 56397 | $337.50 | Laura Klimley |
| 1/2/2003 | Fleet General | 56399 | $13.75 | Laura Klimley |
| 1/8/2003 | Fleet General | 56523 | $300.00 | Laura Klimley |
| 1/13/2003 | Fleet General | 56553 | $600.00 | Laura Klimley |
| 1/16/2003 | Hudson Valley National | 04984 | $2,242.50 | Laura Klimley |
| 1/21/2003 | Fleet General | 56574 | $70.00 | Laura Klimley |
| 1/22/2003 | Fleet General | 56585 | $600.00 | Laura Klimley |
| 1/29/2003 | Fleet General | 56628 | $600.00 | Laura Klimley |
| 2/5/2003 | Fleet General | 56679 | $600.00 | Laura Klimley |
| 2/12/2003 | Fleet General | 56713 | $600.00 | Laura Klimley |
| 2/12/2003 | Fleet General | 56715 | $921.00 | Laura Klimley |
| 2/13/2003 | Fleet General | 56734 | $600.00 | Laura Klimley |
| 2/26/2003 | Fleet General | 56779 | $600.00 | Laura Klimley |
| 3/4/2003 | Fleet General | 56828 | $600.00 | Laura Klimley |
| 3/10/2003 | Fleet General | 56852 | $2,900.00 | Laura Klimley |
| 3/11/2003 | Fleet General | 56870 | $600.00 | Laura Klimley |
| 3/18/2003 | Fleet General | 56906 | $500.00 | Laura Klimley |
| 3/25/2003 | Fleet General | 56952 | $600.00 | Laura Klimley |
| 4/1/2003 | Fleet General | 57016 | $337.50 | Laura Klimley |
| 4/1/2003 | Fleet General | 57019 | $18.75 | Laura Klimley |
| 4/2/2003 | Fleet General | 57141 | $300.00 | Laura Klimley |
| 4/9/2003 | Fleet General | 57169 | $600.00 | Laura Klimley |
| 4/16/2003 | Fleet General | 57197 | $600.00 | Laura Klimley |
| 4/16/2003 | Hudson Valley National | 2900 | $2,242.50 | Laura Klimley |
| 4/23/2003 | Fleet General | 57229 | $600.00 | Laura Klimley |
| 4/23/2003 | Fleet General | 57231 | $70.00 | Laura Klimley |
| 4/29/2003 | Fleet General | 57259 | $1,200.00 | Laura Klimley |
| 5/2/2003 | Fleet General | 57303 | $600.00 | Laura Klimley |
| 5/7/2003 | Fleet General | 57333 | $600.00 | Laura Klimley |
| 5/14/2003 | Fleet General | 57372 | $600.00 | Laura Klimley |
| 5/21/2003 | Fleet General | 57411 | $600.00 | Laura Klimley |
| 5/28/2003 | Fleet General | 57445 | $600.00 | Laura Klimley |
| 6/4/2003 | Hudson Valley National | 1370 | $600.00 | Laura Klimley |
| 6/4/2003 | Hudson Valley National | 4990 | $600.00 | Laura Klimley |
| 6/9/2003 | Fleet General | 57517 | $600.00 | Laura Klimley |
| 6/17/2003 | Fleet General | 57558 | $600.00 | Laura Klimley |
| 6/24/2003 | Fleet General | 57600 | $600.00 | Laura Klimley |
| 7/1/2003 | Fleet General | 57681 | $337.50 | Laura Klimley |
| 7/1/2003 | Fleet General | 57682 | $262.50 | Laura Klimley |
| 7/8/2003 | Fleet General | 57838 | $600.00 | Laura Klimley |
| 7/15/2003 | Fleet General | 57878 | $600.00 | Laura Klimley |

| | | | | |
|---|---|---|---|---|
| 7/22/2003 | Fleet General | 57935 | $600.00 | Laura Klimley |
| 7/28/2003 | Fleet General | 57961 | $70.00 | Laura Klimley |
| 7/29/2003 | Fleet General | 57972 | $600.00 | Laura Klimley |
| 7/29/2003 | Hudson Valley National | 4992 | $2,242.50 | Laura Klimley |
| 7/30/2003 | Fleet General | 57995 | $600.00 | Laura Klimley |
| 8/5/2003 | Fleet General | 58038 | $1,200.00 | Laura Klimley |
| 8/19/2003 | Fleet General | 58122 | $600.00 | Laura Klimley |
| 8/21/2003 | Fleet General | 58141 | $100.00 | Laura Klimley |
| 8/27/2003 | Fleet General | 58189 | $600.00 | Laura Klimley |
| 9/2/2003 | Fleet General | 58212 | $600.00 | Laura Klimley |
| 9/9/2003 | Fleet General | 58247 | $600.00 | Laura Klimley |
| 9/16/2003 | Fleet General | 58291 | $600.00 | Laura Klimley |
| 9/23/2003 | Fleet General | 58335 | $600.00 | Laura Klimley |
| 10/1/2003 | Fleet General | 58417 | $637.50 | Laura Klimley |
| 10/1/2003 | Fleet General | 58419 | $18.75 | Laura Klimley |
| 10/6/2003 | Fleet General | 2740 | $1,700.00 | Laura Klimley |
| 10/8/2003 | Fleet General | 58589 | $600.00 | Laura Klimley |
| 10/15/2003 | Fleet General | 58621 | $600.00 | Laura Klimley |
| 10/21/2003 | Fleet General | 58651 | $600.00 | Laura Klimley |
| 10/23/2003 | Fleet General | 58674 | $2,242.50 | Laura Klimley |
| 11/4/2003 | Fleet General | 58753 | $1,100.00 | Laura Klimley |
| 11/7/2003 | Fleet General | 2754 | $1,000.00 | Laura Klimley |
| 11/11/2003 | Fleet General | 58792 | $600.00 | Laura Klimley |
| 11/19/2003 | Fleet General | 58859 | $700.00 | Laura Klimley |
| 11/24/2003 | Fleet General | 58899 | $600.00 | Laura Klimley |
| 12/2/2003 | Fleet General | 58940 | $600.00 | Laura Klimley |
| 12/9/2003 | Fleet General | 59003 | $600.00 | Laura Klimley |
| 12/16/2003 | Fleet General | 59043 | $600.00 | Laura Klimley |
| 1/5/2004 | Fleet General | 59171 | $337.50 | Laura Klimley |
| 1/5/2004 | Fleet General | 59173 | $18.75 | Laura Klimley |
| 1/6/2004 | Fleet General | 59292 | $300.00 | Laura Klimley |
| 1/23/2004 | Fleet General | 59403 | $2,242.50 | Laura Klimley |
| 1/23/2004 | Fleet General | 59405 | $70.00 | Laura Klimley |
| 2/9/2004 | Fleet General | 59493 | $700.00 | Laura Klimley |
| 2/24/2004 | Fleet General | 59552 | $1,000.00 | Laura Klimley |
| 3/1/2004 | Fleet General | 59580 | $300.00 | Laura Klimley |
| 3/1/2004 | Fleet General | 59581 | $3,400.00 | Laura Klimley |
| 3/9/2004 | Fleet General | 59629 | $600.00 | Laura Klimley |
| 3/15/2004 | Fleet General | 59652 | $600.00 | Laura Klimley |
| 3/30/2004 | Fleet General | 59750 | $600.00 | Laura Klimley |
| 4/1/2004 | Fleet General | 59802 | $337.50 | Laura Klimley |
| 4/1/2004 | Fleet General | 59804 | $18.75 | Laura Klimley |
| 4/5/2004 | Fleet General | 59923 | $400.00 | Laura Klimley |
| 4/5/2004 | Fleet General | 59924 | $1,842.50 | Laura Klimley |
| 4/5/2004 | Fleet General | 59925 | $70.00 | Laura Klimley |
| 4/28/2004 | Fleet General | 60042 | $1,400.00 | Laura Klimley |
| 5/14/2004 | Fleet General | 60109 | $600.00 | Laura Klimley |
| 5/20/2004 | Fleet General | 60128 | $1,300.00 | Laura Klimley |
| 5/26/2004 | Fleet General | 60148 | $600.00 | Laura Klimley |
| 6/29/2001 | National Westminster General | 2515 | $255.60 | Laura Klimley Draw |
| 8/1/2001 | National Westminster General | 2519 | $800.00 | Laura Klimley Draw |

24

From 1999 until 2004, these payments were made to Klimley, although Klimley claimed not to be owed money by the Company and likewise claimed to have no active role with the Company.

21.    The Company likewise made at least $2,434,992.00 of advances and loans to Alicia Eimicke, Maxine Eimicke and Victor Eimicke during this period and at a time that Defendants Klimley, Palmero and Maxine Eimicke had actual knowledge that the Company was insolvent. The officers and directors of the Company, including said Defendants, had full knowledge of these payments as they were clearly reflected in the financial records of the Company. Defendants Klimley, Palmero and Maxine Eimicke reviewed, approved and/or ratified these payments although said Defendants knew these payments to be improper.  Furthermore, the recipients of said loans and advances did not repay these loans and advances and had no intention of repaying these loans and advances; a fact known to said Defendants at the time that said loans were reviewed, approved and/or ratified.

22.    In addition to the aforesaid payments, the Company during these years, at the direction of the officers and directors of the Company, including Defendants Klimley, Palmero and Maxine Eimicke, permitted Klimley, Maxine Eimicke and Alicia Eimicke run up hundreds of thousands of dollars of charges on the Company's American Express Card for personal expenses which the Company paid. The Company, at the direction of the officers and directors of the Company, including said Defendants, also paid for Maxine Eimicke's, Alicia Eimicke's and Klimley's health insurance; gave Alicia Eimicke the use of corporate vehicles at Company expense; permitted Klimley to utilize the Company's staff to run personal errands and conduct personal business; paid for the personal expenses of Maxine Eimicke and Alicia Eimicke including, automobile services, dining, medical bills, vacations; made large "charitable" donations to the Foundation and other like and equally improper expenditures.

23.     On at least a yearly basis, the officers and directors of the Company would meet and approve the continuation of the Company's illegal Note Program; approve the Company's aforesaid illegal dividends and excessive salaries; and review detailed financial records of the Company prepared by Palmero, including but not limited to balance sheets and state and federal income tax returns, that clearly demonstrated the continuing and ever deepening insolvency of the Company; the expansion of the illegal Note Program and the existence of the aforesaid illegal salaries, loans and advances. Specifically, these meeting were held as follows:

(a)     Meeting of the Directors on December 5, 1990 at the University Club in New York, New York. At this meeting, at which Alicia Eimicke, Klimley and Maxine Eimicke were in attendance, the directors, including Alicia Eimicke, Klimley and Maxine Eimicke, approved a dividend of 70 cents a share of common stock; salaries of $147,832.88 to Alicia Eimicke and $118,143.16 to Klimley, and payments of $42,000.00 to Hereford.

(b)     Meeting of the Directors on December 4, 1991 at the offices of the Company at East Grassy Sprain Road, Yonkers, New York (hereinafter "Grassy Sprain"). At this meeting, at which Alicia Eimicke, Klimley, Maxine Eimicke and Palmero were in attendance, the directors, including Alicia Eimicke, Klimley and Maxine Eimicke, approved a dividend of 70 cents per share of common stock; a dividend of $2.50 per share of preferred stock; salaries of $112,396.38 to Alicia Eimicke and $120,970.16 for Laura Klimley, and payments of $42,000.00 to Hereford.

(c)     Meeting of the Directors on December 2, 1992 at Grassy Sprain. At this meeting, at which Alicia Eimicke, Klimley, Maxine Eimicke and Palmero were in attendance, the directors, including Alicia Eimicke, Klimley and Maxine Eimicke, approved a dividend of 70 cents per share of common stock; a dividend of $2.50 per share of preferred stock; salaries

of 141,124.88 to Alicia Eimicke; $114,029.24 for Laura Klimley; $550,000.00 for Victor

Eimicke and $50,000.00 for Maxine Eimicke, and payments of $42,000.00 to Hereford.

      (d)      Meeting of the Directors on December 1, 1993 at Grassy Sprain. At this

meeting, at which Alicia Eimicke, Klimley, Maxine Eimicke and Palmero were in attendance,

the directors, including Alicia Eimicke, Klimley and Maxine Eimicke, approved a dividend of

70 cents per share of common stock; a dividend of $2.50 per share of preferred stock; salaries

of 188,078.82 to Alicia Eimicke; $115,546.86 for Laura Klimley; $550,000.00 for Victor

Eimicke and $50,000.00 for Maxine Eimicke, and payments of $42,000.00 to Hereford.

      (e)      Meeting of the Directors on December 7, 1994 at the home of Alicia Eimicke

(524 East 72 Street, New York, New York). At this meeting, at which Alicia Eimicke,

Klimley, and  Maxine Eimicke were in attendance, the directors, including Alicia Eimicke,

Klimley and Maxine Eimicke, approved a dividend of $2.50 per share of preferred stock;

salaries of $218,000.00 to Alicia Eimicke; $116,000.00 for Laura Klimley; $570,000.00 for

Victor Eimicke and $52,000.00 for Maxine Eimicke, and payments of $42,000.00 to Hereford.

      (f)      Meeting of the Directors on December 5, 1995 at the home of Victor and

Maxine Eimicke on Hereford Road, Yonkers, New York (hereinafter "Hereford Road"). At

this meeting, at which Alicia Eimicke, Klimley, and  Maxine Eimicke were in attendance, the

directors, including Alicia Eimicke, Klimley and Maxine Eimicke, approved a dividend of

$2.50 per share of preferred stock; salaries of $175,000.00 to Alicia Eimicke; $56,000.00 for

Laura Klimley; $573,000.00 for Victor Eimicke and $52,000.00 for Maxine Eimicke, and

payments of $42,000.00 to Hereford.

      (g)      Meeting of the Directors on December 4, 1996 at Hereford Road. At this

meeting, at which Alicia Eimicke, Klimley, and  Maxine Eimicke were in attendance, the

directors, including Alicia Eimicke, Klimley and Maxine Eimicke, approved a dividend of

$2.50 per share of preferred stock; salaries of $141,000.00 to Alicia Eimicke; $43,000.00 for Laura Klimley; $578,000.00 for Victor Eimicke and $52,000.00 for Maxine Eimicke, and payments of $42,000.00 to Hereford.

(h)     Meeting of the Directors on December 3, 1997 at Hereford Road.  At this meeting, at which Alicia Eimicke, Klimley, and  Maxine Eimicke were in attendance, the directors, including Alicia Eimicke, Klimley and Maxine Eimicke, approved a dividend of $2.50 per share of preferred stock; salaries of $140,000.00 to Alicia Eimicke; $36,000.00 for Laura Klimley; $620,000.00 for Victor Eimicke and $56,000.00 for Maxine Eimicke, and payments of $42,000.00 to Hereford.

(i)     Meeting of the Directors on December 2, 1998 at Hereford Road.  At this meeting, at which Alicia Eimicke, Klimley, and  Maxine Eimicke were in attendance, the directors, including Alicia Eimicke, Klimley and Maxine Eimicke, approved a dividend of $2.50 per share of preferred stock; salaries of $140,000.00 to Alicia Eimicke; $649,000.00 for Victor Eimicke and $59,000.00 for Maxine Eimicke, and payments of $42,000.00 to Hereford.

(j)     Meeting of the Directors on December 1, 1999 at Hereford Road.  At this meeting, at which Alicia Eimicke, Klimley, and  Maxine Eimicke were in attendance, the directors, including Alicia Eimicke, Klimley and Maxine Eimicke, approved a dividend of $2.50 per share of preferred stock; salaries of $155,000.00 to Alicia Eimicke; $550,000.00 for Victor Eimicke and $50,000.00 for Maxine Eimicke, and payments of $42,000.00 to Hereford.

(k)     A special meeting of the Directors on September 5, 2000, immediately following the death of Victor Eimicke, at Grassy Sprain.  At this meeting at which Alicia Eimicke, Klimley, Palmero and Maxine Eimicke were in attendance, the directors, including Alicia Eimicke, Klimley, Palmero and Maxine Eimicke approved the appointment of Alicia Eimicke to take her late father's position as president of the Company.

(l)  Meeting of the Directors on December 6, 2000 at Grassy Sprain.  At this meeting, at which Alicia Eimicke, Klimley, Palmero and  Maxine Eimicke were in attendance, the directors, including Alicia Eimicke, Klimley, Palmero and Maxine Eimicke, approved a dividend of $2.50 per share of preferred stock; salaries of $350,000.00 to Alicia Eimicke and $200,000.00 for Maxine Eimicke, and payments of $42,000.00 to Hereford.

(m)  Meeting of the Directors on December 5, 2001 at Grassy Sprain.  At this meeting, at which Alicia Eimicke, Klimley, Palmero and  Maxine Eimicke were in attendance, the directors, including Alicia Eimicke, Klimley, Palmero and Maxine Eimicke, approved a dividend of $2.50 per share of preferred stock; salaries of $390,000.00 to Alicia Eimicke and $200,000.00 for Maxine Eimicke, and payments of $42,000.00 to Hereford.

(n)  Meeting of the Directors on December 4, 2002 at Grassy Sprain.  At this meeting, at which Alicia Eimicke, Klimley, Palmero and  Maxine Eimicke were in attendance, the directors, including Alicia Eimicke, Klimley, Palmero and Maxine Eimicke, approved a dividend of $2.50 per share of preferred stock; salaries of $390,000.00 to Alicia Eimicke and $200,000.00 for Maxine Eimicke, and payments of $42,000.00 to Hereford.

(o)  Meeting of the Directors on December 3, 2003 at Grassy Sprain.  At this meeting, at which Alicia Eimicke, Klimley, Palmero and  Maxine Eimicke were in attendance, the directors, including Alicia Eimicke, Klimley, Palmero and Maxine Eimicke, approved a dividend of $2.50 per share of preferred stock; salaries of $350,000.00 to Alicia Eimicke and $200,000.00 for Maxine Eimicke, and payments of $42,000.00 to Hereford.  At this meeting the directors also accepted the resignation of Palmero, who resigned as a director as of December 2, 2003.

At each of the aforesaid meetings, the directors listed in attendance each executed a waiver of notice of meeting and verbally delivered a report in connection with the affairs of the Company. True copies of these meeting minutes are affixed hereto collectively as Exhibit "B".

24.     In addition to attending meetings of the Board of Directors, Alicia Eimicke, Klimley and Maxine Eimicke, likewise attended annual meetings of the shareholders of the Company. These meetings were held on the same day as the aforesaid meetings of the Board of Directors. At each such meeting, Alicia Eimicke, Klimley and Maxine Eimicke would appoint themselves directors for the upcoming year and approve the financial records of the Company which clearly disclosed the gross insolvency of the Company; the continued existence and expansion of the Company's illegal Note Program and the increasing inability of the Company to service the interest on the existing Notes let alone pay them off when they became due. Additionally, in some instances, the Company agreed to pay the directors $500.00 for their appearance at this meeting.

25.     In 1982, the Klimley formed Defendant Hereford as its sole incorporator in order to serve as the Company's collection agency. At all times Alicia Eimicke and Klimley were the sole shareholders of the Company (50% each). Although, the Company utilized the offices, staff, equipment, services and supplies of the Company, for which the Company paid, the Company paid Hereford the sum of $42,000.00 each year from 1990 until and including 2003 as outlined above. Although Klimley claims to have little knowledge of Hereford and no knowledge that Hereford had a duty to make payments to her, Hereford paid both Klimley and Alicia Eimicke a salary each year and likewise paid a dividend. These salaries and dividends roughly totaled the amount of the payment from the Company to Hereford each year and were paid at least in part by monies generated from the Company's illegal Note Program.

26.     In an effort to avoid the payment of state and federal income tax, Victor Eimicke, with the full knowledge and consent of Defendants Klimley, Palmero and Maxine Eimicke often, during the time period of 1990-2000, declined to pay himself the salary for which the Board of Directors had concluded, abet wrongfully, that he was entitled and instead took large "loans" from the Company in the approximate amount of the salary that the Board had determined was due. At the time these loans were made said Defendants knew that Victor Eimicke had no intention to repay these loans.

27.     In a further effort to avoid the payment of state and federal income tax, Victor and Maxine Eimicke established the "Foundation." Victor and Maxine Eimicke made "gifts" of Notes to the Foundation including the following:

| | |
|---|---|
| I-098 | $100,000.00 |
| I-116 | $     500.00 |
| I-115 | $ 10,000.00 |
| I-108 | $ 10,000.00 |
| I-109 | $  1,000.00 |
| I-110 | $  1,000.00 |
| I-111 | $  1,000.00 |
| I-112 | $  1,000.00 |
| I-113 | $     500.00 |
| I-120 | $100,000.00 |
| I-121 | $ 14,500.00 |
| I-122 | $ 10,500.00 |

Defendants Klimley, Palmero and Maxine Eimicke authorized large interest payments in the amount of 15% per annum to the Foundation in connection with these notes from 1990 up to

31

and including 2003. These payments were made in substantial part from the proceeds of the Company's illegal Note Program and utilized in part for the personal benefit of Maxine and Victor Eimicke.

28.     Although the financial records of the Company left no doubt in connection with the abysmal financial condition of the Company, in the event that the officers and directors needed further verification of the financial status of the Company they did not need to look any further than the memorandum that was sent to her by the Company's attorneys on August 28, 2001. A review of this memorandum indicates that as of August, 2001, the Company had a "significant net operating losses totaling approximately $8.6 million". At this time, according to Hall Dickler, the Company's attorneys, the Company was worth $11 million and had liabilities of more than double that in the approximate amount of $ 24 million; $18 million of which represented "interest-bearing obligations to third party lenders" (i.e. the Note Program). Armed with this straight forward, plain-english, analysis of VWE's gloomy financials, a copy of which was forwarded to Defendants Klimley, Palmero and Maxine Eimicke, the said Defendants could not deny the fact that the Company was deeply insolvent. A true copy of this report is attached herewith as Exhibit "C."

29.     Despite having access to the aforesaid detailed financial records of the Company, Defendants Klimley, Palmero and Maxine Eimicke instituted and maintained a policy of not disseminating the aforesaid financial information in connection with the Company to its creditors, including Plaintiffs. Indeed accurate financial information was never provided to the investors in the Note Program. The Company, at the direction of said Defendants, consistently explained to the Plaintiffs and other investors that this practice was not uncommon among "family businesses" and not something to be concerned about given the "long and profitable nature" of the Company. These representations were made and policies maintained in order to

actively conceal the true adverse nature of the Company's financial affairs and the misuse of the assets of the Company by the said Defendants and Victor Eimicke.

30.    While the Company actively withheld financial information from the Plaintiffs, the Company, at the direction of officers and directors of the Company, including Defendants Klimley, Palmero and Maxine Eimicke, actively encouraged Plaintiffs to invest in the Company both in person and by telephone in New York and New Jersey by making false and misleading statements in regards to the financial status of the Company.

31.    The aforesaid Notes of the Company purchased by the Plaintiffs constitute securities as defined in the Securities Act of 1933, specifically Section 2(1) of the Act, 15 U.S.C.A. § 77b(1).  At no time have they been classified as exempt securities under that Act, nor were their sales classified as exempt under the Act.

32.    Neither preceding the sales described in this Complaint, nor during negotiation for the sales, did the Company, or its officers and directors, including Defendants Klimley, Palmero and Maxine Eimicke, who controlled the Company, procure express or implied authorization from the Securities and Exchange Commission to sell the above-described securities.

33.    At no time did Company or its officers and directors or advisors, including Defendants Klimley, Palmero and Maxine Eimicke, who controlled the Company, comply with the requirements of the Securities Act of 1933, or the regulations promulgated under the Act with respect to the sale or offering for sale of the above-described securities, by filing in the office of the Securities and Exchange Commission any statements of documents required by the Act.

34.    At all material times, Defendants Klimley, Palmero and Maxine Eimicke knew or in the alternative recklessly disregarded the adverse information in connection with the Company's losses; excessive officers salaries and compensation; failed to register the subject Notes and make the required disclosures; inability to service the Notes and the insolvency of the

Company as described above, and purposely failed to disclose this information to Plaintiffs and the other investors in the Note Program although said Defendants had a clear duty to do so.

35.     At all relevant times Defendants Klimley, Palmero and Maxine Eimicke had an obligation to monitor the activities of each other, and Alicia Eimicke and Victor Eimicke and had a duty to take affirmative steps to stop the spread of false and misleading information, illegal activity and theft by said individuals. Although, however, said Defendants were aware of the false and misleading statements made by the other Defendants, Alicia Eimicke and Victor Eimicke, said Defendants chose to actively assist said individuals in the dissemination of the aforesaid false information and criminal theft as opposed to making any effort to stop the same.

36.     Defendant had the opportunity to and did in fact commit and participate in the fraud described herein. As control persons, Defendants Klimley, Palmero and Maxine Eimicke controlled the Company's programs, corporate reporting, contacts and communication with investors, SEC filings or the lack thereof, and other like and material aspects of the Company's operations and disclosures.

37.     Defendants Klimley, Palmero and Maxine Eimicke had the motive to commit and participate in the fraud described herein. Said Defendants wanted to and did cover up the undeniable fact that the Note Program was a self serving ponzi scheme, used to support the lavish lifestyles of the Defendants and the Eimicke family. Further each said Defendant had motive to commit and participate in the aforesaid fraud in order to continue the scheme for to stop the same, without having the funds to pay the noteholders, would have revealed the scheme and lead to potential civil and/or criminal liability to the said Defendants and the Eimicke family.

38.     As a direct and proximate result of the aforesaid false and misleading statements and

Defendants' failure to disclosure the aforesaid non-public adverse information, Plaintiffs

invested in the Company in amounts as follows:

| Name | VWE Debenture # | Date | Amount |
|---|---|---|---|
| Norman Wald (reinvested on 6/20/02 by way of I-13-37) | I-6-025 | 6/20/97 | $10,000.00 |
| Estelle Wald (reinvested on 6/20/02 by way of I-13-38) | I-6-026 | 6/20/97 | $10,000.00 |
| Joanna Wald (reinvested on 6/20/02 by way of I-13-39) | I-6-027 | 6/20/97 | $10,000.00 |
| Samuel Wald (reinvested on 6/20/02 by way of I-13-40) | I-6-028 | 6/20/97 | $10,000.00 |
| Andrew Wald (reinvested on 6/20/02 by way of I-13-41) | I-6-029 | 6/20/97 | $10,000.00 |
| Cynthia Cohain (reinvested on 6/20/02 by way of I-13-033) | I-6-021 | 6/20/97 | $10,000.00 |
| Dr. David Cohain (reinvested on 6/20/02 by way of I-13-034) | I-6-022 | 6/20/97 | $10,000.00 |
| Yosaif Cohain (reinvested on 6/20/02 by way of I-13-035) | I-6-023 | 6/20/97 | $10,000.00 |
| Ariella Cohain (reinvested on 6/20/02 by way of I-13-036) | I-6-024 | 6/20/97 | $10,000.00 |
| David & Cynthia Cohain (reinvested on 12/21/03 by way of I-15-049) | I-10-24 | 12/21/98 | $50,000.00 |
| Julia C. Hertlein Trust | I-14-058 | 12/3/02 | $200,000.00 |
| Julia C. Hertlein Trust | I-14-31A | 6/11/02 | $100,000.00 |
| Frank Madonna | I-12-018 | 7/12/01 | $100,000.00 |
| Frank Madonna | I-12-039 | 8/23/01 | $30,000.00 |
| Barbara & Jamie Demuth | I-9-003 | 1/5/98 | $10,000.00 |

| | | | |
|---|---|---|---|
| Barbara & Jamie Demuth | I-9-034 | 10/28/98 | $10,000.00 |
| Barbara & William Demuth | I-10-050 | 7/7/00 | $5,000.00 |
| Barbara & William Demuth | I-10-052 | 10/5/01 | $5,000.00 |
| Barbara & William Demuth | I-10-053 | 7/2/02 | $5,000.00 |
| Barbara & Jamie Demuth | I-10-054 | 1/5/03 | $10,000.00 |
| Barbara & Jamie Demuth | I-10-055 | 10/28/03 | $10,000.00 |
| Barbara Demuth | I-11-032 | 1/4/00 | $5,000.00 |
| Barbara Demuth | I-11-049 | 4/7/00 | $5,000.00 |
| Barbara Demuth | I-11-075 | 12/12/01 | $5,000.00 |
| Barbara & Jamie Demuth | I-11-077 | 1/8/02 | $25,000.00 |
| Barbara & Jamie Demuth | I-11-080 | 2/15/02 | $5000.00 |
| Barbara & Jamie Demuth | I-11-083 | 4/4/02 | $5,000.00 |
| Barbara & Jamie Demuth | I-11-84 | 5/8/02 | $5,000.00 |
| Barbara Demuth | I-11-041 | 10/3/02 | $5,000.00 |
| Barbara Demuth | I-11-050 | 1/3/03 | $5,000.00 |
| Barbara Demuth | I-14-075 | 7/14/03 | $10,000.00 |
| Barbara & William Demuth | I-15-020 | 7/3/03 | $5,000.00 |
| Katherine & John Hayes (reinvested on 2/1/00 by way of I-11-064) | I-6-014 | 10/2/95 | $20,000.00 |
| Katherine & John Hayes (reinvested on 4/6/01 by way of I-12-049) | I-6-020 | 1/2/97 | $30,000.00 |
| Katherine & John Hayes (reinvested on 1/1/04 by way of N-004) | I-10-025 | 1/1/99 | $20,000.00 |
| Katherine & John Hayes | I-11-64 | 10/2/00 | $20,000.00 |
| Katherine & John Hayes | I-12-31 | 4/6/01 | $50,000.00 |
| Fred Ronis | | 3/15/04 | $70,000.00 |

| | | | |
|---|---|---|---|
| Helen Singer | | 1/1/03 | $50,000.00 |
| Allegra Pagano | I-13-014 | 7/1/01 | $20,000.00 |
| Allegra Pagano | I-15-027 | 8/7/03 | $30,000.00 |
| Allegra Pagano | N-022 | 4/28/04 | $10,000.00 |
| Niccolo Pagano | I-11-051 | 4/28/00 | $40,000.00 |
| Niccolo Pagano | I-15-028 | 8/7/03 | $20,000.00 |
| Niccolo Pagano | N-023 | 4/28/04 | $10,000.00 |
| Carmelina Pagano | I-10-045 | 7/6/99 | $10,000.00 |
| Carmelina Pagano | I-15-026 | 8/11/03 | $100,000.00 |
| Maria Pagano | I-14-035 | 8/7/02 | $20,000.00 |
| Nicola (deceased) and Rosamaria Pagano | I-11-039 | 2/9/00 | $60,000.00 |
| Nicola (deceased) and Rosamaria Pagano | I-14-028 | 4/29/02 | $40,000.00 |
| Nicola (deceased) and Rosamaria Pagano | I-14-034 | 8/7/02 | $50,000.00 |
| Nicola (deceased) and Rosamaria Pagano | I-14-074 | 6/11/03 | $50,000.00 |
| Nicola (deceased) and Rosamaria Pagano | N-016 | 4/1/04 | $50,000.00 |
| Patrick Clark | I-12-021 | 3/15/06 | $5,000.00 |
| Jamie & Patrick Clark | I-10-044 | 6/3/04 | $15,000.00 |
| Amanda & Jamie Clark | I-14-063 | 3/16/06 | $3,000.00 |
| Patrick Clark | I-12-045 | 12/11/06 | $1,000.00 |
| Jamie Clark | I-13-018 | 12/11/06 | $15,000.00 |
| Laura Herz | | 2/31/2002 | $75,000.00 |
| Laura Herz | | 10/22/02 | $200,000.00 |

| | | |
|---|---|---|
| Laura Herz | 6/11/02 | $100,000.00 |
| Laura Herz | 5/31/02 | $125,000.00 |
| Laura Herz | | |
| Estelle M. Wald Revocable Trust | 6/26/02 | $200,000.00 |
| Joanna Wald | 8/3/03 | $6,000.00 |
| Andrew Wald | 8/3/03 | $6,000.00 |
| Samuel Wald | 8/3/03 | $6,000.00 |
| Ariella Cohain | 8/3/03 | $6,000.00 |
| Yosaif Cohain | 8/3/03 | $6,000.00 |
| Cynthia Cohain | 8/3/03 | $100,000.00 |
| Estelle Wald | 6/20/02 | $10,000.00 |
| Norman Wald | 6/20/02 | $10,000.00 |
| Joanna Wald | 6/20/02 | $10,000.00 |
| Andrew Wald | 6/20/02 | $10,000.00 |
| Samuel Wald | 6/20/02 | $10,000.00 |
| Cynthia Cohain | 6/20/02 | $10,000.00 |
| David Cohain | 6/20/02 | $10,000.00 |
| Ariella Cohain | 6/20/02 | $10,000.00 |
| Yosaif Cohain | 6/20/02 | $10,000.00 |

The principal amounts of the aforesaid investments, plus interest at the rate of 15% per annum

(the amount of interest set forth in the subject debentures) are presently due and owing

Plaintiffs.

39.    The Company has admitted that the Plaintiffs invested the aforesaid sums in the Note Program and that as of the time of Company's bankruptcy filing said sums were unpaid. These admissions are contained in the Company's Schedule F of its June, 2004 filing in the United States Bankruptcy Court for the Southern District of New York.

40.    Plaintiffs relied on the aforesaid representations to their detriment and would not have invested any sum with the Company in the event that the true nature of the Company's financial affairs and illegal activities were disclosed. Instead, in reliance on said representations of the Defendants Klimley, Palmero and Maxine Eimicke, Plaintiffs invested with the Company.

41.    Given the current financial condition of the Company and Defendants' aforesaid unlawful practices there is little or no possibility that the Company will successfully emerge from its Chapter 11 bankruptcy filing or generate any meaningful sum from the sale of its assets for the repayment of Plaintiffs.

42.    In November, 2004, an involuntary bankruptcy proceeding was commenced against Defendant Maxine Eimicke in the United States Bankruptcy Court for the Southern District of New York, Case No. 04-23765. By way of this bankruptcy filing, Maxine Eimicke admits to being personally liable for all of the above listed debts as she specifically disclosed the Plaintiffs herein as creditors and set forth the amounts owed to Plaintiffs as the amounts listed above plus interest through and including the date of her bankruptcy filing. Due to her repeated attempts to conceal her assets from the United States Trustee, Maxine Eimicke was denied a discharge on May 15, 2008 thus permitting this action to proceed against her.

43.    In October, 2007, Alicia Eimicke was criminally indicted on 35 counts of theft over $50,000.00, securities fraud and racketeering. On March 28, 2008, Alicia Eimicke pled guilty to all 35 counts thereby admitting that she had stolen, while president of the Company and

while under the control and supervision of Defendants, over 9 million dollars from investors in the Note Program, including Plaintiffs, as part of the Company's illegal ponzi scheme. Defendants each either knew or should have known of Alicia Eimicke's theft as the amounts of Alicia Eimicke's withdrawals were clearly reflected in the financial records of the Company which were prepared by Palmero and reviewed and approved by Maxine Eimicke and Klimley. Despite this knowledge, however, and despite having the power to do so, Defendants made no efforts to stop Alicia Eimicke in her criminal pursuits and in fact both directly and indirectly actively encouraged her to continue. Indeed, Plaintiffs state upon information and belief that a substantial portion of the money that Alicia Eimicke admitted to stealing was used to make the illegal distributions to Klimley and Maxine Eimicke set forth above.

## FIRST CAUSE OF ACTION
### (Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5)

44.    Plaintiffs incorporate the averments set forth in paragraphs one (1) through forty-three (43) of the Complaint as if fully rewritten hereunder.

45.    As set forth above, the Company, and its officers and directors and advisors, including Defendants Klimley, Palmero and Maxine Eimicke, have employed the aforesaid devices, schemes and artifices in a deliberate effort to defraud the investors in the Note Program, including Plaintiffs.

46.    As further set forth above, the Company, and its officers and directors and advisors, including Defendants Klimley, Palmero and Maxine Eimicke, have deliberately made false statements in connection with the financial status of the Company and omitted key financial data that they had a duty to disclose in an attempt to defraud the investors in the Note Program, including Plaintiffs.

40

47.    As further set forth above, the Company, or its officers and directors, including

Defendants Klimley, Palmero and Maxine Eimicke, have engaged in acts, practices and in a

willful course of business in order to practice a fraud and otherwise deceive the investors in the

Note Program, including Plaintiffs.

48.    By reason of the foregoing, Defendants Klimley, Palmero and Maxine Eimicke have

violated Rule 10b-5 of the Security Exchange Act of 1934.

49.    Plaintiffs state that Defendants Klimley, Palmero and Maxine Eimicke actively

concealed from Plaintiffs the nature and extent of their fraud and scope of their involvement in

the Company.  Said involvement was not discovered and could not have been reasonably

discovered by Plaintiffs until at the earliest the closure of the Company in July, 2006.

50.    As a direct and proximate result of said violations, Plaintiffs have been damaged in the

amounts set forth herein.

## SECOND CAUSE OF ACTION
### (Violation of Section 20(a) of the Securities Exchange Act of 1934)

51.    Plaintiffs incorporate the averments contained in paragraphs one (1) through fifty (50)

of the Complaint as if fully rewritten hereunder.

52.    Defendants Klimley, Palmero and Maxine Eimicke acted as a controlling person of the

Company within the meaning of § 20(a) of the Securities Exchange Act and had the power and

influence and exercised the same to cause the Company to engage in the violations of the

Securities Exchange Act set forth above.

53.    As a direct and proximate result of said violations, Plaintiffs have been damaged in the

amounts set forth herein.

## THIRD CAUSE OF ACTION
### (Fraud)

54.    Plaintiffs incorporate the averments set forth in paragraphs one (1) through fifty-three (53) of the Complaint as if fully rewritten hereunder.

55.    Plaintiffs further state that at the time that Plaintiffs made their aforesaid investments in the Company, the Company was insolvent.  As a result of said insolvency, Defendants Klimley, Palmero and Maxine Eimicke owed a fiduciary duty to creditors of the Company, including but not limited to Plaintiffs, to disclose the true financial condition of the Company.

56.    Plaintiffs state that Defendants Klimley, Palmero and Maxine Eimicke purposely with intent to defraud Plaintiffs, failed to disclose and in fact took steps to actively conceal the true financial status of the Company from Plaintiffs.  Furthermore, Defendants Klimley, Palmero and Maxine Eimicke all actively, and with intent to defraud Plaintiffs, actively aided in the spread of the aforesaid false and misleading statements in connection with the financial status of the Company.  Still further the Defendants actively concealed and failed to disclose to Plaintiffs the purposes for which Plaintiffs funds were to be used.

57.    Plaintiffs further state that Plaintiffs reasonably relied on the misrepresentations and believed that as they had been told that they were "friends of the family" that their interests were being actively protected by Defendants Klimley, Palmero and Maxine Eimicke.  In the absence of these representations and/or in the event that Plaintiffs knew the true financial condition of the Company and/or the manner in which said Defendants caused their funds to be utilized, Plaintiffs would not have invested in the Company.

58.    Plaintiffs further state that as a direct and proximate result of said misrepresentations and willful omissions, Plaintiffs have suffered harm in the amounts of their aforesaid investments, the loss of business opportunity, loss of quality of life, loss of financial security, extreme emotional distress and other like and similar harms.

**FOURTH CAUSE OF ACTION**
**(Recovery of Fraudulent Conveyances)**

59.    Plaintiffs incorporate the averments set forth in paragraphs one (1) through fifty-eight (58) of the Complaint as if fully rewritten hereunder.

60.    All payments and transfers to Alicia Eimicke, Maxine Eimicke, Klimley, Hereford and the Foundation as set forth above made within six (6) years of the date of this Complaint were made in violation of Article 10 of the New York Debtor-Creditor Law as they (a) constitute transfers of an interest of the property acquired by the Company; (b) at a time when the Company was insolvent and was left with an unreasonably small amount of capital with which to conduct its business; (c) with actual intent to hinder, delay and defraud the creditors of the Company, including Plaintiffs; and (d) without receipt by the Company of fair consideration from the transfee.

61.    As a direct and proximate result of said fraudulent transfers, Plaintiffs have been damaged in the full amount of Plaintiffs' investments plus interest at the rate of 15% per annum and reasonable attorneys fees.


## FIFTH CAUSE OF ACTION
### (Waste of Corporate Assets)

62.    Plaintiffs incorporate the averments set forth in paragraphs one (1) through sixty - one (61) of the Complaint as if fully set forth herein.

63.    Defendants Klimley, Palmero and Maxine Eimicke wasted the assets of the Company in following respects:

    a.    by failing to act in the best interest of the Company and its creditors, including Plaintiffs;

    b.    by failing to protect the Company's assets for the benefit of its creditors, including Plaintiffs;

c.     by transferring or permitting the transfer of the Company's assets to or for the benefit of themselves and/or the Eimicke family;

d.     by failing to carry out their duties as officers and directors with reasonable care and prudence;

e.     by directing the affairs of the Company for their personal benefit and for the benefit of the Eimicke family;

f.     by permitting and encouraging Alicia Eimicke to steal over nine million dollars from the creditors of the Company for their benefit and the benefit of Alicia Eimicke and the Eimicke family.

g.     by failing to exercise the independent judgment required of directors and officers under New York law;

h.     by receiving the benefit or and/or authorizing and/or ratifying the aforesaid illegal loans, advances, salaries and dividends;

i.     by causing and/or permitting the issuance of the Notes and the continuation and expansion of the Note Program, including but not limited to the said Notes issues to Plaintiffs.

64.     The aforesaid actions and omissions constitute corporate waste and violations of their duties under New York Business Corporation Law for which Defendants Klimley, Palmero and Maxine Eimicke are personally liable to Plaintiffs up to and including the full amount of Plaintiffs investment plus interest at the rate of 15% per annum and reasonable attorneys fees.

## SIXTH CAUSE OF ACTION
### (Self Dealing and Deepening Insolvency)

65.     Plaintiffs incorporate the averments contained in paragraphs one (1) through sixty-four (64) of the Complaint as if fully rewritten hereunder.

66.    The aforesaid acts and omissions of Defendants Klimley, Palmero and Maxine Eimicke constitute self-dealing to the detriment of the creditors of the Company, including Plaintiffs, at a time when the Company was insolvent or in the zone of insolvency in violation of said Defendants duty to the creditors of the company, including Plaintiffs.

67.    As a direct and proximate result of said self-dealing and said Defendants' active scheme to defraud Plaintiffs, Plaintiffs have been damaged in the full amount of Plaintiffs' investments, plus interest at the rate of 15% per annum and reasonable attorneys fees.

### SEVENTH CAUSE OF ACTION
#### (Civil Conspiracy)

68.    Plaintiffs incorporate the averments set forth in paragraphs one (1) through sixty-seven (67) of the Complaint as if fully rewritten hereunder.

69.    Plaintiffs further state that the aforesaid course of unlawful conduct of all Defendants constituted a malicious combination of individuals which purposely and without lawful excuse deprived Plaintiffs of property through a pattern of fraud and corrupt activity.

70.    Plaintiffs further state that as a direct and proximate result of said civil conspiracy Plaintiffs have suffered harm as set forth in herein.

### EIGHTH CAUSE OF ACTION
#### (Breach of Fiduciary Duties)

71.    Plaintiffs incorporate the averments contained in paragraphs one (1) through seventy (70) of the Complaint as if fully rewritten hereunder.

72.    At all times relevant to the subject matter of this Complaint, Defendants Klimley, Palmero and Maxine Eimicke had a fiduciary duty to Plaintiffs due to the close relationship of trust between the parties and due to the fact that Plaintiffs were creditors of an insolvent corporation. This duty included the duty to direct the affairs of the Company in a honest and

45

prudent manner; insure that the capital of the Company was expended in a proper, honest and

efficient manner; the duty to affirmatively disclose to Plaintiffs the true financial condition of

the Company; and the duty to prevent the Company and its officers, directors and control

persons from engaging in unlawful acts, including but not limited to the illegal sales of

unregistered debentures.

73.    Plaintiffs state that said Defendants have knowingly, willfully and intentionally

breached each of the aforesaid duties and as a direct and proximate result of said breach,

Plaintiffs have suffered the harm set forth herein.

## NINTH CAUSE OF ACTION
### (Engaging in a pattern of racketeering activity)

74.    Plaintiff incorporates the averments contained in paragraphs one (1) through seventy-

three (73 ) as if fully rewritten hereunder.

75.    The aforesaid actions and omissions of Defendants constitute illegal actions in violation

of the aforesaid securities laws of the United States of America and the State of New York.

The aforesaid actions and omissions of Defendants constitute willful and intentional violations

of 18 U.S.C.S. §1956 (Laundering of Monetary Instruments); 26 U.S.C. § 7206 (2) prohibiting

the willful giving of aid and assistance in connection with the preparation and presentation of

fraudulent and/or false returns; conspiracy to commit criminal violations of federal and state

securities laws; aiding and abetting criminal theft; conspiracy to commit criminal theft; aiding

and abetting the commission of criminal violations of federal and state securities laws;

conducting an illegal ponzi scheme and other like violations.

76.    The aforesaid use of the mails and interstate wires in furtherance of Defendant's

aforesaid fraudulent scheme violated the federal mail fraud and federal wire fraud statutes as

set forth in 18 U.S.C. §§1341 and 1343.

77.    Each of the aforesaid actions and omissions constitute "racketeering activity" within the meaning of 18 U.S.C. §1961(1).  Collectively said violations, which were carried out over an extended period of time, constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

78.    The operations of Defendants as set forth in this complaint and the operation of the Company constitute an enterprise within the meaning of 18 U.S.C. §1961(4) that engages in and/or affects interstate commerce.

79.    The Defendants are "persons" within the meaning of 18 U.S.C. §1961(3) who conducted, participated in, operated, managed and/or controlled the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. §1962 (c).

80.    Plaintiffs have been injured in their business and property as a direct and proximate result of the aforesaid violation of 18 U.S.C. §1962 (c) in the amounts set forth above.

81.    By reason of the aforesaid violation of 18 U.S.C. §1962 (c) the Defendants are liable to Plaintiffs for three times the damages sustained by Plaintiffs and the costs of this action including but not limited to reasonable attorneys' fees.


**WHEREFORE,** Plaintiffs pray for judgment against Defendant for compensatory damages in the amounts set forth above.  Plaintiffs further pray that this award be trebled in accordance with the provisions of the Racketeering Influenced and Corrupt Organizations Act.

Plaintiffs further pray for an award of punitive damages against Defendants in the amount of Twenty Million Dollars ($20,000,000.00); the costs of this action including but not limited to reasonable attorneys fees; and for such further and additional relief as Plaintiffs may be entitled at law or in equity.

47

Respectfully Submitted

REICH REICH & REICH, P.C.

By: _____

LAWRENCE R. REICH (LR-9337)
Co-Attorneys for Plaintiffs
175 Main Street, Suite 300
White Plains, New York 10601
(914) 949-2126
(914) 949-1604 Facsimile
Reichlaw@aol.com

RICHARD B. REILING, ESQ.
Co-Attorney for Plaintiffs
Two Center Plaza, Suite 510
Boston, MA 02108
937-278-1183
937-278-1374 Facsimile
reilinglaw@aol.com
Attorneys for Plaintiffs
(Note: An application for admission to
this Court for Mr. Reiling pro hac vice will be
made when a Judge is assigned to this case.)

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues so triable.

LAWRENCE R. REICH (LR-9337)

48

**Officer Salaries - Past 10 Years**

| FY | Officer | Accrued | Paid | Unpaid |
|---|---|---|---|---|
| 2004 | Maxine Elmicke | $200,000 | $209,400 | ($9,400) |
| | Alicia Elmicke | $377,123 | $368,814 | $8,309 |
| | Total | $577,123 | $578,214 | ($1,091) |
| 2003 | Maxine Elmicke | $200,000 | $200,000 | $0 |
| | Alicia Elmicke | $387,620 | $387,620 | $0 |
| | Total | $587,620 | $587,620 | $0 |
| 2002 | Maxine Elmicke | $200,000 | $196,000 | $4,000 |
| | Alicia Elmicke | $345,362 | $345,362 | $0 |
| | Total | $545,362 | $541,362 | $4,000 |
| 2001 | Victor W. Elmicke | $550,000 | $40,000 | $510,000 |
| | Maxine Elmicke | $50,000 | $0 | $50,000 |
| | Alicia Elmicke | $155,548 | $155,548 | $0 |
| | Total | $755,548 | $195,548 | $560,000 |
| 2000 | Victor W. Elmicke | $649,000 | $187,000 | $462,000 |
| | Maxine Elmicke | $59,000 | $0 | $59,000 |
| | Alicia Elmicke | $141,125 | $141,125 | $0 |
| | Total | $849,125 | $328,125 | $521,000 |
| 1999 | Victor W. Elmicke | $550,000 | $208,000 | $342,000 |
| | Maxine Elmicke | $50,000 | $0 | $50,000 |
| | Alicia Elmicke | $141,125 | $141,125 | $0 |
| | Laura Klimley | $36,000 | $36,000 | $0 |
| | Total | $777,125 | $385,125 | $392,000 |
| 1998 | Victor W. Elmicke | $578,600 | $106,000 | $472,600 |
| | Maxine Elmicke | $52,600 | $0 | $52,600 |
| | Alicia Elmicke | $141,912 | $141,912 | $0 |
| | Laura Klimley | $43,170 | $43,170 | $0 |
| | Total | $816,282 | $291,082 | $525,200 |
| 1997 | Victor W. Elmicke | $573,449 | $349 | $573,100 |
| | Maxine Elmicke | $52,457 | $357 | $52,100 |
| | Alicia Elmicke | $174,473 | $174,473 | $0 |
| | Laura Klimley | $56,348 | $56,348 | $0 |
| | Total | $856,727 | $231,527 | $625,200 |
| 1996 | Victor W. Elmicke | $570,733 | $121,363 | $449,350 |
| | Maxine Elmicke | $52,357 | $11,507 | $40,850 |
| | Alicia Elmicke | $217,847 | $217,847 | $0 |
| | Laura Klimley | $115,589 | $115,589 | $0 |
| | Total | $956,526 | $466,326 | $490,200 |
| 1995 | Victor W. Elmicke | $563,664 | $561,464 | $2,200 |
| | Maxine Elmicke | $51,699 | $51,499 | $200 |
| | Alicia Elmicke | $215,958 | $215,958 | $0 |
| | Laura Klimley | $118,345 | $118,345 | $0 |
| | Total | $949,666 | $947,266 | $2,400 |

Schedule of Loans / Drawings to Officers

**Maxine Elmicke**

| | Loans | Draw | | Loans | Draw | | Loans | Draw | | Loans | Draw |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance: | 106,000 | 29,830 | | 101,260 | (245,932) | | 98,280 | (699,979) | | 85,260 | (596,087) | | 90,250 | (943,201) |
| Loans / Advances To/(From) | | 90,588 | | (3,000) | 357,838 | | (3,000) | 310,909 | | (16,000) | 200,769 | | (46,181) | 453,227 |
| Repayments | (3,750) | (46,900) | | | (381,909) | | | (22,100) | | | (475,000) | | | (261,590) |
| Accrued Payroll / Unpaid Salary | (250,000) | (250,000) | | | (600,000) | | | (4,000) | | | 8,000 | | 1,050,819 | 9,460 |
| Assumption of VWE Loans | | | | | | | | | | | | | | 487,842 |
| Ending Balance: | 101,250 | (245,682) | | 98,250 | (569,979) | | 95,250 | (896,907) | | 92,250 | (843,301) | | 874,858 | (344,100) |

**Alicia Elmicke**

| | Loans | Draw | | Loans | Draw | | Loans | Draw | | Loans | Draw |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance: | (16,294) | 132,151 | | (16,294) | 106,061 | | 440,259 | | 433,716 | 57,726 | | 416,716 | 25,877 |
| Loans / Advances To/(From) | | 51,100 | | 453,010 | 294,969 | | 96,275 | | (18,000) | 83,271 | | (18,000) | 195,088 |
| Repayments | (27,200) | | | (20,767) | | | (476,960) | | | (115,320) | | | (34,660) |
| Repayments | (16,294) | 106,051 | | (16,294) | 640,290 | | 67,726 | | 415,716 | 25,577 | | 397,716 | 129,119 |
| Ending Balance: | | | | | | | | | | | | |

**Laura Minsky**

| | Loans | Draw | | Loans | Draw | | Loans | Draw | | Loans | Draw |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance: | (100,579) | (38,394) | | (117,705) | (32,789) | | (117,705) | (28,740) | | (133,890) | (27,282) | | (153,590) | (45,699) |
| Loans / Advances To/(From) | (17,126) | 38,100 | | (15,885) | 90,957 | | (15,885) | 32,132 | | 36,139 | | (33,624) | 32,809 |
| Repayments | (29,055) | | | (26,942) | | | (20,869) | | | (57,476) | | (28,000) |
| Repayments | (100,579) | (32,789) | | (117,705) | (20,740) | | (153,590) | (27,282) | | (193,590) | (46,599) | | (167,314) | (42,100) |
| Ending Balance: | | | | | | | | | | | | |

**Victor W. Elmicke**

| | Loans | Draw | | Loans | Draw | | Loans | Draw | | Loans | Draw |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance: | 1,131,046 | 2,633,957 | | 1,206,331 | 436,682 | | 1,206,798 | 522,900 | | 1,129,951 | 527,401 | | 1,000,619 | 527,401 |
| Loans / Advances To/(From) | | 332,515 | | 44,018 | | 4,501 | | (66,182) | | 66,750 |
| Repayments | (82,717) | (2,502,050) | | (75,775) | | | | | | | | (88,600) |
| Accrued Payroll / Unpaid Salary | | | | 40,000 | | 40,000 | | | | | (467,843) |
| Transfer to MR. | | | | | | | | | | | (319,457) |
| Transfer to LTD | | | | | | | | | | | (246,178) |
| Ending Balance: | 1,206,331 | 439,592 | | 1,206,726 | 522,900 | | 120,851 | | 1,060,619 | 527,401 | | 527,401 |

(1) Amount Debtor owes Credit Shelter Trust, v/w/o Victor Elmicke

MINUTES

OF

THE THIRTY-THIRD ANNUAL MEETING OF THE DIRECTORS

OF

V. W. EIMICKE ASSOCIATES, INC.

The Thirty-third Annual Meeting of the Directors of V. W. Eimicke Associates, Inc. was held at The University Club, 1 West 54th Street, New York, New York, on Wednesday, the 5th of December 1990, at 10:30 a.m. of that day.

The following directors were present:

Alicia E. Barbiari

Maxine Eimicke

Victor W. Eimicke

Laura E. Klimley

Harold Levy

Mr. Irving Herz asked to be excused because he is in Florida.

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 26, 1990, which has been duly executed by all the Directors of the Corporation. Said Waiver is annexed to the Minutes of this Meeting and marked Exhibit "A."

The Secretary read the Minutes of the Thirty-second Annual Meeting of the Directors of the Corporation which was held on December 21, 1989.

The President read the Minutes of the Thirty-third Annual Meeting of the Stockholders of the Corporation.

- 1 -

- 2 -

On motion duly made and seconded, the following officers were unanimously elected to serve until the next Annual Meeting of the Board of Directors:

| | |
|---|---|
| President | Victor W. Eimicke |
| Vice President | Maxine Eimicke |
| Vice President | Laura Eimicke Klimley |
| Vice President | Alicia Eimicke Barbieri |
| Secretary | Maxine Eimicke |
| Treasurer | Maxine Eimicke |

The President then reported on the activities of the Corporation including the Corporation's marketing approach.

Mrs. Klimley reported on list management, and organizational structure/personnel.

Mrs. Barbieri reported on the Christmas Card business, Tax Forms business and the results of her trip to London and Montpellier. Mrs. Barbieri described in detail the various transactions between the Corporation and its Licensees.

The Directors were pleased with these accomplishments.

The President reviewed the Financial Statements of the Corporation for the year ended June 30, 1990. After a full discussion of the Corporation's operations, the following resolutions were unanimously adopted:

"RESOLVED, that the Directors accept the Financial Reports of V. W. Eimicke Associates, Inc. for the year ended June 30, 1990 as prepared under the supervision of the Corporation's Controller, and

"FURTHER RESOLVED, that the Corporation shall pay a dividend of seventy cents a share on Class A and Class B Common Stock on December 15, 1990 to shareholders of record at June 30, 1990, and

- 3 -

"FURTHER RESOLVED, that dividends are declared to be payable to holders of Series A and Series B Preferred Stock of $2.50 per share as follows:

| Record Date | Payment Date |
|---|---|
| March     13, 1991 | April    2, 1991 |
| June      14, 1991 | July     2, 1991 |
| September 12, 1991 | October  1, 1991 |
| December  12, 1991 | January  2, 1992 |

"FURTHER RESOLVED, that the salary of Alicia Eimicke Barbieri, Vice President, be $ _147,832.88_ per annum, effective July 1, 1991, and

"FURTHER RESOLVED, that the salary of Laura Eimicke Klimley, Vice President, be $ _118,143.16_ per annum, effective July 1, 1991, and

"FURTHER RESOLVED, that year-end bonuses to Alicia Eimicke Barbieri and Laura Eimicke Klimley of $ _____-_____ and $ _____-_____ respectively be approved for payment on or after January 1, 1992."

"FURTHER RESOLVED, that the salary of Victor W. Eimicke, President, be $ _____-_____ per annum, effective July 1, 1991, and

"FURTHER RESOLVED, that the salary of Maxine Eimicke, Vice President, Secretary and Treasurer, be $ _____-_____ per annum, effective July 1, 1991."

The Treasurer reviewed in detail the following management fees:

1. $ _425,000.00_ per annum from V. W. Eimicke Ltd. to V. W. Eimicke Associates, Inc.

2. $ _42,000.00_ per annum from the Corporation to Hereford Credit and Collection Agency, Inc. for credit services.

- 4 -

On motion duly made and seconded, it was unanimously:

"RESOLVED, to approve the management fee of $ 425,000.00
per annum from V. W. Eimicke Ltd. to the Corporation, and
the credit services fee of $ 43,000.00 _____ per annum from
the Corporation to Hereford Credit and Collection Agency, Inc."

There being no further business to come before the Meeting,

the Meeting was duly adjourned.

Dated:  Yonkers, New York
        December 5, 1990

Victor W. Eimicke
President of the Corporation, and
Chairman of the Meeting

Maxine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

MINUTES
OF
THE THIRTY-FOURTH ANNUAL MEETING OF THE DIRECTORS
OF
V. W. EIMICKE ASSOCIATES, INC.

The Thirty-fourth Annual Meeting of the Directors of V. W. Eimicke Associates, Inc. was held at 35 East Grassy Sprain Road, Yonkers, New York on Wednesday, the 4th of December 1991, at 2:00 p.m. of that day.

The following directors were present:

Alicia E. Barbieri

Maxine Eimicke

Victor W. Eimicke

Irving Herz

Laura E. Klimley

Mr. Harold Levy was absent because of illness.

The Company's controller was present by invitation.

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 25, 1991, which has been duly executed by all the Directors of the Corporation. Said Waiver is annexed to the Minutes of this Meeting and marked Exhibit "A."

The Secretary read the Minutes of the Thirty-third Annual Meeting of the Directors of the Corporation which was held on December 5, 1990.

The President read the Minutes of the Thirty-fourth Annual Meeting of the Stockholders of the Corporation.

- 1 -

– 2 –

On motion duly made and seconded, the following officers were
unanimously elected to serve until the next Annual Meeting of the Board
of Directors:

| President | Victor W. Eimicke |
| Vice President | Maxine Eimicke |
| Vice President | Laura Eimicke Klimley |
| Executive Vice President | Alicia Eimicke Barbieri |
| Secretary | Maxine Eimicke |
| Treasurer | Maxine Eimicke |

The President then reported on the various activities of the
Corporation including the Corporation's marketing approach which has been
adapted to the current recessionary conditions.

Mrs. Klimley reported on list management, organizational
structure/personnel, and legal posters.

Mrs. Barbieri reported on the Christmas Card business, Tax Forms
business and the results of her and the President's June trip to London and
Montpellier.  Mrs. Barbieri also reported that the company's U.K. licensee
would be visiting Yonkers December 5.  Mrs. Barbieri described in detail
the various transactions between the Corporation and its licensees, and plans
for foreign expansion.

The Directors were pleased with these accomplishments.

The President reviewed the Financial Statements of the Corporation
for the year ended June 30, 1991.  After a full discussion of the Corporation's
operations, the following resolutions were unanimously adopted:

"RESOLVED, that the Directors accept the Financial Reports
of V. W. Eimicke Associates, Inc. for the year ended
June 30, 1991 as prepared under the supervision of the
Corporation's Controller, and

– 3 –

"FURTHER RESOLVED, that the Corporation shall pay a dividend
of seventy cents a share on Class A and Class B Common
Stock on December 16, 1991 to shareholders of record at
June 30, 1991, and

"FURTHER RESOLVED, that dividends are declared to be
payable to holders of Series A and Series B Preferred
Stock of $2.50 per share as follows:

| Record Date | Payment Date |
|---|---|
| March      13, 1992 | April   2, 1992 |
| June        12, 1992 | July    2, 1992 |
| September 11, 1992 | October 1, 1992 |
| December 14, 1991 | January 4, 1993 |

"FURTHER RESOLVED, that the salary of Alicia Eimicke Barbieri,
Executive Vice President, be $ _112,396.38_ per annum,
effective July 1, 1992, and

"FURTHER RESOLVED, that the salary of Laura Eimicke Klimley,
Vice President, be $ _120,970.14_ per annum,
effective July 1, 1992, and

"FURTHER RESOLVED, that year-end bonuses to Alicia Eimicke
Barbieri and Laura Eimicke Klimley of $_____ and
$ _____ respectively be approved for payment on or
after January 1, 1993, and

"FURTHER RESOLVED, that the salary of Victor W. Eimicke,
President, be $_____ per annum,
effective July 1, 1992, and

"FURTHER RESOLVED, that the salary of Maxine Eimicke,
Vice President, Secretary and Treasurer, be $_____
per annum, effective July 1, 1992."

The Treasurer reviewed in detail the following management fees:

1.  $ _579,000.00_ per annum from V. W. Eimicke Ltd. to
    V. W. Eimicke Associates, Inc.

2.  $ _42,000.00_ per annum from the Corporation to
    Hereford Credit and Collection Agency, Inc. for credit
    services.

- 4 -

On motion duly made and seconded, it was unanimously:

> "RESOLVED, to approve the management fee of $ 577,000.00
> per annum from V. W. Eimicke Ltd. to the Corporation, and
> the credit services fee of $ 40,000.00 per annum from
> the corporation to Hereford Credit and Collection Agency, Inc."

There being no further business to come before the Meeting,

the Meeting was duly adjourned.

Dated: Yonkers, New York
      December 4, 1991


_____
Victor W. Eimicke
President of the Corporation, and
Chairman of the Meeting

           Maxine Eimicke
           Vice President, Secretary and Treasurer
           of the Corporation, and
           Secretary of the Meeting

MINUTES
OF
THE THIRTY-FIFTH ANNUAL MEETING OF THE DIRECTORS
OF
V. W. EIMICKE ASSOCIATES, INC.

The Thirty-fifth Annual Meeting of the Directors of V. W. Eimicke

Associates, Inc. was held at 35 East Grassy Sprain Road, Yonkers, New York

on Wednesday, the 2nd of December 1992, at noon of that day.

The following directors were present:

Alicia E. Barbieri

Maxine Eimicke

Victor W. Eimicke

Irving Herz

Laura E. Klimley

The Company's controller was present by invitation.

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting

a Waiver of Notice of the Meeting, dated November 23, 1992, which has been duly

executed by all the Directors of the Corporation.  Said Waiver is annexed to

the Minutes of this Meeting and marked Exhibit "A."

The Secretary read the Minutes of the Thirty-fourth Annual Meeting

of the Directors of the Corporation which was held on December 4, 1991.

The President read the Minutes of the Thirty-fifth Annual Meeting

of the Stockholders of the Corporation.

– 1 –

- 2 -

On motion duly made and seconded, the following officers were unanimously elected to serve until the next Annual Meeting of the Board of Directors:

| | |
|---|---|
| President | Victor W. Eimicke |
| Vice President | Maxine Eimicke |
| Vice President | Laura Eimicke Klimley |
| Executive Vice President | Alicia Eimicke Barbieri |
| Secretary | Maxine Eimicke |
| Treasurer | Maxine Eimicke |

The President then reported on the various activities of the Corporation including the Corporation's marketing approach which has been adapted to the current recessionary conditions and to the substantial postal increases.

Mrs. Klimley reported on list management, organizational structure/personnel, legal posters, and telemarketing.

Mrs. Barbieri reported on the Christmas Card business, Tax Forms business, and the status of franchisees. Mrs. Barbieri described in detail the various transactions between the Corporation and its licensees, and plans for foreign expansion.

The Directors were pleased with these accomplishments.

The President reviewed the Financial Statements of the Corporation for the year ended June 30, 1992. After a full discussion of the Corporation's operations, the following resolutions were unanimously adopted:

"RESOLVED, that the Directors accept the Financial Reports of V. W. Eimicke Associates, Inc. for the year ended June 30, 1992 as prepared under the supervision of the Corporation's Controller, and

– 3 –

"FURTHER RESOLVED, that the Corporation shall pay a dividend
of seventy cents a share on Class A and Class B Common
Stock on December 16, 1992 to shareholders of record at
June 30, 1992, and

"FURTHER RESOLVED, that dividends are declared to be
payable to holders of Series A and Series B Preferred
Stock of $2.50 per share as follows:

| Record Date | Payment Date |
|---|---|
| March 12, 1993 | April 2, 1993 |
| June 11, 1993 | July 2, 1993 |
| September 10, 1993 | October 1, 1993 |
| December 10, 1993 | January 4, 1994 |

"FURTHER RESOLVED, that the salary of Alicia Eimicke Barbieri,
Executive Vice President, be $ _141,124.88_ per annum,
effective July 1, 1993, and

"FURTHER RESOLVED, that the salary of Laura Eimicke Klimley,
Vice President, be $ _114,029.24_ per annum,
effective July 1, 1993, and

"FURTHER RESOLVED, that the salary of Victor W. Eimicke,
President, be $ _550,000.00_ per annum,
effective July 1, 1993, and

"FURTHER RESOLVED, that the salry of Maxine Eimicke,
Vice President, Secretary and Treasurer, be $ _50,000.00_
per annum, effective July 1, 1993."

The Treasurer reviewed in detail the following management fees:

1. $ _570,500.00_ per annum from V. W. Eimicke Ltd. to
   V. W. Eimicke Associates, Inc.

2. $ _42,000.00_ per annum from the Corporation to
   Hereford Credit and Collection Agency, Inc. for credit
   services.

— 4 —

On motion duly made and seconded, it was unanimously:

"RESOLVED, to approve the management fee of $ _570,500.00_
per annum from V. W. Eimicke Ltd. to the Corporation, and
the credit services fee of $ _42,000.00_ per annum from
the corporation to Hereford Credit and Collection Agency, Inc."

There being no further business to come before the Meeting,

the Meeting was duly adjourned.

DATED:  Yonkers, New York
        December 2, 1992

_____
Victor W. Eimicke
President of the Corporation, and
Chairman of the Meeting

_____
Marine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

MINUTES

OF

THE THIRTY-SIXTH ANNUAL MEETING OF THE DIRECTORS

OF

V. W. EIMICKE ASSOCIATES, INC.

The Thirty-Sixth Annual Meeting of the Directors of V. W. Eimicke Associates, Inc. was held at 35 East Grassy Sprain Road, Yonkers, New York on Wednesday, the 1st of December 1993, at 9:00 a.m. of that day.

The following directors were present:

Alicia E. Barbieri

Maxine Eimicke

Victor W. Eimicke

Laura E. Klimley

The Company's controller was present by invitation.

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 22, 1993, which has been duly executed by all the Directors of the Corporation. Said Waiver is annexed to the Minutes of this Meeting and marked Exhibit "A."

The Secretary read the Minutes of the Thirty-Fifth Annual Meeting of the Directors of the Corporation which was held on December 2, 1992.

The President read the Minutes of the Thirty-Sixth Annual Meeting of the Stockholders of the Corporation.

- 1 -

- 2 -

On motion duly made and seconded, the following officers were unanimously elected to serve until the next Annual Meeting of the Board of Directors:

| | |
|---|---|
| President | Victor W. Eimicke |
| Vice President | Maxine Eimicke |
| Vice President | Laura Eimicke Klimley |
| Executive Vice President | Alicia Eimicke Barbieri |
| Secretary | Maxine Eimicke |
| Treasurer | Maxine Eimicke |

The President then reported on the various activities of the Corporation including the Corporation's current marketing approach.

Mrs. Klimley reported on list management, organizational structure/personnel, legal posters, and telemarketing.

Mrs. Barbieri reported on the company's Christmas Card business, Tax Forms business, and the status of franchisees. Mrs. Barbieri described in detail the various transactions between the Corporation and its licensees, and plans for foreign expansion, including the former Soviet Union.

The Directors discussed the reports given by Mrs. Klimley and Mrs. Barbieri and were pleased with the progress that has been made.

The President reviewed the Financial Statements of the Corporation for the year ended June 30, 1993. After a full discussion of the Corporation's operations, the following resolutions were unanimously adopted:

> "RESOLVED, that the Directors accept the Financial Reports of V. W. Eimicke Associates, Inc. for the year ended June 30, 1993 as prepared under the supervision of the Corporation's Controller, and

– 3 –

"FURTHER RESOLVED, that the Corporation shall pay a dividend
of seventy cents a share on Class A and Class B Common
Stock on December 16, 1993 to shareholders of record at
June 30, 1993, and

"FURTHER RESOLVED, that dividends are declared to be
payable to holders of Series A and Series B Preferred
Stock of $2.50 per share as follows:

| Record Date | Payment Date |
|---|---|
| March    11, 1994 | April   1, 1994 |
| June     10, 1994 | July    1, 1994 |
| September 9, 1994 | October 3, 1994 |
| December 9, 1994 | January 3, 1995 |

"FURTHER RESOLVED, that the salary of Alicia Eimicke Barbieri,
Executive Vice President, be $ 188,078.82 per annum,
effective July 1, 1994, and

"FURTHER RESOLVED, that the salary of Laura Eimicke Klimley,
Vice President, be $ 115,546.86 per annum,
effective July 1, 1994, and

"FURTHER RESOLVED, that the salary of Victor W. Eimicke,
President, be $ 550,000 per annum,
effective July 1, 1994, and

"FURTHER RESOLVED, that the salary of Maxine Eimicke,
Vice President, Secretary and Treasurer, be $ 50,000
per annum, effective July 1, 1994."

The Treasurer reviewed in detail the following management fees:

1. $ 569,000.00 per annum from V. W. Eimicke Ltd. to
   V. W. Eimicke Associates, Inc.

2. $ 42,000.00 per annum from the Corporation to
   Hereford Credit and Collection Agency, Inc. for credit
   services.

- 4 -

On motion duly made and seconded, it was unanimously:

"RESOLVED, to approve the management fee of $ _569,000.00_ per annum from V. W. Eimicke Ltd. to the Corporation, and the credit services fee of $ _42,000.00_ per annum from the corporation to Hereford Credit and Collection Agency, Inc."

There being no further business to come before the Meeting,

the Meeting was duly adjourned.

DATED:  Yonkers, New York
        December 1, 1993


_____
Victor W. Eimicke
President of the Corporation, and
Chairman of the Meeting

_____
Maxine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

# MINUTES
## OF
### THE THIRTY-SEVENTH ANNUAL MEETING OF THE DIRECTORS
## OF
### V. W. EIMICKE ASSOCIATES, INC.

The Thirty-Seventh Annual Meeting of the Directors of V. W. Eimicke Associates, Inc. was held at the home of the company's Executive Vice President, 524 East 72 Street, New York, N.Y., on Wednesday, the 7th of December, 1994, at 5:30 p.m., of that day.

The following Directors were present:

Alicia E. Barbieri

Maxine Eimicke

Victor W. Eimicke

Laura E. Klimley

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 15, 1994, which has been duly executed by all the Directors of the Corporation.  Said Waiver is annexed to the Minutes of this Meeting and marked Exhibit "A."

The Secretary read the Minutes of the Thirty-Sixth Annual Meeting of the Directors of the Corporation which was held on December 1, 1993.

The President read the Minutes of the Thirty-Seventh Annual Meeting of the Stockholders of the Corporation.

- 1 -

- 2 -

On motion duly made and seconded, the following officers were
unanimously elected to serve until the next Annual Meeting of the Board
of Directors:

| | |
|---|---|
| President | Victor W. Eimicke |
| Vice President | Maxine Eimicke |
| Vice President | Laura Eimicke Klimley |
| Executive Vice President | Alicia Eimicke Barbieri |
| Secretary | Maxine Eimicke |
| Treasurer | Maxine Eimicke |

The President then reported on the various activities of the
Corporation including the Corporation's current marketing approach.

Mrs. Klimley reported on list management, organizational
structure/personnel, legal posters, and telemarketing.

Mrs. Barbieri reported on the company's Christmas Card business,
Tax Forms business, and the status of franchisees. Mrs. Barbieri described
in detail the various transactions between the Corporation and its licensees,
and plans for expansion.

The Directors discussed the reports given by Mrs. Klimley and
Mrs. Barbieri and were pleased with the progress that has been made.

The President reviewed the Financial Statements of the Corporation
for the year ended June 30, 1994. After a full discussion of the Corporation's
operations, the following resolutions were unanimously adopted:

"RESOLVED, that the Directors accept the Financial Reports
of V. W. Eimicke Associates, Inc. for the year ended
June 30, 1994 as prepared under the supervision of the
Corporation's Controller, and

- 3 -      $ FOR

FYE 6/30/96

"FURTHER RESOLVED, that dividends are declared to be
payable to holders of Series A and Series B Preferred
Stock of $2.50 par share as follows:

| Record Date | Payment Date |
|---|---|
| March     9, 1995 | April    3, 1995 |
| June       8, 1995 | July     3, 1995 |
| September 8, 1995 | October 2, 1995 |
| December  8, 1995 | January 2, 1996 |

"FURTHER RESOLVED, that the salary of Alicia Eimicke Barbieri,
Executive Vice President, be $ _218,000_ per annum,
effective July 1, 1995, and

"FURTHER RESOLVED, that the salary of Laura Eimicke Klimley,
Vice President, be $ _116,000_ per annum,
effective July 1, 1995, and

"FURTHER RESOLVED, that the salary of Victor W. Eimicke,
President, be $ _570,000_ per annum,
effective July 1, 1995, and

"FURTHER RESOLVED, that the salary of Maxine Eimicke,
Vice President, Secretary and Treasurer, be $ _52,000_
per annum, effective July 1, 1995."

The Treasurer reviewed in detail the following management fees:

1.  $ _569,000_ per annum from V. W. Eimicke Ltd. to
    V. W. Eimicke Associates, Inc.

2.  $ _42,000_ per annum from the Corporation to
    Hereford Credit and Collection Agency, Inc. for credit
    services.

- 4 -

On motion duly made and seconded, it was unanimously:

"RESOLVED, to approve the management fee of $ _569,000_ per annum from V. W. Eimicke Ltd. to the Corporation, and the credit services fee of $ _42,000_ per annum from the Corporation to Hereford Credit and Collection Agency, Inc."

There being no further business to come before the Meeting,

the Meeting was duly adjourned.

DATED:   New York, New York
         December 7, 1994

_____
Victor W. Eimicke
President of the Corporation, and
Chairman of the Meeting

_____
Maxine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

# MINUTES

## OF

## THE THIRTY-EIGHTH ANNUAL MEETING OF THE DIRECTORS

## OF

## V. W. EIMICKE ASSOCIATES, INC.

---

The Thirty-Eighth Annual Meeting of the Directors of V. W. Eimicke Associates, Inc. was held at the home of the company's President, 20 Hereford Road, Bronxville, N. Y., on Tuesday, the 5th of December, 1995, at 5:30 p.m., of that day.

The following Directors were present:

> Alicia E. Barbieri
>
> Maxine Eimicke
>
> Victor W. Eimicke
>
> Laura E. Klimley

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 15, 1995, which has been duly executed by all the Directors of the Corporation. Said Waiver is annexed to the Minutes of this Meeting and marked Exhibit "A".

The Secretary read the Minutes of the Thirty-Seventh Annual Meeting of the Directors of the Corporation which was held on December 7, 1994.

The President read the Minutes of the Thirty-Eighth Annual Meeting of the Stockholders of the Corporation.

On motion duly made and seconded, the following officers were unanimously elected to serve until the next Annual Meeting of the Board of Directors:

| | |
|---|---|
| President | Victor W. Eimicke |
| Vice President | Maxine Eimicke |
| Vice President | Laura Eimicke Klimley |
| Executive Vice President | Alicia Eimicke Barbieri |
| Secretary | Maxine Eimicke |
| Treasurer | Maxine Eimicke |

The President then reported on the various activities of the Corporation including the Corporation's current marketing approach.

Mrs. Klimley reported on list management, organizational structure/personnel, legal posters and telemarketing.

Mrs. Barbieri reported on the company's Christmas Card business, Tax Forms business, and the status of franchisees. Mrs. Barbieri described in detail the various transactions between the Corporation and its licensees, and plans for expansion.

The Directors discussed the reports given by Mrs. Klimley and Mrs. Barbieri and were pleased with the progress that has been made.

The President reviewed the Financial Statements of the Corporation for the year ended June 30, 1995. After a full discussion of the Corporation's operations, the following resolutions were unanimously adopted:

"RESOLVED, that the Directors accept the Financial Reports
of V. W. Eimicke Associates, Inc. for the year ended June 30, 1995
as prepared under the supervision of the Corporation's Controller, and

FYE 6/30/97

"FURTHER RESOLVED, that dividends are declared to be
payable to holders of Series A and Series B Preferred Stock
of $2.50 per share as follows:

| Record Date | Payment Date |
|---|---|
| March    8, 1996 | April   3, 1996 |
| June     7, 1996 | July    3, 1996 |
| September 9, 1996 | October 2, 1996 |
| December 9, 1996 | January 2, 1997 |

"FURTHER RESOLVED, that the salary of Alicia Eimicke Barbieri,
Executive Vice President, be $ _175,000_ per annum, effective
July 1, 1996, and

"FURTHER RESOLVED, that the salary of Laura Eimicke Klimley,
Vice President, be $ _156,000_ per annum, effective
July 1, 1996, and

"FURTHER RESOLVED, that the salary of Victor W. Eimicke,
President, be $ _573,000_ per annum, effective July 1, 1996, and

"FURTHER RESOLVED, that the salary of Maxine Eimicke,
Vice President, Secretary and Treasurer, be $ _52,000_ per annum,
effective July 1, 1996".

The Treasurer reviewed in detail the following management fees:

1.      $ _571,000_ per annum from V.W. Eimicke Ltd. to
        V. W. Eimicke Associates, Inc.

2.      $ _42,000_ per annum from the Corporation to
        Hereford Credit and Collection Agency, Inc. for credit
        services.

- 3 -

On motion duly made and seconded, it was unanimously:

> "RESOLVED, to approve the management fee of $ _571,000_ per annum from V. W. Eimicke Ltd. to the Corporation, and the credit services fee of $ _42,000_ per annum from the Corporation to Hereford Credit and Collection Agency, Inc.".

There being no further business to come before the Meeting, the Meeting was duly adjourned.

DATED:  Bronxville, New York
        December 5, 1995

Victor W. Eimicke
President of the Corporation, and
Chairman of the Meeting

Maxine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

-4-

# MINUTES

## OF

## THE THIRTY-NINTH ANNUAL MEETING OF THE DIRECTORS

## OF

## V. W. EIMICKE ASSOCIATES, INC.

The Thirty-Ninth Annual Meeting of the Directors of V. W. Eimicke Associates, Inc. was held at the home of the company's President, 20 Hereford Road, Bronxville, N. Y., on Wednesday, the 4th of December, 1996, at 5:30 p.m., of that day.

The following Directors were present:

> Alicia E. Barbieri
>
> Maxine Eimicke
>
> Victor W. Eimicke
>
> Laura E. Klimley

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 15, 1996, which has been duly executed by all the Directors of the Corporation. Said Waiver is annexed to the Minutes of this Meeting and marked Exhibit "A".

The Secretary read the Minutes of the Thirty-Eighth Annual Meeting of the Directors of the Corporation which was held on December 5, 1995.

The President read the Minutes of the Thirty-Ninth Annual Meeting of the Stockholders of the Corporation.

On motion duly made and seconded, the following officers were unanimously elected to serve until the next Annual Meeting of the Board of Directors:

| | |
|---|---|
| President | Victor W. Eimicke |
| Vice President | Maxine Eimicke |
| Vice President | Laura Eimicke Klimley |
| Executive Vice President | Alicia Eimicke Barbieri |
| Secretary | Maxine Eimicke |
| Treasurer | Maxine Eimicke |

The President then reported on the various activities of the Corporation including the Corporation's current marketing approach.

Mrs. Klimley reported on list management and organizational structure/personnel.

Mrs. Barbieri reported on the company's Christmas Card business, Tax Forms business, the status of franchisees, compliance products and telemarketing. Mrs. Barbieri described in detail the various transactions between the Corporation and its licensees, and plans for expansion in calendar year 1997.

The Directors discussed the reports given by Mrs. Klimley and Mrs. Barbieri and were pleased with the progress that has been made.

The President reviewed the Financial Statements of the Corporation for the year ended June 30, 1996. After a full discussion of the Corporation's operations, the following resolutions were unanimously adopted:

"RESOLVED, that the Directors accept the Financial Reports
of V. W. Eimicke Associates, Inc. for the year ended June 30, 1996
as prepared under the supervision of the Corporation's Controller, and

- 2 -

"FURTHER RESOLVED, that dividends are declared to be
payable to holders of Series A and Series B Preferred Stock
of $2.50 per share as follows:

| <u>Record Date</u> | <u>Payment Date</u> |
|---|---|
| March     6, 1997 | April    1, 1997 |
| June      5, 1997 | July     1, 1997 |
| September 8, 1997 | October 1, 1997 |
| December 9, 1997 | January 2, 1998 |

"FURTHER RESOLVED, that the salary of Alicia Eimicke Barbieri,
Executive Vice President, be $ _141,000_ per annum, effective
July 1, 1997, and

"FURTHER RESOLVED, that the salary of Laura Eimicke Klimley,
Vice President, be $ _43,000_ per annum, effective
July 1, 1997, and

"FURTHER RESOLVED, that the salary of Victor W. Eimicke,
President, be $ _578,000_ per annum, effective July 1, 1997, and

"FURTHER RESOLVED, that the salary of Maxine Eimicke,
Vice President, Secretary and Treasurer, be $ _52,000_ per annum,
effective July 1, 1997".

The Treasurer reviewed in detail the following management fees:

1.     $ _571,000_ per annum from V.W. Eimicke Ltd. to
       V. W. Eimicke Associates, Inc.

2.     $ _42,000_ per annum from the Corporation to
       Hereford Credit and Collection Agency, Inc. for credit
       services.

On motion duly made and seconded, it was unanimously:

"RESOLVED, to approve the management fee of $ ___571,000___ per annum from V. W. Eimicke Ltd. to the Corporation, and the credit services fee of $ ___42,000___ per annum from the Corporation to Hereford Credit and Collection Agency, Inc.".

There being no further business to come before the Meeting, the Meeting was duly adjourned.

DATED:   Bronxville, New York
         December 4, 1996

Victor W. Eimicke
President of the Corporation, and
Chairman of the Meeting

Maxine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

-4-

# MINUTES

## OF

## THE FORTIETH ANNUAL MEETING OF THE DIRECTORS

## OF

## V. W. EIMICKE ASSOCIATES, INC.

The Fortieth Annual Meeting of the Directors of V. W. Eimicke Associates, Inc. was held at the home of the company's President, 20 Hereford Road, Bronxville, N. Y., on Wednesday, the 3rd of December, 1997, at 5:30 p.m., of that day.

The following Directors were present:

> Alicia E. Barbieri
>
> Maxine Eimicke
>
> Victor W. Eimicke
>
> Laura E. Klimley

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 14, 1997, which has been duly executed by all the Directors of the Corporation.  Said Waiver is annexed to the Minutes of this Meeting and marked Exhibit "A".

The Secretary read the Minutes of the Thirty-Ninth Annual Meeting of the Directors of the Corporation which was held on December 4, 1996.

The President read the Minutes of the Fortieth Annual Meeting of the Stockholders of the Corporation.

On motion duly made and seconded, the following officers were unanimously elected to serve until the next Annual Meeting of the Board of Directors:

| | |
|---|---|
| President | Victor W. Eimicke |
| Vice President | Maxine Eimicke |
| Vice President | Laura Eimicke Klimley |
| Executive Vice President | Alicia Eimicke Barbieri |
| Secretary | Maxine Eimicke |
| Treasurer | Maxine Eimicke |

The President then reported on the various activities of the Corporation including the Corporation's current marketing approach.

Mrs. Klimley reported on list management and organizational structure/personnel.

Mrs. Barbieri reported on the company's Christmas Card business, Tax Forms business, the status of franchisees, compliance products and telemarketing. Mrs. Barbieri described in detail the various transactions between the Corporation and its licensees, and plans for expansion in calendar year 1998.

The Directors discussed the reports given by Mrs. Klimley and Mrs. Barbieri and were pleased with the progress that has been made.

The President reviewed the Financial Statements of the Corporation for the year ended June 30, 1997. After a full discussion of the Corporation's operations, the following resolutions were unanimously adopted:

"RESOLVED, that the Directors accept the Financial Reports
of V. W. Eimicke Associates, Inc. for the year ended June 30, 1997
as prepared under the supervision of the Corporation's Controller, and

- 2 -

"FURTHER RESOLVED, that dividends are declared to be payable to holders of Series A and Series B Preferred Stock of $2.50 per share as follows:

| Record Date | Payment Date |
|---|---|
| March      6, 1998 | April    1, 1998 |
| June       5, 1998 | July     1, 1998 |
| September 8, 1998 | October 1, 1998 |
| December 9, 1998 | January 4, 1999 |

"FURTHER RESOLVED, that the salary of Alicia Eimicke Barbieri, Executive Vice President, be $ _140,000_ per annum, effective July 1, 1998, and

"FURTHER RESOLVED, that the salary of Laura Eimicke Klimley, Vice President, be $ _36,000_ per annum, effective July 1, 1998, and

"FURTHER RESOLVED, that the salary of Victor W. Eimicke, President, be $ _620,000_ per annum, effective July 1, 1998, and

"FURTHER RESOLVED, that the salary of Maxine Eimicke, Vice President, Secretary and Treasurer, be $ _56,000_ per annum, effective July 1, 1998".

The Treasurer reviewed in detail the following management fees:

1.   $ _569,000_ per annum from V.W. Eimicke Ltd. to V. W. Eimicke Associates, Inc.

2.   $ _42,000_ per annum from the Corporation to Hereford Credit and Collection Agency, Inc. for credit services.

05/29/2008 09:45 FAX 9312781374                                                                    ☒033/052

On motion duly made and seconded, it was unanimously:

"RESOLVED, to approve the management fee of $ _563,000_ per annum from V. W. Eimicke Ltd. to the Corporation, and the credit services fee of $ _42,000_ per annum from the Corporation to Hereford Credit and Collection Agency, Inc.".

There being no further business to come before the Meeting, the Meeting was duly adjourned.

DATED:   Bronxville, New York
         December 3, 1997

Victor W. Eimicke
President of the Corporation, and
Chairman of the Meeting

Maxine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

- 4 -

# MINUTES

## OF

## THE FORTY-FIRST ANNUAL MEETING OF THE DIRECTORS

## OF

## V. W. EIMICKE ASSOCIATES, INC.

The Forty-First Annual Meeting of the Directors of V. W. Eimicke Associates, Inc. was held at the home of the company's President, 20 Hereford Road, Bronxville, N. Y., on Wednesday, the 2nd of December, 1998, at 10:00 a. m., of that day.

The following Directors were present:

Alicia E. Barbieri

Maxine Eimicke

Victor W. Eimicke

Laura E. Klimley

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 13, 1998, which has been duly executed by all the Directors of the Corporation. Said Waiver is annexed to the Minutes of this Meeting and marked Exhibit "A".

The Secretary read the Minutes of the Fortieth Annual Meeting of the Directors of the Corporation which was held on December 3, 1997.

The President read the Minutes of the Forty-First Annual Meeting of the Stockholders of the Corporation.

- 1 -

On motion duly made and seconded, the following officers were unanimously elected to serve until the next Annual Meeting of the Board of Directors:

| | |
|---|---|
| President | Victor W. Eimicke |
| Vice President | Maxine Eimicke |
| Vice President | Laura Eimicke Klimley |
| Executive Vice President | Alicia Eimicke Barbieri |
| Secretary | Maxine Eimicke |
| Treasurer | Maxine Eimicke |

The President then reported on the various activities of the Corporation including the Corporation's current marketing approach and long-range fiscal plans.

Mrs. Klimley reported on list management and organizational structure/personnel.

Mrs. Barbieri reported on the company's Christmas Card business, Tax Forms business, the status of franchisees, compliance products and telemarketing. Mrs. Barbieri described in detail the various transactions between the Corporation and its licensees, and operating plans for calendar year 1999.

The Directors discussed the reports given by Mrs. Klimley and Mrs. Barbieri and accepted the reports as presented.

The President reviewed the Financial Statements of the Corporation for the year ended June 30, 1998. After a full discussion of the Corporation's operations, the following resolutions were unanimously adopted:

"RESOLVED, that the Directors accept the Financial Reports
of V. W. Eimicke Associates, Inc. for the year ended June 30, 1998
as prepared under the supervision of the Corporation's Controller, and

- 2 -

"FURTHER RESOLVED, that dividends are declared to be payable to holders of Series A and Series B Preferred Stock of $2.50 per share as follows:

| Record Date | Payment Date |
|---|---|
| March 5, 1999 | April 1, 1999 |
| June 4, 1999 | July 1, 1999 |
| September 8, 1999 | October 1, 1999 |
| December 9, 1999 | January 4, 2000 |

"FURTHER RESOLVED, that the salary of Alicia Eimicke Barbieri, Executive Vice President, be $ 140,000 per annum, effective July 1, 1999, and

"FURTHER RESOLVED, that the salary of Laura Eimicke Klimley, Vice President, be $ 0 per annum, effective July 1, 1999, and

"FURTHER RESOLVED, that the salary of Victor W. Eimicke, President, be $ 644,000 per annum, effective July 1, 1999, and

"FURTHER RESOLVED, that the salary of Maxine Eimicke, Vice President, Secretary and Treasurer, be $ 59,000 per annum, effective July 1, 1999".

The Treasurer reviewed in detail the following management fee :

$ 42,000 per annum from the Corporation to Hereford Credit and Collection Agency, Inc. for credit services.

- 3 -

# MINUTES

## OF

## THE FORTY-SECOND ANNUAL MEETING OF THE DIRECTORS

## OF

## V. W. EIMICKE ASSOCIATES, INC.

The Forty-Second Annual Meeting of the Directors of V. W. Eimicke Associates, Inc. was held at the home of the company's President, 20 Hereford Road, Bronxville, N. Y., on Wednesday, the 1st of December, 1999, at 10:00 a. m., of that day.

The following Directors were present:

Alicia B. Barbieri

Maxine Eimicke

Victor W. Eimicke

Laura E. Klimley

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 12, 1999, which has been duly executed by all the Directors of the Corporation. Said Waiver is annexed to the Minutes of this Meeting and marked Exhibit "A".

The Secretary read the Minutes of the Forty-first Annual Meeting of the Directors of the Corporation which was held on December 2, 1998.

The President read the Minutes of the Forty-second Annual Meeting of the Stockholders of the Corporation.

On motion duly made and seconded, the following officers were unanimously elected to serve until the next Annual Meeting of the Board of Directors:

| | |
|---|---|
| President | Victor W. Eimicke |
| Vice President | Maxine Eimicke |
| Vice President | Laura Eimicke Klimley |
| Executive Vice President | Alicia Eimicke Barbieri |
| Secretary | Maxine Eimicke |
| Treasurer | Maxine Eimicke |

The President then reported on the various activities of the Corporation including the Corporation's current marketing approach and long-range fiscal plans.

Mrs. Klimley reported on list management and organizational structure/personnel.

Mrs. Barbieri reported on the company's Christmas Card business, Tax Forms business, the status of franchisees, compliance products and telemarketing. Mrs. Barbieri described in detail the various transactions between the Corporation and its licensees, and operating plans for calendar year 1999.

The Directors discussed the reports given by Mrs. Klimley and Mrs. Barbieri and accepted the reports as presented.

The President reviewed the Financial Statements of the Corporation for the year ended June 30, 1999. After a full discussion of the Corporation's operations, the following resolutions were unanimously adopted:

> "RESOLVED, that the Directors accept the Financial Reports
> of V. W. Eimicke Associates, Inc. for the year ended June 30, 1999
> as prepared under the supervision of the Corporation's Controller, and

- 2 -

"FURTHER RESOLVED, that dividends are declared to be payable to holders of Series A and Series B Preferred Stock of $2.50 per share as follows:

| Record Date | Payment Date |
|---|---|
| March     3, 2000 | April    1, 2000 |
| June      2, 2000 | July     1, 2000 |
| September 8, 2000 | October 1, 2000 |
| December 8, 2000 | January  2, 2001 |

"FURTHER RESOLVED, that the salary of Alicia Eimicke Barbieri, Executive Vice President, be $ _155,000_ per annum, effective July 1, 2000, and

"FURTHER RESOLVED, that the salary of Laura Eimicke Klimley, Vice President, be $ _____0_____ per annum, effective July 1, 2000, and

"FURTHER RESOLVED, that the salary of Victor W. Eimicke, President, be $ _550,000_ per annum, effective July 1, 2000, and

"FURTHER RESOLVED, that the salary of Maxine Eimicke, Vice President, Secretary and Treasurer, be $ _50,000_ per annum, effective July 1, 2000":

The Treasurer reviewed in detail the following management fee :

$ _42,000_ per annum from the Corporation to Hereford Credit and Collection Agency, Inc. for credit services.

- 3 -

On motion duly made and seconded, it was unanimously:

"RESOLVED, to approve the credit services fee of $ *42,000* per annum from the Corporation to Hereford Credit and Collection Agency, Inc.".

The Management Reimbursement Fee from V. V. Eimicke Ltd. to the Corporation for the year ended June 30, 1999 was $ *447,984* as approved by the President and Treasurer.

The Treasurer stated that management reimbursement fees for the year ending June 30, 2000 to the Corporation from V.W.Eimicke, Ltd. are currently being reviewed.

On motion duly made and seconded, it was unanimously:

"RESOLVED, that the President and Treasurer should study the review and approve any management reimbursement fee from V. W. Eimicke Ltd. to the Corporation.

There being no further business to come before the Meeting, the Meeting was duly adjourned.

DATED:   Bronxville, New York
         December 1, 1999


Victor W. Eimicke
President of the Corporation, and
Chairman of the Meeting


Maxine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

- 4 -

# MINUTES
## OF
## SPECIAL MEETING OF THE STOCKHOLDERS
## OF
## V. W. EIMICKE ASSOCIATES, INC.

A Special Meeting of the Stockholders of V. W. Eimicke Associates, Inc. was held at the Corporation's Headquarters, 35 E. Grassy Sprain Road, Yonkers, New York, on Tuesday, the 5th of September, 2000 at 6:00 p.m. of that day.

The meeting was held due to the death of Dr. Victor W. Eimicke, President and Director of the Corporation, on September 4, 2000.

The meeting was attended by Mrs. Alicia E. Barbieri and Mrs. Laura E. Klimley who are shareholders and officers of the Corporation, and Mrs. Maxine Eimicke, who is an officer of the Corporation.

Mrs. Alicia E. Barbieri, Executive Vice President of the Corporation, acted as Chairwoman of the Meeting and Mrs. Maxine Eimicke, Vice President, Secretary and Treasurer of the Corporation, acted as Secretary of the Meeting.

There was a full discussion regarding Corporate matters and the election to the Board of Directors of the Corporation of John Palmero, the Corporation's Controller.

- 1

The following resolution was offered, and unanimously adopted:

"RESOLVED, that John Palmero of 20 Saymor Drive, Bardonia, New York
be and he is elected a Director of the Corporation".

There being no further business to come before the Meeting, the Meeting was
duly adjourned.

DATED:     Yonkers, New York
           September 5, 2000

Alicia E. Barbieri
Executive Vice President
of the Corporation and
Chairwoman of the Meeting

Maxine Eimicke
Vice President, Secretary,
and Treasurer of the
Corporation, and Secretary
of the Meeting

- 2 -

MINUTES

OF

SPECIAL MEETING OF THE DIRECTORS

OF

V. W. EIMICKE ASSOCIATES, INC.

A Special Meeting of the Directors of V. W. Eimicke Associates, Inc. was held at the offices of the Corporation, 35 East Grassy Sprain Road, Yonkers, New York, on Tuesday, the 5th of September, 2000, at 6:30 p.m. of that day.

The following Directors were present:

> Alicia E. Barbieri
> Maxine Eimicke
> Laura E. Klimley
> John Palmero

After a full discussion, the following motion was duly made, seconded, and unanimously approved:

"RESOLVED, that Alicia E. Barbieri be, and she is elected President of the Corporation".

There being no further business to come before the Meeting, the Meeting was duly adjourned.

DATED:    Yonkers, New York
          September 5, 2000

Alicia E. Barbieri
President of the Corporation, and
Chairwoman of the Meeting

Maxine Eimicke
Vice President, Secretary
and Treasurer of the Corporation,
and Secretary of the Meeting

- 1 -

# MINUTES

## OF

## THE FORTY-THIRD ANNUAL MEETING OF THE STOCKHOLDERS

## OF

## V. W. EIMICKE ASSOCIATES, INC.

The Forty-Third Annual Meeting of the Stockholders of V. W. Eimicke Associates, Inc. was held at the Corporation's Headquarters, 35 East Grassy Sprain Road, Yonkers, N. Y. on the 6th of December, 2000 at 9:30 a.m., of that day.

The Meeting was attended by Mrs. Alicia Barbieri, Mrs. Maxine Eimicke, and Mrs. Laura Eimicke Klimley, all of whom are officers and employees of the Corporation. Mrs. Barbieri and Mrs. Klimley are all of the holders of the Capital Stock of the Corporation.

Mrs. Alicia E. Barbieri, President of the Corporation, acted as Chairwoman of the Meeting and Mrs. Maxine Eimicke, Vice President, Secretary and Treasurer of the Corporation, acted as Secretary of the Meeting.

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 16, 2000 which has been duly executed by all the Stockholders of the Corporation. Said Waiver is annexed to the Minutes of this Meeting and marked "A".

The Secretary then read the roll of the Stockholders.

The reading of the Minutes of the previous Meeting of the Stockholders was waived by unanimous consent.

- 1 -

On motion duly made and seconded, it was unanimously:

> "RESOLVED, that each and all of the acts of Directors
> and Officers of this Corporation in carrying out and promoting
> the purposes, objectives, and interests of this Corporation since
> the last Annual Stockholders' Meeting thereof, be and the same
> are approved, ratified and hereby made the acts and deeds of this
> Corporation".

The following resolutions regarding Directors were offered, and unanimously adopted:

> "RESOLVED, that Mrs. Alicia Eimicke Barbieri of
> 524 East 72nd Street, New York, New York, be and
> she is elected a Director of the Corporation.

> "FURTHER RESOLVED, that Mrs. Maxine Eimicke of
> 20 Hereford Road, Bronxville, New York, be and she is
> elected a Director of the Corporation.

> "FURTHER RESOLVED, that Mrs. Laura Eimicke Klimley
> of 5 Oakledge Road, Bronxville, New York, be and she
> is elected a Director of the Corporation.

> "FURTHER RESOLVED, that John Palmero of 20 Saymor Drive,
> Bardonia, New York, be and he is elected a Director of
> the Corporation".

The following resolutions regarding the compensation of Directors of the Corporation
was offered, seconded and unanimously adopted:

> "RESOLVED, that the compensation of each Director of
> the Corporation be at the rate of $500 for each Meeting
> actually attended and including any incidental duties which
> the Officers of the Corporation may, from time to time, request
> each Director to perform".

The President reviewed the Financial Report, as prepared by the Corporation's
controller, for the year ended June 30, 2000. After a full discussion of the Report, on motion
duly made and seconded, it was unanimously:

> "RESOLVED, to accept the Financial Report of the
> Corporation for the year ended June 30, 2000 and

> "FURTHER RESOLVED, that a copy of the Financial
> Report of the Corporation be annexed to the Minutes
> of this Meeting and marked 'B'."

- 2 -

The following motion regarding financial reports and tax returns for the Corporation was offered, seconded, and unanimously adopted:

> "RESOLVED, that the Corporation's Financial Reports and Tax Returns be prepared internally under the supervision of the Corporation's Controller".

There being no further business to come before the Meeting, the Meeting was duly adjourned.

DATED:    Yonkers, New York
          December 6, 2000

Alicia E. Barbieri
President of the Corporation, and
Chairwoman of the Meeting

Maxine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

"A"

**WAIVER OF NOTICE**

**OF**

**THE FORTY-THIRD ANNUAL MEETING OF STOCKHOLDERS**

**OF**

**V. W. EIMICKE ASSOCIATES, INC.**

---

We, the undersigned being all of the holders of the Capital Stock of V. W. Eimicke Associates, Inc., a New York Corporation, with its principal place of business at 35 East Grassy Sprain Road, Yonkers, New York, do hereby waive notice of the Annual Meeting of the Stockholders of the said Corporation and do hereby consent that the same shall be held at 35 East Grassy Sprain Road, Yonkers, N. Y. on the 6th of December 2000, at 9:30 a.m., of that day, and we hereby consent to the transaction of all business of the Corporation which may lawfully be transacted at the said Meeting.

DATED:        Yonkers, New York
              November 16, 2000

Alicia Eimicke Barbieri                    Laura Eimicke Klimley

MINUTES

OF

THE FORTY-THIRD ANNUAL MEETING OF THE DIRECTORS

OF

V. W. EIMICKE ASSOCIATES, INC.

---

The Forty-Third Annual Meeting of the Directors of V. W. Eimicke Associates, Inc. was held at the Corporation's Headquarters, 35 East Grassy Sprain Road, Yonkers, N. Y., on Wednesday, the 6th of December, 2000, at 10:00 a. m., of that day.

The following Directors were present:

Alicia E. Barbieri

Maxine Eimicke

Laura E. Klimley

John Palmero

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 16, 2000, which has been duly executed by all the Directors of the Corporation. Said Waiver is annexed to the Minutes of this Meeting and marked Exhibit "A".

The Secretary read the Minutes of the Forty-second Annual Meeting of the Directors of the Corporation which was held on December 1, 1999.

The President read the Minutes of the Forty-third Annual Meeting of the Stockholders of the Corporation.

On motion duly made and seconded, the following officers were unanimously elected to serve until the next Annual Meeting of the Board of Directors:

| | |
|---|---|
| President | Alicia E. Barbieri |
| Vice President | Maxine Eimicke |
| Vice President | Laura Eimicke Klimley |
| Secretary | Maxine Eimicke |
| Treasurer | Maxine Eimicke |

The President then reported on the various activities of the Corporation including the Corporation's current marketing approach and long-range fiscal plans. She also reported on the company's Christmas Card business, Tax Forms business, the status of franchisees, compliance products and telemarketing. Mrs. Barbieri described in detail the various transactions between the Corporation and its licensees, and operating plans for calendar year 2000.

Mrs. Klimley reported on list management and organizational structure/personnel.

The Directors discussed the reports given by Mrs. Barbieri and Mrs. Klimley and accepted the reports as presented.

The President reviewed the Financial Statements of the Corporation for the year ended June 30, 2000. After a full discussion of the Corporation's operations, the following resolutions were unanimously adopted:

> "RESOLVED, that the Directors accept the Financial Reports
> of V. W. Eimicke Associates, Inc. for the year ended June 30, 2000
> as prepared under the supervision of the Corporation's Controller; and

-2-

"FURTHER RESOLVED, that dividends are declared to be payable to holders of Series A and Series B Preferred Stock of $2.50 per share as follows:

| Record Date | Payment Date |
|---|---|
| March 2, 2001 | April 2, 2001 |
| June 4, 2001 | July 2, 2001 |
| September 7, 2001 | October 1, 2001 |
| December 7, 2001 | January 2, 2002 |

"FURTHER RESOLVED, that the salary of Alicia Eimicke Barbieri, President, be $ 350,000 per annum, effective July 1, 2001, and

"FURTHER RESOLVED, that the salary of Laura Eimicke Klimley, Vice President, be $ - 0 - per annum, effective July 1, 2001, and

"FURTHER RESOLVED, that the salary of Maxine Eimicke, Vice President, Secretary and Treasurer, be $ 200,000 per annum, effective July 1, 2001".

The Treasurer reviewed in detail the following management fee :

$ 42,000 per annum from the Corporation to Hereford Credit and Collection Agency, Inc. for credit services.

- 3 -

On motion duly made and seconded, it was unanimously:

"RESOLVED, to approve the credit services fee of $42,000 per annum from the Corporation to Hereford Credit and Collection Agency, Inc.".

The Management Reimbursement Fee from V. V. Eimicke Ltd. to the Corporation for the year ended June 30, 2000 was $ _311,539_ as approved by the President and Treasurer.

The Treasurer stated that management reimbursement fees for the year ending June 30, 2001 to the Corporation from V.W.Eimicke, Ltd. are currently being reviewed.

On motion duly made and seconded, it was unanimously:

"RESOLVED, that the President and Treasurer should study the review and approve any management reimbursement fee from V. W. Eimicke Ltd. to the Corporation, and from the Corporation to V. W. Eimicke Ltd.

There being no further business to come before the Meeting, the Meeting was duly adjourned.

DATED:   Yonkers, New York
         December 6, 2000


Alicia E. Barbieri
President of the Corporation, and
Chairwoman of the Meeting

Maxine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

- 4 -

"A"

WAIVER OF NOTICE

OF

THE FORTY-THIRD ANNUAL MEETING OF THE DIRECTORS

OF

V. W. EIMICKE ASSOCIATES, INC.

We, the undersigned, being all the Directors of V. W. Eimicke Associates, Inc., a New York Corporation, with its principal place of business at 35 East Grassy Sprain Road, Yonkers, New York, do hereby waive notice of the Annual Meeting of the Directors of the said Corporation and do hereby consent that the same shall be held at 35 East Grassy Sprain Road, Yonkers, N. Y., on the 6th of December, 2000 at 10:00 a. m. of that day, and we hereby consent to the transaction of all business of the Corporation which may lawfully be transacted at the said Meeting.

Dated: Yonkers, New York
        November 16, 2000

_____
Alicia Eimicke Barbieri

_____
John Palmero

_____
Maxine Eimicke

_____
Laura Eimicke Klimley

# MINUTES

## OF

## THE  FORTY-FOURTH ANNUAL MEETING OF THE STOCKHOLDERS

## OF

## V. W. EIMICKE ASSOCIATES, INC.

The Forty-Fourth Annual Meeting of the Stockholders of V. W. Eimicke Associates, Inc. was held at the Corporation's Headquarters, 35 East Grassy Sprain Road, Yonkers, N. Y. on the 5th of December, 2001 at 9:30 a.m., of that day.

The Meeting was attended by Ms. Alicia Eimicke, Mrs. Maxine Eimicke, and Mrs. Laura Eimicke Klimley, all of whom are officers and employees of the Corporation.  Ms. Eimicke and Mrs. Klimley are all of the holders of the Capital Stock of the Corporation.

Ms. Alicia Eimicke, President of the Corporation, acted as Chairwoman of the Meeting and Mrs. Maxine Eimicke, Vice President, Secretary and Treasurer of the Corporation, acted as Secretary of the Meeting.

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 15, 2001 which has been duly executed by all the Stockholders of the Corporation.  Said Waiver is annexed to the Minutes of this Meeting and marked "A".

The Secretary then read the roll of the Stockholders.

The reading of the Minutes of the previous Meeting of the Stockholders was waived by unanimous consent.

On motion duly made and seconded, it was unanimously:

> "RESOLVED, that each and all of the acts of Directors
> and Officers of this Corporation in carrying out and promoting
> the purposes, objectives, and interests of this Corporation since
> the last Annual Stockholders' Meeting thereof, be and the same
> are approved, ratified and hereby made the acts and deeds of this
> Corporation".

The following resolutions regarding Directors were offered, and unanimously adopted:

> "RESOLVED, that Ms. Alicia Eimicke of
> 524 East 72nd Street, New York, New York, be and
> she is elected a Director of the Corporation.

> "FURTHER RESOLVED, that Mrs. Maxine Eimicke of
> 20 Hereford Road, Bronxville, New York, be and she is
> elected a Director of the Corporation.

> "FURTHER RESOLVED, that Mrs. Laura Eimicke Klimley
> of 5 Oakledge Road, Bronxville, New York, be and she
> is elected a Director of the Corporation.

> "FURTHER RESOLVED, that John Palmero of 20 Saymor Drive,
> Bardonia, New York, be and he is elected a Director of
> the Corporation".

The President reviewed the Financial Report, as prepared by the Corporation's controller, for the year ended June 30, 2001. After a full discussion of the Report, on motion duly made and seconded, it was unanimously:

> "RESOLVED, to accept the Financial Report of the
> Corporation for the year ended June 30, 2001 and

> "FURTHER RESOLVED, that a copy of the Financial
> Report of the Corporation be annexed to the Minutes
> of this Meeting and marked 'B'."

- 2 -

The following motion regarding financial reports and tax returns for the Corporation was offered, seconded, and unanimously adopted:

> "RESOLVED, that the Corporation's Financial Reports and Tax Returns be prepared internally under the supervision of the Corporation's Controller".

There being no further business to come before the Meeting, the Meeting was duly adjourned.

DATED:   Yonkers, New York
         December 5, 2001


Alicia Eimicke
President of the Corporation, and
Chairwoman of the Meeting

Maxine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

- 3 -

"A"

WAIVER OF NOTICE

OF

THE FORTY-FOURTH ANNUAL MEETING OF STOCKHOLDERS

OF

V. W. EIMICKE ASSOCIATES, INC.

---

We, the undersigned being all of the holders of the Capital Stock of V. W. Eimicke Associates, Inc., a New York Corporation, with its principal place of business at 35 East Grassy Sprain Road, Yonkers, New York, do hereby waive notice of the Annual Meeting of the Stockholders of the said Corporation and do hereby consent that the same shall be held at 35 East Grassy Sprain Road, Yonkers, N. Y. on the 5th of December 2001, at 9:30 a.m., of that day, and we hereby consent to the transaction of all business of the Corporation which may lawfully be transacted at the said Meeting.

DATED:      Yonkers, New York
            November 15, 2001


_____          _____
Alicia Eimicke                   Laura Eimicke Klimley

# MINUTES

## OF

## THE FORTY-FOURTH ANNUAL MEETING OF THE DIRECTORS

## OF

## V. W. EIMICKE ASSOCIATES, INC.

The Forty-Fourth Annual Meeting of the Directors of V. W. Eimicke Associates, Inc. was held at the Corporation's Headquarters, 35 East Grassy Sprain Road, Yonkers, N. Y., on Wednesday, the 5th of December, 2001, at 10:00 a. m., of that day.

The following Directors were present:

> Alicia Eimicke
>
> Maxine Eimicke
>
> Laura E. Klimley
>
> John Palmero

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 15, 2001, which has been duly executed by all the Directors of the Corporation. Said Waiver is annexed to the Minutes of this Meeting and marked Exhibit "A".

The Secretary read the Minutes of the Forty-Third Annual Meeting of the Directors of the Corporation which was held on December 6, 2000.

The President read the Minutes of the Forty-Fourth Annual Meeting of the Stockholders of the Corporation.

- 1 -

On motion duly made and seconded, the following officers were unanimously elected to serve until the next Annual Meeting of the Board of Directors:

| | |
|---|---|
| President | Alicia Eimicke |
| Vice President | Maxine Eimicke |
| Vice President | Laura Eimicke Klimley |
| Secretary | Maxine Eimicke |
| Treasurer | Maxine Eimicke |

The President then reported on the various activities of the Corporation including the Corporation's current marketing approach and long-range fiscal plans. She also reported on the company's Christmas Card business, Tax Forms business, the status of franchisees, compliance products and telemarketing. Ms. Eimicke described in detail the various transactions between the Corporation and its licensees, and operating plans for calendar year 2002.

Ms. Eimicke reported on list management and organizational structure/personnel.

The Directors discussed the reports given by Ms. Eimicke and Mrs. Klimley and accepted the reports as presented.

The President reviewed the Financial Statements of the Corporation for the year ended June 30, 2001. After a full discussion of the Corporation's operations, the following resolutions were unanimously adopted:

> "RESOLVED, that the Directors accept the Financial Reports
> of V. W. Eimicke Associates, Inc. for the year ended June 30, 2001
> as prepared under the supervision of the Corporation's Controller, and

– 2 –

"FURTHER RESOLVED, that dividends are declared to be payable to holders of Series A and Series B Preferred Stock of $2.50 per share as follows:

| Record Date | Payment Date |
|---|---|
| March    1, 2002 | April    1, 2002 |
| June    3, 2002 | July    1, 2002 |
| September 6, 2002 | October 1, 2002 |
| December 6, 2002 | January 2, 2003 |

"FURTHER RESOLVED, that the salary of Alicia Eimicke, President, be $ 390,000 per annum, effective July 1, 2002, and

"FURTHER RESOLVED, that the salary of Maxine Eimicke, Vice President, Secretary and Treasurer, be $ 200,000 per annum, effective July 1, 2002".

The Treasurer reviewed in detail the following management fee :

$ 42,000 per annum from the Corporation to Hereford Credit and Collection Agency, Inc. for credit services.

- 3 -

On motion duly made and seconded, it was unanimously:

"RESOLVED, to approve the credit services fee of $_42,000_ per annum from the Corporation to Hereford Credit and Collection Agency, Inc.".

The Management Reimbursement Fee from V. V. Eimicke Ltd. to the Corporation for the year ended June 30, 2001 was $_213,713_ as approved by the President and Treasurer.

The Treasurer stated that management reimbursement fees for the year ending June 30, 2002 to the Corporation from V.W.Eimicke, Ltd. are currently being reviewed.

On motion duly made and seconded, it was unanimously:

"RESOLVED, that the President and Treasurer should study the review and approve any management reimbursement fee from V. W. Eimicke Ltd. to the Corporation, and from the Corporation to V. W. Eimicke Ltd."

There being no further business to come before the Meeting, the Meeting was duly adjourned.

DATED: Yonkers, New York
December 5, 2001

Alicia Eimicke,
President of the Corporation, and
Chairwoman of the Meeting

Maxine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

– 4 –

"A"

## WAIVER OF NOTICE

### OF

## THE FORTY-FOURTH ANNUAL MEETING OF THE DIRECTORS

### OF

## V. W. EIMICKE ASSOCIATES, INC.

We, the undersigned, being all the Directors of V. W. Eimicke Associates, Inc., a New York Corporation, with its principal place of business at 35 East Grassy Sprain Road, Yonkers, New York, do hereby waive notice of the Annual Meeting of the Directors of the said Corporation and do hereby consent that the same shall be held at 35 East Grassy Sprain Road, Yonkers, N. Y., on the 5th of December, 2001 at 10:00 a. m. of that day, and we hereby consent to the transaction of all business of the Corporation which may lawfully be transacted at the said Meeting.

Dated: Yonkers, New York
      November 15, 2001

_____    _____
Alicia Eimicke                                        John Palmero

_____    _____
Maxine Eimicke                                  Laura Eimicke Klimley

MINUTES

OF

THE FORTY-FIFTH ANNUAL MEETING OF THE DIRECTORS

OF

V. W. EIMICKE ASSOCIATES, INC.

The Forty-Fifth Annual Meeting of the Directors of V. W. Eimicke Associates, Inc. was held at the Corporation's Headquarters, 35 East Grassy Sprain Road, Yonkers, N. Y., on Wednesday, the 4th of December, 2002, at 10:00 a. m., of that day.

The following Directors were present:

Alicia Eimicke

Maxine Eimicke

Laura E. Klimley

John Palmero

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 14, 2002, which has been duly executed by all the Directors of the Corporation. Said Waiver is annexed to the Minutes of this Meeting and marked Exhibit "A".

The Secretary read the Minutes of the Forty-Fourth Annual Meeting of the Directors of the Corporation which was held on December 5, 2001.

The President read the Minutes of the Forty-Fifth Annual Meeting of the Stockholders of the Corporation.

- 1 -

On motion duly made and seconded, the following officers were unanimously elected to serve until the next Annual Meeting of the Board of Directors:

| | |
|---|---|
| President | Alicia Eimicke |
| Vice President | Maxine Eimicke |
| Vice President | Laura Eimicke Klimley |
| Secretary | Maxine Eimicke |
| Treasurer | Maxine Eimicke |

The President then reported on the various activities of the Corporation including the Corporation's current marketing approach and long-range fiscal plans. She also reported on the company's Christmas Card business, Tax Forms business, the status of franchisees, compliance products and telemarketing. Ms. Eimicke described in detail the various transactions between the Corporation and its licensees, and operating plans for calendar year 2003.

Ms. Eimicke reported on list management and organizational structure/personnel.

The Directors discussed the reports given by Ms. Eimicke and Mrs. Klimley and accepted the reports as presented.

The President reviewed the Financial Statements of the Corporation for the year ended June 30, 2002. After a full discussion of the Corporation's operations, the following resolutions were unanimously adopted:

"RESOLVED, that the Directors accept the Financial Reports of V. W. Eimicke Associates, Inc. for the year ended June 30, 2002 as prepared under the supervision of the Corporation's Controller, and

- 2 -

"FURTHER RESOLVED, that dividends are declared to be payable to holders of Series A and Series B Preferred Stock of $2.50 per share as follows:

| Record Date | Payment Date |
| --- | --- |
| March 3, 2003 | April 1, 2003 |
| June 3, 2003 | July 1, 2003 |
| September 5, 2003 | October 1, 2003 |
| December 5, 2003 | January 2, 2004 |

"FURTHER RESOLVED, that the salary of Alicia Eimicke, President, be $ _390,000_ per annum, effective July 1, 2003, and

"FURTHER RESOLVED, that the salary of Maxine Eimicke, Vice President, Secretary and Treasurer, be $ _200,000_ per annum, effective July 1, 2003".

The Treasurer reviewed in detail the following management fee :

$ _42,000_ per annum from the Corporation to Hereford Credit and Collection Agency, Inc. for credit services.

-3-

# MINUTES

## OF

## THE FORTY-FIFTH ANNUAL MEETING OF THE STOCKHOLDERS

## OF

## V. W. EIMICKE ASSOCIATES, INC.

The Forty-Fifth Annual Meeting of the Stockholders of V. W. Eimicke Associates, Inc. was held at the Corporation's Headquarters, 35 East Grassy Sprain Road, Yonkers, N. Y. on the 4th of December, 2002 at 9:30 a.m., of that day.

The Meeting was attended by Ms. Alicia Eimicke, Mrs. Maxine Eimicke, and Mrs. Laura Eimicke Klimley, all of whom are officers and employees of the Corporation. Ms. Eimicke and Mrs. Klimley are all of the holders of the Capital Stock of the Corporation.

Ms. Alicia Eimicke, President of the Corporation, acted as Chairwoman of the Meeting and Mrs. Maxine Eimicke, Vice President, Secretary and Treasurer of the Corporation, acted as Secretary of the Meeting.

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 14, 2002 which has been duly executed by all the Stockholders of the Corporation. Said Waiver is annexed to the Minutes of this Meeting and marked "A".

The Secretary then read the roll of the Stockholders.

The reading of the Minutes of the previous Meeting of the Stockholders was waived by unanimous consent.

- 1 -

On motion duly made and seconded, it was unanimously:

> "RESOLVED, that each and all of the acts of Directors
> and Officers of this Corporation in carrying out and promoting
> the purposes, objectives, and interests of this Corporation since
> the last Annual Stockholders' Meeting thereof, be and the same
> are approved, ratified and hereby made the acts and deeds of this
> Corporation".

The following resolutions regarding Directors were offered, and unanimously adopted:

> "RESOLVED, that Ms. Alicia Eimicke of
> 524 East 72nd Street, New York, New York, be and
> she is elected a Director of the Corporation.

> "FURTHER RESOLVED, that Mrs. Maxine Eimicke of
> 20 Hereford Road, Bronxville, New York, be and she is
> elected a Director of the Corporation.

> "FURTHER RESOLVED, that Mrs. Laura Eimicke Klimley
> of 5 Oakledge Road, Bronxville, New York, be and she
> is elected a Director of the Corporation.

> "FURTHER RESOLVED, that John Palmero of 20 Saymor Drive,
> Bardonia, New York, be and he is elected a Director of
> the Corporation".

The President reviewed the Financial Report, as prepared by the Corporation's controller, for the year ended June 30, 2002. After a full discussion of the Report, on motion duly made and seconded, it was unanimously:

> "RESOLVED, to accept the Financial Report of the
> Corporation for the year ended June 30, 2002 and

> "FURTHER RESOLVED, that a copy of the Financial
> Report of the Corporation be annexed to the Minutes
> of this Meeting and marked 'B'."

The following motion regarding financial reports and tax returns for the Corporation was offered, seconded, and unanimously adopted:

"RESOLVED, that the Corporation's Financial Reports and Tax Returns be prepared internally under the supervision of the Corporation's Controller".

There being no further business to come before the Meeting, the Meeting was duly adjourned.

DATED:    Yonkers, New York
          December 4, 2002

Alicia Eimicke
President of the Corporation, and
Chairwoman of the Meeting

Maxine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

- 3 -

"A"

## WAIVER OF NOTICE
### OF
## THE FORTY-FIFTH ANNUAL MEETING OF STOCKHOLDERS
### OF
## V. W. EIMICKE ASSOCIATES, INC.

We, the undersigned being all of the holders of the Capital Stock of V. W. Eimicke Associates, Inc., a New York Corporation, with its principal place of business at 35 East Grassy Sprain Road, Yonkers, New York, do hereby waive notice of the Annual Meeting of the Stockholders of the said Corporation and do hereby consent that the same shall be held at 35 East Grassy Sprain Road, Yonkers, N. Y. on the 4th of December 2002, at 9:30 a.m., of that day, and we hereby consent to the transaction of all business of the Corporation which may lawfully be transacted at the said Meeting.

DATED:     Yonkers, New York
           November 14, 2002


_____          _____
Alicia Eimicke                   Laura Eimicke Klimley

"A"

WAIVER OF NOTICE

OF

THE FORTY-FIFTH ANNUAL MEETING OF THE DIRECTORS

OF

V. W. EIMICKE ASSOCIATES, INC.

---

We, the undersigned, being all the Directors of V. W. Eimicke Associates, Inc., a New York Corporation, with its principal place of business at 35 East Grassy Sprain Road, Yonkers, New York, do hereby waive notice of the Annual Meeting of the Directors of the said Corporation and do hereby consent that the same shall be held at 35 East Grassy Sprain Road, Yonkers, N. Y., on the 4th of December, 2002 at 10:00 a. m. of that day, and we hereby consent to the transaction of all business of the Corporation which may lawfully be transacted at the said Meeting.

Dated: Yonkers, New York
      November 14, 2002

_____    _____
Alicia Eimicke                                 John Palmero

_____    _____
Maxine Eimicke                             Laura Eimicke Klimley

On motion duly made and seconded, it was unanimously:

"RESOLVED, to approve the credit services fee of $42,000 per annum from the Corporation to Hereford Credit and Collection Agency, Inc.".

The Management Reimbursement Fee from V. V. Eimicke Ltd. to the Corporation for the year ended June 30, 2002 was $ 181,916 as approved by the President and Treasurer.

The Treasurer stated that management reimbursement fees for the year ending June 30, 2003 to the Corporation from V.W.Eimicke, Ltd. are currently being reviewed.

On motion duly made and seconded, it was unanimously:

"RESOLVED, that the President and Treasurer should study the review and approve any management reimbursement fee from V. W. Eimicke Ltd. to the Corporation, and from the Corporation to V. W. Eimicke Ltd.

There being no further business to come before the Meeting, the Meeting was duly adjourned.

DATED:   Yonkers, New York
             December 4, 2002


Alicia Eimicke
President of the Corporation, and
Chairwoman of the Meeting

Maxine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

— 4—

MINUTES

OF

THE FORTY-SIXTH ANNUAL MEETING OF THE STOCKHOLDERS

OF

V. W. EIMICKE ASSOCIATES, INC.

---

The Forty-Sixth Annual Meeting of the Stockholders of V. W. Eimicke Associates, Inc. was held at the Corporation's Headquarters, 35 East Grassy Sprain Road, Yonkers, N. Y. on the 3rd of December, 2003 at 9:30 a.m., of that day.

The Meeting was attended by Ms. Alicia Eimicke, Mrs. Maxine Eimicke, and Mrs. Laura Eimicke Klimley, all of whom are officers and employees of the Corporation. Ms. Eimicke and Mrs. Klimley are all of the holders of the Capital Stock of the Corporation.

Ms. Alicia Eimicke, President of the Corporation, acted as Chairwoman of the Meeting and Mrs. Maxine Eimicke, Vice President, Secretary and Treasurer of the Corporation, acted as Secretary of the Meeting.

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 13, 2003 which has been duly executed by all the Stockholders of the Corporation. Said Waiver is annexed to the Minutes of this Meeting and marked "A".

The Secretary then read the roll of the Stockholders.

The reading of the Minutes of the previous Meeting of the Stockholders was waived by unanimous consent.

John Palmero has submitted his resignation, effective January 1, 2004, as a Director of the Corporation. In accepting Mr. Palmero's resignation, the shareholders expressed their appreciation for the service rendered. Said resignation is annexed to the Minutes of this meeting and marked "B".

- 1 -

On motion duly made and seconded, it was unanimously:

> "RESOLVED, that each and all of the acts of Directors
> and Officers of this Corporation in carrying out and promoting
> the purposes, objectives, and interests of this Corporation since
> the last Annual Stockholders' Meeting thereof, be and the same
> are approved, ratified and hereby made the acts and deeds of this
> Corporation".

The following resolutions regarding Directors were offered, and unanimously adopted:

> "RESOLVED, that Ms. Alicia Eimicke of
> 524 East 72nd Street, New York, New York, be and
> she is elected a Director of the Corporation.

> "FURTHER RESOLVED, that Mrs. Maxine Eimicke of
> 20 Hereford Road, Bronxville, New York, be and she is
> elected a Director of the Corporation.

> "FURTHER RESOLVED, that Mrs. Laura Eimicke Klimley
> of 5 Oakledge Road, Bronxville, New York, be and she
> is elected a Director of the Corporation.

The President reviewed the Financial Report, as prepared by the Corporation's controller, for the year ended June 30, 2003. After a full discussion of the Report, on motion duly made and seconded, it was unanimously:

> "RESOLVED, to accept the Financial Report of the
> Corporation for the year ended June 30, 2003 and

> "FURTHER RESOLVED, that a copy of the Financial
> Report of the Corporation be annexed to the Minutes
> of this Meeting and marked 'C'."

- 2 -

The following motion regarding financial reports and tax returns for the Corporation was offered, seconded, and unanimously adopted:

> "RESOLVED, that the Corporation's Financial Reports and Tax Returns be prepared internally under the supervision of the Corporation's Controller".

There being no further business to come before the Meeting, the Meeting was duly adjourned.

DATED:   Yonkers, New York
           December 3, 2003


Alicia Eimicke
President of the Corporation, and
Chairwoman of the Meeting

Maxine Eimicke
Vice President, Secretary and Treasurer
of the Corporation, and
Secretary of the Meeting

"B"

**JOHN PALMERO**
**20 SAYMOR DRIVE**
**BARDONIA, NEW YORK 10954**

December 2, 2003

To The Stockholders and Directors of
V.W. EIMICKE ASSOCIATES, INC. :

I hereby resign as a Director of V.W. Eimicke Associates, Inc. effective January 1, 2004.

I have enjoyed serving for the past three years and thank you all for your friendship and
cooperation.

Sincerely,

"A"

WAIVER OF NOTICE

OF

THE FORTY-SIXTH ANNUAL MEETING OF STOCKHOLDERS

OF

V. W. EIMICKE ASSOCIATES, INC.

We, the undersigned being all of the holders of the Capital Stock of V. W. Eimicke Associates, Inc., a New York Corporation, with its principal place of business at 35 East Grassy Sprain Road, Yonkers, New York, do hereby waive notice of the Annual Meeting of the Stockholders of the said Corporation and do hereby consent that the same shall be held at 35 East Grassy Sprain Road, Yonkers, N. Y. on the 3rd of December 2003, at 9:30 a.m., of that day, and we hereby consent to the transaction of all business of the Corporation which may lawfully be transacted at the said Meeting.

DATED:     Yonkers, New York
           November 13, 2003


Alicia Eimicke                          Laura Eimicke Klimley

# MINUTES

## OF

## THE FORTY-SIXTH ANNUAL MEETING OF THE DIRECTORS

## OF

## V. W. EIMICKE ASSOCIATES, INC.

---

The Forty-Sixth Annual Meeting of the Directors of V. W. Eimicke Associates, Inc. was held at the Corporation's Headquarters, 35 East Grassy Sprain Road, Yonkers, N. Y., on Wednesday, the 3rd of December, 2003, at 10:00 a. m., of that day.

The following Directors were present:

> Alicia Eimicke
>
> Maxine Eimicke
>
> Laura E. Klimley
>
> John Palmero

The President accepted the resignation of John Palmero as a Director of the Corporation, to be effective January 1, 2004.

The Secretary of the Meeting, Mrs. Eimicke, submitted to the Meeting a Waiver of Notice of the Meeting, dated November 13, 2003, which has been duly executed by all the Directors of the Corporation. Said Waiver is annexed to the Minutes of this Meeting and marked Exhibit "A".

The Secretary read the Minutes of the Forty-Fifth Annual Meeting of the Directors of the Corporation which was held on December 4, 2002.

The President read the Minutes of the Forty-Fifth Annual Meeting of the Stockholders of the Corporation.

- 1 -

On motion duly made and seconded, the following officers were unanimously elected to serve until the next Annual Meeting of the Board of Directors:

| | |
|---|---|
| President | Alicia Eimicke |
| Vice President | Maxine Eimicke |
| Vice President | Laura Eimicke Klimley |
| Secretary | Maxine Eimicke |
| Treasurer | Maxine Eimicke |

The President then reported on the various activities of the Corporation including the Corporation's current marketing approach and long-range fiscal plans. She also reported on the company's Christmas Card business, Tax Forms business, the status of franchisees, compliance products and telemarketing. Ms. Eimicke described in detail the various transactions between the Corporation and its licensees, and operating plans for calendar year 2004.

The President also reported on the marketing of the Christmas card business to an outside buyer. The target for the completion of this process is December 31, 2003.

Ms. Eimicke reported on list management and organizational structure/personnel.

The Directors discussed the reports given by Ms. Eimicke and Mrs. Klimley and accepted the reports as presented.

The President reviewed the Financial Statements of the Corporation for the year ended June 30, 2003. After a full discussion of the Corporation's operations, the following resolutions were unanimously adopted:

"RESOLVED, that the Directors accept the Financial Reports
of V. W. Eimicke Associates, Inc. for the year ended June 30, 2003
as prepared under the supervision of the Corporation's Controller, and

- 2 -

"FURTHER RESOLVED, that dividends are declared to be payable to holders of Series A and Series B Preferred Stock of $2.50 per share as follows:

| Record Date | Payment Date |
|---|---|
| March    3, 2004 | April    1, 2004 |
| June    3, 2004 | July    1, 2004 |
| September 5, 2004 | October 1, 2004 |
| December  5, 2004 | January  3, 2005 |

"FURTHER RESOLVED, that the salary of Alicia Eimicke, President, be $ _390,000_ per annum, effective July 1, 2004, and

"FURTHER RESOLVED, that the salary of Maxine Eimicke, Vice President, Secretary and Treasurer, be $ _200,000_ per annum, effective July 1, 2004".

The Treasurer reviewed in detail the following management fee :

$ _42,000_ per annum from the Corporation to Hereford Credit and Collection Agency, Inc. for credit services.

- 3 -

On motion duly made and seconded, it was unanimously:

"RESOLVED, to approve the credit services fee of $42,000 per annum from the Corporation to Hereford Credit and Collection Agency, Inc.".

The Management Reimbursement Fee from V. V. Eimicke Ltd. to the Corporation for the year ended June 30, 2003 was $ 239,797 as approved by the President and Treasurer.

The Treasurer stated that management reimbursement fees for the year ending June 30, 2004 to the Corporation from V.W.Eimicke, Ltd. are currently being reviewed.

On motion duly made and seconded, it was unanimously:

"RESOLVED, that the President and Treasurer should study the review and approve any management reimbursement fee from V. W. Eimicke Ltd. to the Corporation, and from the Corporation to V. W. Eimicke Ltd.

There being no further business to come before the Meeting, the Meeting was duly adjourned.

DATED:   Yonkers, New York
         December 3, 2003


_____              _____
Alicia Eimicke                        Maxine Eimicke
President of the Corporation, and     Vice President, Secretary and Treasurer
Chairwoman of the Meeting             of the Corporation, and
                                      Secretary of the Meeting

"A"

## WAIVER OF NOTICE
### OF
### THE FORTY-SIXTH ANNUAL MEETING OF THE DIRECTORS
### OF
### V. W. EIMICKE ASSOCIATES, INC.

---

We, the undersigned, being all the Directors of V. W. Eimicke Associates, Inc., a New York Corporation, with its principal place of business at 35 East Grassy Sprain Road, Yonkers, New York, do hereby waive notice of the Annual Meeting of the Directors of the said Corporation and do hereby consent that the same shall be held at 35 East Grassy Sprain Road, Yonkers, N. Y., on the 3rd of December, 2003 at 10:00 a. m. of that day, and we hereby consent to the transaction of all business of the Corporation which may lawfully be transacted at the said Meeting.

Dated: Yonkers, New York
      November 13, 2003

_____
Alicia Eimicke

_____
John Palmero

_____
Maxine Eimicke

_____
Laura Eimicke Klimley

LAW OFFICES

# HALL DICKLER KENT GOLDSTEIN & WOOD LLP

909 THIRD AVENUE, NEW YORK, NY 10022-4731

TELEPHONE 212 339-5400
TELEFAX 212 935-3131
www.halldickler.com

MICHAEL A. MEYERS
212-339-5409
mmeyers@halldickler.com

August 28, 2001

<u>To the Attached Distribution List</u>

Re: <u>Eimicke - Proposed Drop-Down of Business to LLC</u>

Based on our recent meeting, we have prepared the enclosed memorandum and diagram setting forth an analysis of the possible restructuring of the business to enable you to minimize the tax that would be incurred when the company becomes profitable or is sold. After each of you have had an opportunity to review the memorandum, please call me so that we can discuss.

Very truly yours,

Michael A. Meyers

MAM/alk
Attachment

LOS ANGELES, CA
2029 CENTURY PARK EAST   LOS ANGELES, CA 90067
TELEPHONE 310 203-8410   TELEFAX 310 203-8559

WHITE PLAINS, NY
11 MARTINE AVENUE   WHITE PLAINS, NY 10606-1948
TELEPHONE 914 461-5000   TELEFAX 914-428-1668

HDKNY/12977BA/#2

HD 20008014

# HALL DICKLER KENT GOLDSTEIN & WOOD LLP

## MEMORANDUM

FROM: Michael A. Meyers    DATE: August 27, 2001

TO: Maxine Eimicke, Alicia Eimicke, Laura Klimley, John Palmero

SUBJECT: Eimicke - Proposed Drop-Down of Business to LLC

1. **FACTS**

V. W. Eimicke Associates, Inc. ("VWE Associates") is a C corporation with significant net operating losses ("NOLs") totaling approximately $8.6 million. VWE Associates is owned equally by Alicia Eimicke and Laura Klimley. VWE Associates has a book value and basis of approximately $11 million (excluding goodwill) and has outstanding liabilities of approximately $24 million. $18 million of these liabilities represent interest-bearing obligations to third-party lenders, including $1.5 million to Laura Klimley. The remaining liabilities, $6 million, represent trade debt.

We have been asked to advise VWE Associates as to the most tax efficient business structure under which it could achieve the following goals in the event VWE Associates becomes profitable and/or is later sold at a substantial gain: (i) the best utilization of its significant NOLs to offset future earnings and (ii) the reduction of potential exposure to double tax liability (that is, taxation at both the corporate and shareholder levels).

2. **CONCLUSION**

This memorandum will discuss three scenarios VWE Associates may consider in order to best achieve the above goals and the tax consequences of each. For the following reasons, which are described in more detail in Part 3 below, we would

HDKNY/125447v#1

**HD 20008015**

recommend that VWE Associates consider employing Scenario 3 (drop-down of business to an LLC):[1]

a. <u>Scenario 1: Remain a C Corporation</u>: The advantage to VWE Associates remaining a C corporation is that if it became profitable, it would be able to use its NOLs to offset future earnings. However, once the NOLs were used up, it would be difficult to zero-out its income by salary expenses. Another drawback to remaining a C corporation is the exposure to double tax liability in the event the business is sold. In this case, the sale of the business could be subject to an effective tax rate of up to 53%.

b. <u>Scenario 2: Convert to an S Corporation</u>: If VWE Associates converted to an S corporation its profits and losses would only be taxed once at the shareholder-level. However, the drawback here is that VWE Associates will lose the benefit of its NOLs until such time as the business is sold. Thus, during the period between the conversion and the sale, the business profits of VWE Associates would be fully taxable to Alicia and Laura as the shareholders of VWE Associates.

c. <u>Scenario 3: Drop Business Down to LLC</u>: Dropping down the business of VWE Associates to an LLC in the manner set forth below in Part 3.c. would best achieve the above goals for the following reasons:

    i. VWE Associates would have a stream of income from the LLC which it could use to pay off its interest obligations;

---

[1] Attached to this memorandum as Exhibit A is a diagram of the Scenario 3 structure.

HD 20008016

ii.   VWE Associates would retain the benefit of its NOLs, which would shelter from tax the stream of income from the LLC;

iii.  The debt owed to Laura by VWE Associates could be paid off; and

iv.   In the event the business is sold at a substantial profit, VWE Associates would be taxed under Code §704(c) on its built-in gain (i.e., the fair market value of the business at the time of its contribution to the LLC less its adjusted basis). However, any excess gain over and above this §704(c) amount could be allocated solely to Alicia and Laura, thus mitigating the double tax liability problem.

3.   **DISCUSSION**

a.   <u>Scenario 1: Remain a C Corporation</u>

In the event VWE Associates remained a C corporation and became profitable, it would be able to use its NOLs to offset the new earnings. However, once the NOLs are exhausted, VWE Associates would likely be unable to zero-out its taxable income by deductible salary expenses. Another drawback to remaining a C corporation is that in the event the business is later sold, the proceeds from the sale would be subject to two levels of tax: one at the corporate level and another at the shareholder level.[2] As is illustrated in the following example, the total effective tax rate on the sale of the business due to this double tax liability would be approximately 53%.

For example, assume the business was sold for $50 million at a time when VWE

---

[2] We are assuming here that a future purchaser of the business would not buy the stock of VWE Associates.

NDKNY/125447v#1                              3

HD 20008017

Associates' adjusted basis in its assets was $10 million and its NOLs were zero.[3] In this case, VWE Associates would have $40 million of corporate-level gain ($50 million sale proceeds less $10 million adjusted basis). Assuming that this gain would be subject to total federal and state taxes of approximately 43%,[4] the tax liability would be $17.2 million ($40 million gain x 43%). This would leave $32.8 million ($50 million sale proceeds less $17.2 million tax liability) available for distribution to the shareholders in the event of the liquidation of VWE Associates. Assuming that this $32.8 million liquidating distribution would be subject to total federal and state taxes of approximately 28%,[5] the tax liability on this amount would be $9.184 million. Consequently, taking into account both the corporate and shareholder-level taxes on the $50 million sale proceeds, the sale of the business would ultimately be subject to an aggregate tax rate of approximately 53% (i.e., $17.2 million corporate-level taxes plus $9.184 million shareholder-level taxes ÷ $50 million sale proceeds).

b.    Scenario 2: Convert to an S Corporation

The advantage of converting to an S corporation is that VWE Associates will be treated as a flow-through entity. That is, profits and losses will flow through to the shareholders and therefore business profits will only be subject to one level of taxation. The drawback to converting to an S corporation is that under Code §1371(b)(1), VWE

---

[3] Note that if NOLs remained at the time of the sale, VWE Associates could use them to offset the gain generated on the sale of the business. Consequently, the total effective tax rate on the sale would be less than 53%.

[4] This assumes a 35% federal corporate tax and 8% total state and local taxes.

[5] This assumes a 20% federal long-term capital gain tax and 8% total state and local taxes.

HD 20008018

Associates will lose the benefit of its substantial NOLs (in existence prior to the conversion) to offset these business profits. However, in the event the business or particular assets are later sold, these NOLs could then be used to offset any built-in gain triggered under Code §1374. Under Code §1374, for a 10-year period following the conversion to an S corporation, VWE Associates would be subject to a corporate-level tax on the gain inherent in any appreciated assets (including goodwill) held at the time of the conversion and later sold by VWE Associates.*

For example, assume VWE Associates converted to an S corporation tomorrow and the business was sold within 10 years of the conversion for $50 million. The §1374 built-in gain would be at least $13 million (i.e., $24 million fair market value, assuming the value of the business on the date of the conversion was at least $1 over the amount of the liabilities, less $11 million book basis). In this case, $8.6 million of the $13 million §1374 gain would be sheltered by the $8.6 million NOLs in existence at the time of the conversion, leaving $4.4 million gain. Therefore, this $4.4 million of §1374 gain remaining after use of the NOLs would still be subject to corporate and shareholder-level federal and state taxes totaling $2.594 million ($1.892 million corporate taxes [$4.4 million gain x 43%] plus $702,240 shareholder taxes [$4.4 million gain less 1.892 million corporate taxes x 28%]). The remaining $26 million gain on the sale would be taxed only to the Alicia and Laura as the shareholders of VWE Associates, and this would amount to total federal and state taxes of $7.28 million ($26 million gain x 28%).

---

* Under Code §1374(d)(2)(A)(ii), VWE Associates would only incur the §1374 gain to the extent it had taxable income in the year of the disposition of the asset. Any amounts not taken into income are carried forward, but not beyond the 10-year trigger period.

HD 20008019

Consequently, the sale of the business under these facts would result in a total effective tax rate of approximately 20% ($2.594 million corporate and shareholder-level taxes on the §1374 built-in gain plus $7.28 million shareholder-level taxes ÷ $50 million sale proceeds).

As a result of converting to an S corporation, the 20% effective tax rate on the sale of the business under this Scenario 2 would be much less than the 53% effective rate under Scenario 1 (remaining a C corporation). However, under this Scenario 2, the business profits realized during the period between the conversion to S status and the sale of the business would be fully taxed to Alicia and Laura as the shareholders of the S corporation, since the $8.6 million NOLs could not be used to offset business profits during this time period.

c.   Scenario 3: Drop-Down of Business to LLC with Guaranteed Payment to VWE Associates

i.   Steps

Under this Scenario 3, the following steps would be taken:

(1)   VWE Associates and an LLC formed by Alicia and Laura ("HoldCo") would form an operating LLC ("OperatingCo").

(2)   HoldCo would be capitalized by Laura contributing $1.5 million (represented by the $1.5 debt owed to her from VWE Associates) and Alicia contributing cash and/or management services to HoldCo.

(3)   OperatingCo would be capitalized by VWE Associates contributing the assets and trade debts of the business (VWE

HD 20008020

Associates would retain the $18 million third-party debt)
and HoldCo contributing the $1.5 million debt instrument
and any other capital to OperatingCo.

(4)     VWE Associates and HoldCo would agree that the value of
the business contributed by VWE Associates is at least $1
over the $24 million in liabilities owed by VWE Associates.

(5)     In return for their contributions, VWE Associates would
receive a guaranteed payment equal to 150% of the highest
applicable federal rate ("AFR") in effect each year for the
first two years (after two years, the guaranteed payment can
be changed to a greater amount) plus a 10% profits interest
in OperatingCo and HoldCo would receive a 90% profits
interest in OperatingCo.

As a result of this arrangement, any business profits of OperatingCo would first
be used to pay the guaranteed payment to VWE Associates and the balance of the
profits, if any, would be allocated 10% to VWE Associates and 90% to HoldCo. (See
Part 2.c.iv. below for a more detailed discussion of the guaranteed payment.)

ii.     <u>Objectives and Tax Consequences</u>

The objectives of this arrangement would be as follows. First, the guaranteed
payment would be used by VWE Associates to pay the interest obligations on the $18
million liabilities retained by it on the drop-down of the business to OperatingCo. This
guaranteed payment would be income to VWE Associates and deductible by
OperatingCo.

HDKNY/125447/#1                     7

HD 20008021

Second, VWE Associates would still have the benefit of its $8.6 million NOLs. Therefore, the stream of income to VWE Associates from OperatingCo with respect to the guaranteed payment and the 10% profits interest would be sheltered by the NOLs.

Third, Alicia and Laura's interests in HoldCo would be structured so that the stream of income received from OperatingCo by HoldCo would be allocated to Laura and Alicia in a manner agreed to by them but so that the $1.5 million debt owed to Laura by VWE Associates would be paid off.

Finally, in the event OperatingCo sold the business, while the initial built-in gain in the business at the time of the formation of OperatingCo would have to be allocated to VWE Associates under Code §704(c), any gain over and above this amount could be allocated to HoldCo. Therefore, any gain in excess of the §704(c) amount would be subject to only one level of taxation, that is, only to Laura and Alicia.

     iii.    Example

To illustrate these principles, assume the business is sold by OperatingCo for $50 million, the book basis remained $11 million, and VWE Associates had zero NOLs left at the time of the sale. In this case, the sale of the business by OperatingCo would generate $39 million taxable gain ($50 million sale price less $11 million basis). Since the value of the business contributed by VWE Associates at the time of the formation of OperatingCo was $24 million and the book basis was $11 million, there is $13 million of §704(c) gain ($24 million value at time of contribution less $11 million basis) that must be allocated to VWE Associates. VWE Associates would be taxed $5.59 million on this gain ($13 million x 43%), and therefore OperatingCo would distribute to VWE Associates an amount of cash necessary to pay this tax liability. The remaining $26

HDKNY/125447/v#1

8

HD 20008022

million gain on the sale of the business would be allocated 10% (or $2.6 million) to VWE Associates and 90% (or $23.4 million) to HoldCo. VWE Associates would be taxed $1.118 million on this gain ($2.6 million x 43%), again requiring OperatingCo to distribute to VWE Associates an amount of cash necessary to pay this tax. The remaining $23.4 million gain would be allocated to HoldCo and taxed to Alicia and Laura at 28%, or $6.552 million ($23.4 million x 28%).

Consequently, the total effective tax rate on the sale of the business by OperatingCo would be approximately 26.5% ($5.59 million and $1.118 million corporate-level taxes paid by VWE Associates plus $6.552 million taxes paid by Alicia and Laura ÷ $50 million sale proceeds). However, unlike Scenario 2, under this Scenario 3 VWE Associates will continue to be able to use its $8.6 million NOLs. Thus, the stream of income to VWE Associates from the guaranteed payment and 10% profits interest during the period from the time of the drop-down to the sale of the business would be sheltered from tax by VWE Associates' NOLs.

     iv.   Guaranteed Payment

Under the disguised sale rules of Code §707 and Treasury Regulation §1.707-4, any guaranteed payment made by OperatingCo to VWE Associates within two years of the contribution of the business to OperatingCo is presumed part of a disguised sale. This presumption is rebutted if the guaranteed payment is deemed "reasonable," which requires that the payment meet the following safe harbor: (i) the guaranteed payment is made pursuant to a written agreement and (ii) the amounts of the payments do not exceed the multiple of (a) 150% of the highest AFR (in effect at any time from the date of the written agreement establishing the guaranteed payment through the end of the

HD 20008023

taxable year of the payment) times (b) VWE Associates's unreturned capital at the beginning of the year (i.e., the excess of its contributions less its distributions) or, at VWE Associates' option, it average capital account balance for the entire year.

To the extent a guaranteed payment made within the first two years is not deemed "reasonable" (i.e., to the extent it exceeds the safe harbor amount), the payment will be presumed part of a disguised taxable sale of the business to OperatingCo. However, this presumption would be overcome if VWE Associates can clearly establish that the payment was a "guaranteed payment for capital" (i.e., the payment is determined without regard to partnership income and is strictly for the use of VWE Associates's capital).

     v.    Analysis

The long-term, annual AFR for September 2001 is 5.57%. Therefore, assuming Scenario 3 was put into place in September and the AFR didn't increase beyond 5.72% for the first two years, the guaranteed payment for the first two years would be 8.355% (5.57% x 150%) of VWE Associates' $18 million capital account in OperatingCo, or $1,503,900.

In 1999, VWE Associates had approximately $2.7 million in interest expense. Since the $1,503,900 guaranteed payment to VWE Associates' under the present AFR would presumably not cover its future interest expense and assuming that the stream of income from VWE Associates' 10% profits interest in OperatingCo does not make up the difference, then for the first two years VWE Associates will have to be specially allocated additional income to enable it to pay its interest obligations.

HDKNY/125447/v#1

10

HD 20008024